IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| **JASON DAVIS** and **JENNIFER DAVIS,** | : | Case No. 1:24-cv:0202 |
| | : | |
| Plaintiffs | : | |
| v. | : | |
| **CHARMAINE McGUFFEY**, *in her individual capacity* | : | |
| 1000 Sycamore Street | | **PLAINTIFFS' COMPLAINT WITH** |
| Cincinnati, Ohio 45202 | : | **JURY DEMAND ENDORSED HEREON** |
| and | : | |
| **JAY GRAMKE**, *in his individual capacity* | : | |
| 1000 Sycamore Street | : | |
| Cincinnati, Ohio 45202 | | |
| and | : | |
| | : | |
| **HAMILTON COUNTY, OHIO** | | |
| c/o Melissa Powers, Prosecuting Attorney | : | |
| 230 E. Ninth Street, Suite 4000 | | |
| Cincinnati, Ohio 45202 | : | |
| Defendants | : | |

Plaintiffs, through Counsel, for their Complaint, state and allege as follows:

**Introduction**

1. This case involves an egregious case of First Amendment retaliation. Jason Davis ("Jason") was employed for more than two decades as a Deputy Sheriff. His wife, Jennifer Davis ("Jennifer"), made public posts to social media critical of certain policies of Sheriff Charmaine McGuffey ("McGuffey"), and liked certain social media posts made by Caroline Adams, that were pro-law enforcement, but critical of certain policies of Sheriff McGuffey.

1

And Jason, who organized a "Remember the Fallen" sporting event for fallen law enforcement and firefighters in Hamilton County, truthfully posted, in response to a question on social media, that the Sheriff's office did not support the event. In response, Jay Gramke ("Gramke"), the Chief Deputy Sheriff of Hamilton County, Ohio, and McGuffey, took a series of retaliatory measures against Jason for this First Amendment protected speech, including (i) rescission of an appointment to the Regional Enforcement of Narcotics Unit, which would have occurred in February, 2023, and which would have resulted in additional overtime and other tangible employment benefits; and (ii) denying promotion to Jason to corporal when he came to the top of the eligibility list in July and August of 2023, resulting in the loss of, among other benefits, the 7% raise that came with promotion. In fact, to continue their retaliation, these Defendants attempted to negotiate with the union, as part of collective bargaining, an early expiration of that same promotion list. Colloquially, this became known as being "Jason Davis'd."

2. Jason then had a meeting with Gramke and McGuffey in October, 2023 to address this retaliation. Among other statements, Gramke and McGuffey actually told Jason that they took their actions as a result of the protected speech activities, mostly directed towards his wife's social media posts, and McGuffey specifically told Jason that he needed to end his 20 plus year marriage if he wanted to continue or advance his career with the Hamilton County Sheriff's office. Jason and Jennifer were devastated by this outrageous and intolerable choice, and Jason knew that his more than 20-year employment with the Hamilton County Sheriff's office was over and that he was constructively discharged. He was forced to resign to advance his law enforcement career.

**Parties**

3. Plaintiffs are residents and citizens of Hamilton County, Ohio, and the United States.

4. Defendants McGuffey and Gramke are the Sheriff and Chief Deputy Sheriff of Hamilton County, Ohio, and were so acting in that capacity, and under color of law, by and between January 2023 to the present, including in their interactions with Plaintiff Jason Davis.

5. Defendant Hamilton County, Ohio, was and is a county within Ohio.

**Jurisdiction and Venue**

6. Subject matter jurisdiction over the federal claims and causes of action asserted by Plaintiffs in this case is conferred on this Court pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

7. Subject matter jurisdiction over the state law claims and causes of action asserted by Plaintiffs in this case is conferred on this Court pursuant to 28 U.S.C. §1367, because such state law claims arise from the same exact facts as the federal claims, and thus are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue in this district is proper pursuant to 28 U.S.C. §1391 and other applicable law.

9. Venue in this division is appropriate, since all of the deprivations of Plaintiffs' Constitutional Rights occurred in Hamilton County, Ohio, and Defendants reside in this District and Division.

**Facts Common to all Claims**

10. Jason began employment with the Hamilton County Sheriff's Office, initially as a corrections officer, in 2002. In 2014, Jason received was transferred to the road/patrol unit. In his 18 years on that job, Jason's performance reviews consisted of "meets expectations" or "exceeds

expectations," he never was subject to discipline, and he was perceived by fellow officers and his supervisors as doing a good job.

11. Jason and Jennifer were married in 2003 and have remained married for the past 21 years; and they have one child. Jennifer has been a steadfast supporter of her husband, his law enforcement career, and law enforcement generally.

12. McGuffey was elected Sheriff in November 2020, and took office on or about January 4, 2021. She began her term as Sheriff with a press conference.

13. In McGuffey's press conference, she stated that her number one priority as Sheriff was responding to COVID-19.

14. During that press conference on or about January 4, 2021, Jennifer posted on the Sheriff's social media page that had been live streaming the press conference, that the Sheriff's priorities were misaligned, and that officer safety and suicides should be the number one priority. A true and accurate copy of that post is attached as Exhibit 1, hereto.

15. Jennifer followed that post with another post to her private Facebook page on or about January 4, 2021, again criticizing the priorities and actions of the Hamilton County Sheriff, a true and accurate copy of which is attached as Exhibit 2, hereto.

16. Caroline Adams is a particularly outspoken critic of McGuffey, and has offered various criticisms of McGuffey and Gramke, via her pages "Chaz the Anti-Sheriff," and "Itsa Krakken."

17. Among the various criticisms Caroline Adams has directed towards McGuffey on her various pages includes (i) engaging in parody and mocking McGuffey for her irresponsibly leaving her loaded firearm in her car in 2021, which resulted in the firearm's theft, and ultimately its

use by a criminal in an armed robbery;[1] (ii) McGuffey's prior criminal charges that followed her spending time at a bar where she directed the statement "you can suck my d…" at Covington, Kentucky police;[2] (iii) a September 20, 2023 incident in which McGuffey was alleged to have been driving drunk, the video of which was posted by Adams;[3] (iv) posts about McGuffey's prior acts of dishonesty and the Covington, Kentucky incident, that placed her on the Brady list;[4] (v) posts critical of jail safety where inmates regularly pop the locks on the cells; and (vi) other assorted criticisms.

18. As a consequence of Adams' posts and criticisms, McGuffey and Gramke engaged in meetings with members of the Hamilton County Sheriff's office and informed deputies that if they, or their spouses, associated in any way with Adams, including by interacting with her on social media, there would be consequences.

19. In May 2022, Jason was organizing a "Remember the Fallen" sporting event and fundraiser for fallen law enforcement and firefighters in Hamilton County.  He asked for support for the event from McGuffey and Gramke, by directing communications about the event to their assistant.  He received no response.

20. After the event in approximately May 2022, Jason posted on his personal Facebook page, to his Facebook friends with a public audience, on his own time, and not on the clock, and not

---

[1] https://www.fox19.com/2023/10/11/hamilton-county-sheriff-announces-her-stolen-gun-was-found-used-robbery/ (last accessed 2/20/2024).
[2] https://www.cincinnati.com/story/news/crime/crime-and-courts/2019/05/06/charmaine-mcguffey-covington-bar-police-sheriff-candidate-allegations/3645233002/
[3] https://www.facebook.com/permalink.php?story_fbid=pfbid0opATiDocbYzS8WVBuEdcmNMs39ECddg9DtuMdQEmFW9bfPn4MH5jGxFwjuUVn94Fl&id=100084120500255
[4] https://www.fox19.com/2019/10/10/tracking-police-have-officers-patrolling-your-neighborhood-been-convicted-crimes-lied-job

part of any official duties with the Sheriff's Office, that the Remember the Fallen event was successful.

21. This was met with a statement by another member of the Sheriff's department that the member would have liked to have known in advance about the event. In response, Jason truthfully posted, and not part of any official duties and on his own time, "our department didn't support it. No county items were used to advertise this game. Flyers were taken down from briefing rooms." A true and accurate of this post is attached as <u>Exhibit 3</u>.

22. For the avoidance of all doubt, the post at <u>Exhibit 3</u> (i) touched on a matter of public concern, (ii) the plaintiff spoke as a private citizen rather than in an official capacity, and (iii) the plaintiff's constitutional interests outweighed the employer's interest in efficiently delivering public services.

23. In 2022, Jason applied for a position with the Regional Enforcement Narcotics Unit ("RENU"). He then was narrowed down to three finalists after a vetting and interview process. The RENU position involves significant overtime and a take home cruiser or car (depending on whether the deputy is assigned to highway drug interdiction or investigations).

24. Similarly, in 2022, Jason tested for corporal, a promotion that involved a 7% raise in compensation. He placed 16 or 17 out of 30 on an eligibility list that, under the union contract with the Sheriff's office, was to stay in place for two years.

25. In late January or early February 2023, Jason was informed that he was selected for RENU, that everyone signed off on his selection, and that he would begin working with RENU in March, 2023.

26. Then, approximately an hour after that notification, Jason was called again by RENU supervision, and informed that Gramke had overridden his selection to that unit.

27. In April 2023, Caroline Adams made a post to both her Chaz page, and her Krakken page, about poor morale in the Hamilton County Sheriff's Office. A true and accurate of this post is attached as <u>Exhibit 4</u>. Jennifer "liked" that post.

28. By July 2023, Jason was next on the corporal promotion eligibility list.

29. Jason was informed by other officers in August 2023 that regardless of vacancies, he would not be promoted, even if that meant generally not promoting anyone else. Not long after that, Jason's union leadership informed him that McGuffey was attempting, in collective bargaining negotiations with the union, to get an early termination of the eligibility list, but just for corporal, to ensure that Jason would not be promoted.

30. Concerned that he was being retaliated against, Jason asked for a meeting with Gramke and McGuffey in early September 2023. Jason was informed that Gramke and McGuffey could meet with him in October 2023.

31. On October 10, 2023, at approximately 8:30 a.m., Jason met with Gramke and McGuffey.

32. McGuffey began the meeting by stating that she had been looking forward to talking with Jason, and what he could expect in the future in the Sheriff's Office.

33. At that point, Jason asked about the RENU position and his promotion to corporal. In response, Gramke and McGuffey stated that they had issues with Jason's social media post in May, 2022, but more significantly, they had issues with Jennifer's social media posts that were critical of the Sheriff, and had issues with Jennifer's social media posts related to Caroline Adams, including, most recently, Jennifer liking Adams' post about morale.

34. During that meeting, and again, referencing the RENU position and promotion to corporal, Gramke made the statement that Jason's wife made a comment on social media two years ago, and that there had to be consequences for her post.

7

35. During that meeting, and again, referencing the RENU position and promotion to corporal, Gramke and McGuffey acknowledged that they knew Jennifer had the right to say what she wanted and associate with who she wanted on social media.

36. McGuffey, and again, referencing the RENU position and promotion to corporal, then stated that she wanted Jason to be successful, but to do so, he needed to cut loose the people holding him back – said another way, that he needed to divorce his wife and end his 20+ year relationship with her – if he was ever to be promoted or receive any preferential assignment at the Hamilton County Sheriff's Office.

37. Gramke then added that he heard nothing but good things about Jason's performance from his supervision, demonstrating that the only reason for the RENU assignment denial and failure to award him the promotion was the social media activity, and specifically the social media activity of Jennifer.

38. In short, McGuffey and Gramke admitted during the October 10, 2023, meeting, that the RENU re-assignment and promotion to corporal were being denied to him *solely* because of his and, more significantly, his wife's social media posts.

39. Jason was devastated when he left that October 10, 2023, meeting.

40. He went home and reported to Jennifer what Defendants had just told him, and she broke down in tears. Jeniffer told him that while she had always supported his law enforcement career, she could no longer support him if he stayed at the Sheriff's Office.

41. Jason knew that his career in law enforcement at the Sheriff's Office was over as a consequence of that meeting and the outrageous and intolerable statements that were made to him regarding the need to divorce his wife and end their more than 20-year marriage if he wanted any sort of preferential assignment or a promotion within the Sheriff's Office.

42. Jason loves Jennifer and was not willing to divorce her just to further advance in his employment with the Sheriff's office.

43. As a result, Jason's working conditions and future prospects at the Hamilton County Sheriff's Office were so bleak, difficult, and unpleasant, as to constitute a constructive discharge, in that a reasonable person in Jason's shoes, who was faced with an employer that was demanding he divorce his wife to ever be promoted or receive any favorable assignments, would have felt compelled to resign.

44. In point of fact, when word of what transpired at the meeting got out in November and December 2023, other officers told Jason that they were very surprised he did not quit immediately.

45. On January 9, 2024, and due to the aforementioned constructive discharge and the actions of McGuffey and Gramke, Jason resigned from the Hamilton County Sheriff's Office, a position that he had been employed at for more than 20 years.

46. Jason then found alternative employment, albeit at a lower pay rate, with Springdale Police Department.

47. Jason has suffered pecuniary harm from the foregoing First Amendment retaliation, including: (i) a loss of overtime pay and vehicle benefits from the failure to be assigned to RENU; (ii) a loss of pay from the failure to promote Jason, both regular and overtime; (iii) a loss of pay, going forward, from the differential in pay that Jason would and should have received from his promotion that was denied to him.

48. Jason and Jennifer have suffered other damages from the foregoing violations of their federally protected rights, as permitted under § 1983, which includes an award for the violation of their rights and the magnitude of the violation, impairment of reputation,

personal humiliation, mental distress and humiliation, and other damages. *Smith v. Heath*, 691 F.2d 220, 226 (6th Cir. 1982).

*Monell* Liability Against Hamilton County, Ohio

49. Jason and Jennifer reincorporate the preceding paragraphs as if fully set forth herein.

50. Hamilton County, Ohio, is liable for the violations herein, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because (i) First Amendment retaliation is the official policy of the Hamilton County Sheriff's Office, evidenced by McGuffey and Gramke making public statements at briefings that any association with Caroline Adams by any employee or their spouses will result in employment consequences; (ii) McGuffey had final decision-making authority under Ohio law and county policy, with respect to respect to promotions and assignments at the Hamilton County Sheriff's Office, and approved of, directed, and personally participated in the actions complained of; (iii) further, McGuffey and Hamilton County, Ohio, ratified the actions complained of, and failed to meaningfully investigate or punish the actions complained of; (iv) Hamilton County and the Sheriff's Office had inadequate training on First Amendment rights and retaliation for exercising same sufficient to trigger Monell liability; and (v) Hamilton County and the Sheriff's office in particular, had and still has a custom of tolerance or acquiescence of federal rights violations.

**CLAIM I – FIRST AMENDMENT RETALIATION (against McGuffey and Gramke, individually and officially, and against Hamilton County under *Monell*)**

51. Jason and Jennifer reincorporate the preceding paragraphs as if fully set forth herein.

52. Jason and Jennifer engaged in protected speech and conduct, namely the social media posts contained in paragraphs 12 through 22, and 27, and at Exhibits 1 through Exhibit 4.

53. Criticizing public officials is plainly and clearly established as protected activity. *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018); *Connick v. Myers*, 461 U.S. 138, 148 (1983)

10

(Speech that "bring[s] to light actual or potential wrongdoing or breach of public trust" is speech that addresses a matter of public concern, as is speech that "seek[s] to inform the public that [the government] [is] not discharging its governmental responsibilities."); *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). So is petitioning government officials for redress. *Nailon v. Univ. of Cincinnati*, 715 Fed. Appx. 509, 514 (6th Cir. 2017), *quoting Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008).

54. Defendants also violated clearly established rights of association because they violated the individuals' right to associate to exercise other First Amendment rights, including the group exercise of speech. *Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984). In *United States Jaycees*, the Supreme Court identified two forms of constitutionally protected associational rights: "freedom of intimate association" and "freedom of expressive association." *Id.* Both clearly established associational rights were violated, particularly by the punishment Defendants threatened and carried out of anyone who associated with Caroline Adams. *Johnson v. City of Cincinnati*, 310 F.3d 484, 499 (6th Cir. 2002); *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021).

55. The cases of *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509 (6th Cir. 2017), *Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534 (6th Cir. 2003), *Ward v. Athens City Bd. of Educ.*, 187 F.3d 639 (6th Cir. Aug. 11, 1999) clearly establish that a plaintiff may bring a First Amendment retaliation claim where retaliation has occurred due to a relative's protected speech. *See, also, Fakhoury v. O'Reilly*, 837 Fed. Appx. 333 (6th Cir. 2020). *Nailon* made the point that this law was clearly established by 2017 (actually as of 1999), well before the actions of Defendants here. In any event, *Heffernan v. City of Paterson*, 578 U.S. 266 (2016)

makes clear that retaliation for protected speech is prohibited regardless of who is doing the speaking.

56. Defendants took adverse actions against Jason, including revoking his RENU appointment, and withholding his promotion to corporal, all in retaliation for the foregoing protected speech and associational activities. Defendants took adverse action against Jennifer, by coercing Jason to divorce her and by taking action against her spouse intended to coerce and threaten her.

57. An adverse action need not be significant to be actionable. *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (*en banc*). An adverse action is "one that is 'capable of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

58. The actions taken by Defendants herein are sufficiently adverse to be capable of deterring a person of ordinary firmness from exercising their constitutional rights. *Decrane v. Eckart*, 12 F.4th 586, 601-602 (6th Cir. 2021); *Nailon*, 715 F. App'x 509; *Henley*, 84 F. App'x 534; *Ward*, 187 F.3d 639; *Fakhoury*, 837 Fed. Appx. 333.

59. Finally, there was a causal connection between the protected speech and associational activity and the adverse action -- that is, the adverse action was motivated at least in part by the plaintiffs' protected conduct, namely, McGuffey and Gramke admitted to the connection as part of their effort to punish Jennifer for her speech and attempt to have Jason divorce her.

60. Therefore, (1) the plaintiffs engaged in protected conduct as set forth above; (2) adverse actions were taken against Jason and Jennifer that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the

plaintiffs' protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

61. The foregoing violations of the First Amendment proximately and actually caused Jason and Jennifer damages, to include pecuniary damages, as set forth in Paragraph 47, and other damages to include humiliation and emotional distress, as forth in Paragraph 48, exceeding $100,000 in an amount to be proven at trial.

62. As set forth in Paragraph 50, Hamilton County, Ohio, is liable for such damages under *Monell*.

63. McGuffey and Gramke are individually liable for punitive damages, in an amount to be proven at trial, because their actions were motivated by evil motive or intent, and because their actions involved reckless or callous indifference to the federally protected rights of Plaintiffs. In fact, punitive damages are always appropriately submitted to a jury in First Amendment retaliation cases. *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015).

64. Defendants are all liable for attorney fees and costs pursuant to 42 U.S.C. § 1988.

## CLAIM II – CRIMINAL ACT DAMAGES (against McGuffey and Gramke)

65. Jason and Jennifer reincorporate the preceding paragraphs as if fully set forth herein.

66. McGuffey and Gramke violated R.C. 2921.45, in that they, being public servants, under color of their offices, employment, or authority, knowingly deprived, or conspired or attempted to deprive Jason and Jennifer of a constitutional or statutory right, specifically their First Amendment rights.

67. Pursuant to R.C. 2921.60, Jason and Jennifer, being injured in their persons and properties by the foregoing criminal acts of McGuffey and Gramke, are entitled to "full damages" as provided in that section, to include pecuniary damages, as set forth in Paragraph 47, and

other damages to include humiliation and emotional distress, as forth in Paragraph 48, exceeding $100,000 in an amount to be proven at trial.

68. McGuffey and Gramke engaged in malice in the aforementioned violations, entitling Jason and Jennifer to punitive damages, in an amount to be proven at trial, as well as their reasonable attorney fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as prayed for, including:

A. That Plaintiffs be awarded money damages, including both compensatory and punitive damages, against the individual capacity Defendants, in an amount to be proven at trial, and exceeding $100,000.00, exclusive of interest and costs;

B. That Plaintiffs be awarded compensatory money damages against Hamilton County, Ohio, under *Monell*, in an amount to be proven at trial, and exceeding $50,000.00, exclusive of interest and costs;

C. That trial by jury be had on all issues so triable;

D. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

E. Such other relief as this Court may find just and proper.

Respectfully submitted,

*/s/Zachary Gottesman*  
Zachary Gottesman (0058675)  
Gottesman & Associates, LLC  
9200 Montgomery Road, Bldg E, Ste 18B  
Cincinnati, Ohio 45242  
513/651-2121  
zg@zgottesmanlaw.com  

*/s/Christopher Wiest*  
Christopher Wiest (0077931)  
Chris Wiest, Attorney at Law, PLLC  
50 E. Rivercenter Blvd, Ste. 1280  
Covington, KY 41011  
513/257-1895  
chris@cwiestlaw.com  

*/s/Thomas Bruns*  
Thomas Bruns (0051212)

4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
513-312-9890
tbruns@bcvalaw.com
**Attorneys for Plaintiff**

## JURY DEMAND

Pursuant to FRCP 38, Plaintiffs demand trial by jury for all causes so triable.

*/s/Zachary Gottesman*