**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **JASON DAVIS** and | : Case No. 1:24-cv:0202 |
| **JENNIFER DAVIS,** | |
| | : Judge: Barrett |
| Plaintiffs | |
| | : |
| v. | |
| | : |
| **CHARMAINE McGUFFEY**, et. al. | |
| | : |
| Defendants, | |

**DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT WITH THE
AFFIDAVITS OF MATT GUY AND CHRIS KETTEMAN**

Defendants Hamilton County, Sheriff Charmaine McGuffey, and Jay Gramke move this

Court for partial summary judgment under FRCP 56 because most of Plaintiffs' claims fail as a

matter of law.  A Memorandum in Support is attached to this Motion.

                                    Respectfully submitted,


                                    CONNIE PILLICH
                                    PROSECUTING ATTORNEY
                                    HAMILTON COUNTY, OHIO

                                    /s/*Matt Miller-Novak*
                                    Matt Miller-Novak, 0091402
                                    Stephen A. Simon, 0068268
                                    Andrew E. Prem, 100861
                                    Assistant Prosecuting Attorneys
                                    Hamilton County, Ohio
                                    230 E. Ninth Street, Suite 4000
                                    Cincinnati, OH 45202
                                    DDN:  (513) 946-3219 (Miller-Novak)
                                    DDN:  (513) 946-3289 (Simon)
                                    DDN:  (513) 946-3285 (Prem)
                                    FAX:  (513) 946-3018
                                    TRIAL ATTORNEYS FOR DEFENDANTS

## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. SUMMARY OF THE ARGUMENT ........................................................................1

III. BACKGROUND INFORMATION .........................................................................3

IV. LAW AND ARGUMENT .........................................................................................13

   A. Plaintiffs' claims against Hamilton County fail as a matter of law ...................14

   B. Defendants are entitled to summary judgment and immunity under
      Count I ...........................................................................................................14

      1. Plaintiffs' claims for constructive discharge against all Defendants
         fail as a matter of law, so all Defendants are immune from those
         claims ........................................................................................................15
           a. Plaintiffs cannot establish that Jason Davis suffered any of
              the Sixth Circuit's factors to establish intolerable working
              conditions .....................................................................................17
           b. Plaintiffs cannot present any evidence that Defendants took
              any action with the intent of forcing Jason Davis to quit ....................17

      2. Plaintiffs' claims for First Amendment Association against all
         Defendants fail as a matter of law, so all Defendants are immune
         from those claims .......................................................................................20

      3. Sheriff McGuffey is immune from all claims against her because
         there is no evidence in the record that she took a single adverse
         action against either Plaintiff ....................................................................22

   C. Sheriff McGuffey and Jay Gramke are immune against Plaintiffs'
      State law claims under Count II .........................................................................22

      1. Plaintiffs did not state any cause for relief under Count II against
         either of the Defendants ............................................................................23

      2. Plaintiffs presented no evidence that Sheriff McGuffey acted in bad
         faith ...........................................................................................................23

   D. Plaintiff Jennifer Davis lacks standing for her claims ...........................................24

V. CONCLUSION .........................................................................................................25

## TABLE OF AUTHORITES

### A. Cases

*Divine v. Hamilton Cnty.*, No. 1:24-cv-564, 2025 U.S. Dist. LEXIS 6164, at *6 (S.D. Ohio Jan. 13, 2025) ................................................................................................................................1, 14

*Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) ...............................2, 13, 16, 17

*Henley v. Tullahoma City Sch. Sys.,* 84 F. App'x 534, 543-4 (6th Cir. 2003)................ 2, 21, 22

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416, 133 S. Ct. 1138, 1151 (2013) ................2, 24

*Estate of Fleenor v. Ottawa Cnty.*, 170 Ohio St. 3d 38, 41, 2022-Ohio-3581, ¶ 12, 208 N.E.3d 783, 786...................................................................................................................................14

*Schee v. Ottawa Cnty.*, No. 3:21-cv-1680, 2025 U.S. Dist. LEXIS 31021, at *15 (N.D. Ohio Feb. 21, 2025) ............................................................................................................................14

*Funk v. City of Lansing*, 821 F. App'x 574, 581 (6th Cir. 2020) .....................................14, 17, 19

*Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012).............................15

*Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004) .............................................................15, 22

*Silverman v. City of N.Y.*, 216 F. Supp. 2d 108, 116 (E.D.N.Y. 2002)...................................19

*Stembridge v. City of N.Y.*, 88 F. Supp. 2d 276, 285 (S.D.N.Y. 2000) ...................................19

*Ward v. Athens City Bd. of Educ.*, 1999 U.S. App. LEXIS 22766, No. 97-5967, 1999 WL 623730 (6th Cir. Aug. 11, 1999) (unpublished) ...................................................................................20

*Lyng v. Castillo*, 477 U.S. 635, 638, 91 L. Ed. 2d 527, 106 S. Ct. 2727 (1986)...................21

*Harris v. Butler Cnty.*, 344 F. App'x 195, 200-01 (6th Cir. 2009)........................................21

*Bowman v. City of Fairview Park*, No. 1:23 CV 1406, 2024 U.S. Dist. LEXIS 70475, at *14 (N.D. Ohio Apr. 17, 2024) ............................................................................................................22

*Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 980 (6th Cir. 2020) ............24

### B. Statutes

R.C. § 2921.45 .............................................................................................................................23

R.C. § 2921.60 (nonexistent) .....................................................................................................23

## I.    INTRODUCTION

This is a case about a former Hamilton County deputy, who quit his job because his wife told him that she would "no longer support him if he stayed."[1]  Defendants Hamilton County ("County"), Sheriff Charmaine McGuffey ("Sheriff McGuffey"), and Jay Gramke ("Gramke") (collectively "Defendants") are entitled to partial summary judgment against Plaintiffs Jason Davis and Jennifer Davis (collectively "Plaintiffs").  Defendants did not constructively discharge Jason Davis, and Defendants did not interfere with Plaintiffs' marriage.

## II.    SUMMARY OF THE ARGUMENT

This is a First Amendment retaliation and association case that advances numerous theories that fail as a matter of law.  Plaintiffs' Complaint is divided into two counts against Defendants. Count I alleges First Amendment retaliation against Plaintiffs' speech Because Defendants failed to promote Jason Davis, constructively discharged Jason Davis, and punished the Plaintiffs' First Amendment rights to associate.  Count II alleges that Plaintiffs are entitled to civil damages arguing Defendants engaged in criminal acts against the Plaintiffs.  This Partial Motion for Summary Judgment will establish the following:

1. All of Plaintiffs' claims against Hamilton County fail because Hamilton County is not *sui juris*, and Plaintiffs failed to name any entity subject to liability. *Divine v. Hamilton Cnty.*, No. 1:24-cv-564, 2025 U.S. Dist. LEXIS 6164, at *6 (S.D. Ohio Jan. 13, 2025).

2. All Defendants are entitled to summary judgment against Plaintiffs' constructive discharge claims under Count I because Plaintiffs (a) have no

---

[1] Complaint at ¶40

1

evidence that Defendants took any action against Jason Davis with the *intent* to cause him to quit, and (b) Jason Davis admitted that Defendants were not trying to terminate him. *Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014).

3. All Defendants are entitled to summary judgment against Plaintiffs' First Amendment association claims under Count I because their association claims are duplicative of their First Amendment retaliation claims. *Henley v. Tullahoma City Sch. Sys.,* 84 F. App'x 534, 543-4 (6th Cir. 2003).

4. Defendant Sheriff McGuffey is entitled to summary judgment against all of Plaintiffs' claims under Counts I and II because there is no evidence that Sheriff McGuffey was involved in any employment decisions concerning Jason Davis.

5. All Defendants are entitled to summary judgment against Count II of Plaintiffs' Complaint because Plaintiffs' Count II does not cite an actual available cause of action within the Ohio Revised Code.

6. Plaintiff Jennifer Davis lacks standing because she suffered no adverse actions, her alleged damages claims are collateral, her speech was never chilled, and her association claims are duplicative of Plaintiffs' First Amendment retaliation claims. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416, 133 S. Ct. 1138, 1151 (2013).

This Court should grant Defendants' Partial Motion for Summary Judgment because Plaintiffs' claims fail as a matter of law.

## III.   BACKGROUND INFORMATION

### A.  Gramke denied Jason Davis's advancement in the past because he believed Jason Davis did not exhibit proper character.

Jason Davis began working for the County in 2002 as a corrections officer. (Doc#23, Jason Davis Depo. at 12).  Davis then moved to his position as a patrol deputy in 2014. (Id.)  Deputies in the Hamilton County Sheriff's Department are part of a collective bargaining unit, and their terms and conditions of employment are dictated under a collective bargaining agreement ("Union Agreement") (Id. at 28; Exhibit 1).

Davis first applied for assignment to the Regional Enforcement Narcotics Unit ("RENU") in 2018. (Doc#23, Jason Depo. at 84). RENU's qualifications demand that agents exhibit responsibility and trustworthiness because of the highly sensitive nature of its operation.  During 2018, Chief Gramke was leading the RENU unit, and he interviewed Jason Davis. (Doc#24, Gramke Depo. at 142). Gramke considered Davis as a malcontent in the Department,[2] and Gramke believed that Davis conducted himself in a manner that was overly cocky. (Id.)  Gramke did not consider Davis to possess the requisite characteristics of a RENU applicant because Gramke did not consider Davis as a team player. (Id. at 145:6-21).  Gramke decided to reject Davis's first application in 2018.

### B.  Jennifer Davis engaged in online speech that degraded Sheriff McGuffey and Hamilton County citizens.

Jennifer Davis is Jason Davis's wife. (Doc# 23, Jason Depo. at 10).   When Sheriff McGuffey won her election, Jennifer Davis took offense with Sheriff McGuffey's Covid-19 safety policies and Sheriff McGuffey's sexual orientation. Jennifer Davis posted about Sheriff McGuffey

---

[2] A "malcontent" is a term the Sheriff's Office used to describe a deputy who frequently complains and is generally negative in the department.   All Parties agree the term has existed within the County for a long time, and its historical roots predate Sheriff McGuffey's leadership by many years.

in January of 2021 to express this discontent. (Exhibit 2).    Jennifer Davis began her post stating that opinions are like "assholes," and that they "probably stink" unless "you are one of those weirdos that bleaches your asshole and does that colon cleanse thing."  (Id.) Jennifer Davis then suggested that Sheriff McGuffey's priority of addressing Covid 19 safety to protect her deputies was somehow irresponsible. (Id.)  Jennifer Davis claimed in the post that she was complaining because she was supportive of officer safety. (Id.)  However, a deputy passed away from Covid only weeks later in February of 2021.  (Exhibit 3).  That deputy was the only County officer to die in the line of duty that year.  Therefore, Jennifer Davis publicly chastised Sheriff McGuffey for prioritizing the only cause of death among deputies in 2021.  Jennifer Davis did not delete this post after the deputy's death, and she is not concerned whether it upsets other deputies at the County. (Doc# 25, Jennifer Davis Depo. at 40).

Jennifer Davis also suggested people only elected Sheriff McGuffey because they wanted to see a "gay woman" advance to Sheriff.  (Exhibit 2).  Jennifer Davis referred to any person who supports advancing a gay woman in this manner as a "twatwaffle." (Id.)  Jennifer Davis defines as "twatwaffle" as an "idiot." (Doc#25, Jennifer Depo. at 34: 9-10).   Thus, Jennifer Davis publicly stated that Hamilton County citizens who desire seeing gay women advance to positions of leadership are idiots.

### C.  Jason Davis made false public statements on Facebook about the Department.

In 2021, Davis was organizing a football event called, "Remember the Fallen" (the "Event").   Davis did not discuss the Event with Sheriff McGuffey or Chief Gramke to see if the County would support the Event.  Instead, Davis only sent an administrative assistant a single message through Facebook Messenger. (Doc# 23, Jason Depo at 72: 10-18).   McGuffey never received the message from the assistant, so she had no knowledge of the event, and did not have the opportunity to choose whether to support the Event. (Doc #26, McGuffey Depo. at 118-9).

4

Davis was never told that Sheriff McGuffey or Gramke received the message, so he was never told they refused to support the Event.  (Doc#23, Jason Depo. at 74).   Jason Davis put flyers for the Event on bulletin boards. Jason Davis had no information that the Defendants ever instructed anyone to remove his flyers from those boards. (Id. at 76: 15-22).   Nonetheless, Jason Davis later publicly claimed that the Defendants did not support his Event, and the Defendants tore his flyers down from briefing rooms. (Exhibit 4).   These statements were false.  The County's leadership was never aware of the Event, so the County did not reject supporting the Event.

### D.  Gramke rejected Davis's second application for RENU because he still believed Davis lacked the proper character.

Jason Davis again sought placement on RENU in the beginning of 2023.  Lt. Matt Guy ("Guy") was the RENU operations commander in 2022 and 2023. (Matt Guy Affidavit ¶4).  After Jason Davis applied for RENU placement, Guy attended a supervisor's retreat at Hard Rock Casino.  (Id. at ¶7).  When he was there, Gramke asked Guy how the RENU process was proceeding.  (Id.).  Guy told Gramke that it looked like Jason Davis "would be" the top choice. (Id. at ¶8).  Jason Davis's appointment to RENU was not final at this time, he was never assigned any cases, and he never became part of RENU. (Id. at ¶¶12-13).   Gramke told Guy that he did not want Jason Davis on RENU because Gramke believed Jason Davis was a malcontent.  (Id. at ¶9). Gramke never told Guy "at any point" that he rejected Jason Davis because of his wife's posts online. (Id. at 10).  Instead, Gramke largely based his decision to reject Jason Davis's RENU placement based on his experiences with Jason Davis that occurred years earlier in 2018.  (Doc# 24, Gramke Depo. at 145:22-25).  In addition, Gramke believed that Davis was involved with a group of deputies in Anderson Township, who were complaining about the County's policy restricting beards.  (Id. at 147:9-12).  Because Gramke still believed Davis was a malcontent, he did not want Davis appointed to RENU.  (Id. at 150:7-10).

5

### E. Sheriff McGuffey was not involved in Davis's RENU rejection.

There is no evidence that Sheriff McGuffey denied Davis's application for RENU to retaliate against any of Plaintiffs' speech. Instead, the record reflects that Sheriff McGuffey did not even know that Jason Davis applied for a RENU position until many months afterwards. (Id. at 115:14-24). Current Chief Deputy Chris Ketteman ("Ketteman") was the Patrol Division Commander during 2023, so he oversaw RENU in that capacity.[3]  (Ketteman Affidavit at ¶4). Ketteman was involved in Jason Davis's RENU application process. (Id. at ¶¶4-5). Ketteman has testified that Sheriff McGuffey was not involved in the RENU application process or the decision to reject Jason Davis's RENU application. (Id. at ¶13). Gramke testified that he did not tell Sheriff McGuffey that he decided to reject Davis's RENU placement until long after it had already happened. (Doc# 24, Gramke 154: 15-22).  Additionally, Sheriff McGuffey had no personal knowledge about Jennifer Davis's posts online before Gramke rejected Davis's RENU application. (Doc #26, McGuffey Depo. at 239: 7-9; 247: 19-24). Jason Davis's testimony shows he has no knowledge that Sheriff McGuffey had any actual involvement in his RENU rejection other than his own speculation. (Doc# 23, Jason Depo. at 174).

Simply stated, there is not one shred of evidence in the record that Sheriff McGuffey had any involvement in the decision to reject Jason Davis's RENU application, let alone that Sheriff McGuffey retaliated against Plaintiffs' speech. On the contrary, the evidence in the record reflects that Sheriff McGuffey had no actual involvement in Jason Davis's RENU application process.

---

[3] Defendant Jay Gramke is retired from the County. Chris Kettemen has replaced Gramke as the Chief Deputy.

### F. Jason Davis met Sheriff McGuffey and Gramke in October of 2023, so he could secretly record them.

Jason Davis requested a meeting with Sheriff McGuffey and Gramke in October of 2023, so he could secretly record the Defendants. Jason Davis did not inform Sheriff McGuffey or Jay Gramke he was going to record them, which violated County policy. (Id. at 121: 8-16; Exhibit 5, p. 5: Section 1.24). Both Plaintiffs were aware Jason Davis planned to record the meeting. (Id. at 123: 3-5). Before the meeting, Jason Davis bought a recorder online that looked like a pen. (Id. at 126-127). Jason Davis bought this deceptive device to record conversations with the Defendants. (Id.)

Up until the day of the meeting, Sheriff McGuffey was not aware of Jason Davis's RENU rejection or involved in the rejection. (Doc#24, Gramke Depo. at 115:14-24; 154: 15-22; Ketteman Affidavit at ¶13). During the meeting, Gramke talked to Jason Davis about the RENU position. Although there was some discussion about Jennifer Davis's posts, Jason Davis was informed that Jennifer Davis was entitled to say what she wanted to say. (Complaint at ¶35). During this meeting, McGuffey and Gramke never threatened to terminate Jason Davis. (Doc# 23, Jason Depo. at 189:5-7).

### G. Defendants did not want Plaintiffs to divorce.

The Defendants never desired Jason Davis to divorce his wife, and Plaintiffs are simply misconstruing vague anecdotes. During the October meeting, Sheriff McGuffey merely told an off-the-cuff story about a lazy "roommate." (Doc# 24, Gramke Depo. at 202:20-23). Sheriff McGuffey was not even in a romantic relationship with the roommate in the story, let alone married to the roommate. (Doc #26, McGuffey Depo. at 57). Sheriff McGuffey suggested that Jason Davis cut loose "people" who were holding him back in life. (Doc# 23, Jason Depo. at 182:7-9). "People" is a plural noun that could theoretically mean a lot of individuals, but it does not in any

7

way refer to a *single* individual because "people" is not a singular noun. Sheriff McGuffey was referring to Jason Davis's involvement with deputies in the Anderson office, who were complaining about the County's beard and vest policies. (Doc# 24, Gramke Depo. at 202: 17-19; 205:4-9). Sheriff McGuffey was not referring to Jennifer Davis, and she never intended to imply that Jason Davis should divorce his wife. (Doc# 26, McGuffey Depo. at 130).

Indeed, nobody ever expressly told Jason Davis that he needed to divorce his wife in the meeting. (Doc# 23, Jason Depo. at 183-185). Jason Davis never bothered to ask Sheriff McGuffey to clarify what she meant by her vague statements or whether she intended to instruct him to divorce his wife. (Id.) Instead, Jason Davis admitted in deposition that he is basing his allegations merely on his interpretation of potential implications. (Id. at 194:15-20). Plaintiffs just assumed the worst potential interpretation about a vague, impromptu story from Sheriff McGuffey because of Plaintiffs' animosity towards Sheriff McGuffey.

### H. Davis resigned on January 9, 2024, before he was qualified for a promotion to corporal.

Jason Davis resigned on January 9, 2024. To qualify for a corporal position, deputies need to take a test. (Exhibit 1 at 19-20). After deputies take the test, a ranking list is released. These test results lasted for two years. When a corporal position opens during that period, the next three deputies on the list are then considered for that corporal position. (Id.) When Jason Davis's test results came out in January of 2023, he placed nineteenth, which was in the lower half of rankings. (Ketteman Affidavit at ¶¶6-7). When Jason Davis quit the County, his nineteenth ranking was never in contention for a promotion. (Id. at ¶8). Consequently, it was never Jason Davis's turn to receive a corporal promotion while he was still employed in the County, and he was never qualified for the corporal position while he was with the County. (Id.) Moreover, current Chief Deputy Ketteman has testified that if Jason Davis had remained with the County, he likely would have

received the next open corporal position. (Id. at ¶9). Therefore, Defendants never actually denied Jason Davis a promotion to corporal, and it is Jason Davis's fault that he is not a corporal in Hamilton County today.

**I. Defendants did not intend for Jason Davis to quit.**

Jennifer Davis made her degrading online comments in January of 2021. Jason Davis made false online comments about the Football Event in May of 2022. Jason Davis met with McGuffey and Gramke on October 10, 2023. After the meeting, Jason Davis was never demoted. (Guy Affidavit at ¶12). Jason Davis was not reassigned to a worse position. (Doc#23, Jason Depo. at 208-210). Nobody badgered Jason Davis. (Id. at 207: 13-15). The terms and conditions of Jason Davis's employment were not altered. (Id. at 208-210). Nobody told Jason Davis they wanted him to leave, yet he resigned on January 9, 2024. (Id. at 210: 10-15).

The Union Agreement requires that Defendants follow a progressive disciplinary process to terminate any deputy. (Id. at 188: 12-15). Specifically, Defendants would have needed to begin using warning procedures to take steps to eventually terminate Davis. Before Defendants could terminate Jason Davis, Defendants would have to provide Jason Davis with a hearing to challenge any termination. (Id. at 188: 16-19). Defendants did not take a single step towards engaging in any termination process.

In his deposition, Jason Davis expressly admitted that he had no fear that he was facing termination, and he did not have any feeling that Defendants intended to fire him.

> **Q**. Did you think that they were going to fire you?
>
> **Jason Davis**. No. I just thought they weren't going to promote me.
>
> (Id. at 189: 8-10).

***

**Q**. Did you think they were going to fire you if you stayed married?

**Jason Davis**. No.

      (Id. at 189: 18-20).

***

**Q**. Okay. And you don't think that you're going to be fired because you're married?

**Jason Davis**. No.

      (Id. at 191:4-6).

***

**Q**. Okay. So you're not aware of them taking any steps or having any intent to fire you before you left?

**Jason Davis**. No.

      (Id. at 211:10-13) (Emphasis added).

***

**Q**. At any point during the meeting did Jay Gramke tell you that he wanted you to quit?

**Jason Davis**. To quit, no.

**Q**. At any point during the meeting did Sheriff McGuffey tell you she wanted you to quit?

**Jason Davis**. No. They both said great things about my work performance and how well and how good of an officer I am in my reviews and that ***_they wanted me to stay_***.

      (Id. at 199: 1-9) (Emphasis added).

Therefore, the record exhibits that: (1) Defendants did not want Jason Davis to quit; (2) Defendants did not take a single step to fire Jason Davis; (3) Jason Davis did not believe

10

Defendants were trying to fire him; and (4) Jason understood that Defendants wanted him to stay

with the County.  In reality, the only person who wanted Jason Davis to quit was Jennifer Davis.

**J.  Jennifer Davis is the only person who conditioned her marital support upon Jason Davis's employment decisions.**

Plaintiffs' Complaint expressly states that Jennifer Davis told Jason Davis that she "**could**

**no longer support him if he stayed at the Sheriff's Office**."  (Complaint at ¶40) (emphasis

added).  In deposition, Jason Davis confirmed Jennifer Davis's statements.


> **Q**. So she expressly told you she can no longer support you if you stayed there?
>
> **Jason Davis**. Correct.
>
> > (Doc# 23, Jason Depo. at 198:10-12).
>
> ***
>
> **Q**. When did you decide that you wanted to leave the department?
>
> **Jason Davis**. I -- honestly I can't recall.
>
> **Q**. Was it when Jennifer told you that she couldn't support you any longer?
>
> **Jason Davis**. That started the process.
>
> > (Id. at 200: 14-19)
>
> ***
>
> **Jason Davis**. Correct. Well, yes and no. I really did not know how I was going to continue to work there if my wife did not support me to work there.
>
> **Q**. Okay. So it wasn't that you believed that McGuffey or Gramke would fire you, you believed that you couldn't continue to be a patrol officer because you don't know how you could do that if your wife wouldn't support you as a husband continuing to work as a patrol officer, correct?
>
> **Jason Davis**. Correct. . .

11

(Id. at 201: 20-25 – 202: 1-4).

Therefore, Jennifer Davis threatened to no longer support Jason Davis's employment with the County, and it was Jennifer Davis's ultimatum that led to his eventual resignation. In contrast, Jason Davis understood that Sheriff McGuffey and Jay Gramke wanted him to stay and had no intention of firing him. (Id. at 199: 1-9).

### K. Jennifer Davis suffered no damage, and Defendants never intruded in Plaintiffs' marriage.

Plaintiffs are still married. Defendants have no legal authority to end Plaintiffs' marriage. The Plaintiffs' entire association claim is based upon allegations that Defendants retaliated against Jennifer Davis's online speech. (See Complaint, *generally*). Plaintiffs do not suggest that Defendants otherwise wanted to intrude on their marriage or even cared about the nature of their marriage. (Id.) Simply stated, Plaintiffs' association complaints are little more than duplicative allegations of retaliation against their online speech. (Id.)

In addition, Jennifer Davis suffered no personal employment actions according to Plaintiffs' own Complaint. (Id.). Jennifer Davis has made her own decisions not to work full-time, so she cannot claim that Defendants have caused her to lose any employment opportunities.[4]

None of the Defendants' actions or statements in the October meeting interfered with Jennifer Davis's ability to speak freely. Jennifer Davis admitted that she was too "stubborn" to stop criticizing the Defendants and engaging in online speech.

---

[4] Jennifer Davis Depo at 90-91. Jennifer Davis attempted to claim she could not seek full-time employment because of the Defendants. However, Jennifer Davis was already not employed full-time for quite some time before Jason Davis left the County. Jennifer Davis admitted that the real reason she did not seek full-time employment was because she needed to care for Plaintiffs' dog, which has cancer. Defendants are not the reason Jennifer Davis is not seeking full-time employment. Jennifer Davis's claims concerning her own financial damages are simply not actionable.

**Q**. Did it affect -- when you heard that, did it affect your social media behavior at all?

**Jennifer Davis**. I don't believe so.

**Q**. When you heard that, did you come to the conclusion that you wouldn't post any more critical things any longer?

**Jennifer Davis**. No. My husband knows I'm too stubborn.

(Doc# 25, Jennifer Depo. at 64: 16-22).

Immediately after the October 2023 meeting, Jennifer Davis sent a scathing email to Gramke, where she aggressively scolded both Gramke and Sheriff McGuffey. (Exhibit 6).  After receiving Jennifer Davis's angry email, Defendants did not mention Jennifer Davis's email to Jason Davis, and they took no adverse action against Jason Davis. (Doc. #24, Gramke Depo. at 209-210). Jennifer Davis was never silent because of the Defendants' actions.

## IV.    LAW AND ARGUMENT

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law.  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).  The question is whether there is a factual dispute appropriate for a jury, or if the case is so one-sided that the moving party should prevail as a matter of law.  *Id.*  The moving party bears the burden of showing the absence of material of fact for at least one essential element of the plaintiff's claim.  *Id.*   Once a defendant meets her burden, the plaintiff must "show specific facts that reveal a genuine issue for trial."  *Id.*

Defendants are entitled to partial summary judgment because (1) Plaintiffs did not sue a proper entity; (2) Plaintiffs' constructive discharge claim fails against all Defendants as a matter of law; (3) Plaintiffs' association claim fails as a matter of law against all Defendants; (4) Sheriff McGuffey did not engage in any affirmative act that harmed the Plaintiffs; (5) the Plaintiffs failed

13

to even state an available cause of action under the Ohio Revised Code to support their state law claims; and (6) Jennifer Davis has no standing.

### A. Plaintiffs' claims against Hamilton County fail as a matter of law.

Plaintiffs have not properly named any entity in their suit. This Court has already held that Hamilton County is non *sui juris* and not subject to this Court's jurisdiction. See *Divine*, 2025 U.S. Dist. LEXIS 6164, at *6. In *Divine*, a *pro se* employee filed a discrimination suit against the Hamilton County Sheriff's Office. *Id.* Analyzing the claim as though the plaintiff sued Hamilton County, this Court dismissed the *pro se* employee's claims against the County because non-charter counties in Ohio are not *sui juris*. *Id.* The Ohio Supreme Court has also held that unchartered counties are arms of the state, and not capable of being sued as an entity in *Estate of Fleenor v. Ottawa Cnty.*, 170 Ohio St. 3d 38, 41, 2022-Ohio-3581, ¶ 12, 208 N.E.3d 783, 786; *see also*, *Schee v. Ottawa Cnty.*, No. 3:21-cv-1680, 2025 U.S. Dist. LEXIS 31021, at *15 (N.D. Ohio Feb. 21, 2025) (dismissing a claim against a county on summary judgment because the court concluded that a county is not capable of suit).

Plaintiffs here have made the same fatal error as the *pro se* employee in *Divine*. Plaintiffs named Hamilton County, which is not an entity Plaintiffs may proceed against. This Court should dismiss Plaintiffs' claims against Hamilton County with prejudice.

### B. Defendants are entitled to summary judgment and immunity under Plaintiffs' Count I.

A prima facie case of First Amendment retaliation requires that an employee establish that: "(1) he engaged in constitutionally protected speech or conduct; (2) the employer took an adverse action against him that would deter an ordinary person from engaging in that conduct; and (3) the protected speech was a substantial or motivating factor in the adverse action." *Funk v. City of Lansing*, 821 F. App'x 574, 581 (6th Cir. 2020). If the employee establishes a prima facie case, the

14

burden then shifts to the employer to demonstrate that the employer would have made the same employment decision absent the protected conduct. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012).

A district court considering a claim of qualified immunity "must first determine whether the individual claiming the immunity committed a constitutional violation." *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). If an individual officer has not committed a constitutional violation through her actions, then there is no need for further inquiry regarding qualified immunity. *Id.* A plaintiff must establish that the claimed constitutional violation was based upon "active unconstitutional behavior." *Id.* A plaintiff cannot maintain an action against a sheriff because of the alleged actions of her subordinates. *Id.* A plaintiff also cannot maintain an action against a sheriff for merely failing to act. *Id.*

> 1. <u>Plaintiffs' claims for constructive discharge against all Defendants fail as a matter of law, so all Defendants are immune from those claims.</u>

Defendants did not terminate Jason Davis. Jason Davis quit. A constructive discharge only occurs where an employer makes working conditions so unbearable that an employee is forced to resign. *Funk*, 821 F. App'x at 580. To prove a constructive discharge, an employee must establish both of the following: (1) that the employer deliberately created what a reasonable person would consider intolerable working conditions; and (2) that "**the employer did so with the intention of forcing the employee to quit**." *Id.* (emphasis added). Consequently, it is not enough to show that conditions were intolerable. The employee must also establish that the employer acted "with the specific intention" of forcing the employee to leave. *Id.* An employee can also attempt to establish that the employer communicated that it was about to terminate him, and the "writing was on the wall that the axe was about to fall." *Id.* at 581.

15

In determining whether a reasonable employee would have felt compelled to quit his job, the Sixth Circuit has provided seven factors for courts to evaluate. *Laster*, 746 F.3d at 728. Courts should consider whether the employee: (1) was demoted; (2) suffered a reduced salary; (3) had his current duties reduced; (4) was reassigned to degrading or menial work; (5) was reassigned to work under a younger supervisor; (6) was badgered or harassed in a manner calculated to force him to quit; or (7) was offered early retirement. *Id.* Even when an employee presents some evidence consistent with these factors, he must still establish "this behavior was undertaken with the specific intention of forcing" the employee to quit. *Id.*

For example, in *Laster*, an emergency officer sued the City of Kalamazoo for race discrimination. *Id.* at 719. While still employed with the city, the employee was facing a pre-determination hearing concerning his potential termination. *Id.* at 724. The employee believed his termination was imminent, and he mistakenly believed he would not continue receiving health insurance during the union grievance process. *Id.* The employee quit before his hearing based on these beliefs. *Id.* The employee claimed constructive discharge, and the trial court dismissed his claim on summary judgment. *Id.* at 725. On review, the Sixth Circuit affirmed.

The court held that the employee presented "some evidence he was subjected to heightened scrutiny and treated differently than his non-minority peers." *Id.* at 728. However, the court still determined that the employee failed to present evidence that he suffered intolerable conditions, or that the employer took any action "with the specific intention" of making the employee quit. *Id.* Instead, the employee quit, relying on "bad information." *Id.* Moreover, the employee could not establish that it was apparent the "axe was about to fall." *Id.* The city never told the employee it would terminate him before the hearing occurred. *Id.* at 728-9. Therefore, in the Sixth Circuit, harsh conditions alone are inadequate to show constructive discharge unless the employee

establishes either the employer's intent to cause an employee to quit, or that the employer was about to fire the employee. *See also*, *Funk*, 821 F. App'x at 581-2 (where an employee's constructive discharge claim failed because he could not show that the employer had any intention of causing him to quit, and it never informed the employee it would terminate him before the employee quit).

Here, Plaintiffs have no evidence establishing a constructive discharge. Defendants never intended to force Jason Davis to quit, and Jason Davis admitted in his deposition that he did not even believe Defendants wanted him to quit.

> *a. Plaintiffs cannot establish that Jason Davis suffered any of the Sixth Circuit's factors to establish intolerable working conditions.*

The record confirms the following: (1) Defendants did not demote Davis (Guy Affidavit at ¶12); (2) Defendants did not reduce Jason Davis's salary (Doc# 23, Jason Depo. at 207: 18-20); (3) Davis's duties were not reduced (Id. at 209); (4) Defendants did not reassign Davis to degrading or menial work (Id. at 210: 4-6); (5) Davis was not reassigned to work under a different supervisor after his meeting with Defendants (Id. at 209); (6) McGuffey and Gramke did not interact with Davis or badger him (Id. at 207: 13-15); and (7) Defendants did not suggest that Davis should retire early or otherwise leave the County (Id. at 210: 10-15). Plaintiffs cannot even establish one of the seven factors exhibiting intolerable working conditions as articulated under *Laster*, 746 F.3d at 728.

> *b. Plaintiffs cannot present any evidence that Defendants took any action with the intent of forcing Jason Davis to quit.*

As stated above, a plaintiff must establish it was the employer's intent to force the employee to **quit**, not to get "divorced." *Id., see also*, *Funk*, 821 F. App'x at 580 (holding that an employer must act with the specific intent to cause an employee to quit to establish a constructive

17

discharge claim). According to the far-fetched allegations in Plaintiffs' Complaint, they only really argue that Defendants wanted Jason Davis to divorce his wife in exchange for advancement. However, it would not matter if the Defendants signed a confession that they wished Jason Davis would divorce his wife. Plaintiffs here *must* establish that Defendants "intended" to cause Jason Davis to "quit." Jason Davis admitted in his deposition that Defendants had no such intent. Instead, Jason Davis testified that he was fully aware that Defendants were not trying to terminate him, and that they actually wanted him to stay with the County.

> **Q**. Did you think they were going to fire you if you stayed married?
>
> **Jason Davis**. No.
>
> > (Doc# 23, Jason Depo. at 189: 18-20).
>
> > ***
>
> **Q**. Okay. So you're not aware of them taking any steps or having any intent to fire you before you left?
>
> **Jason Davis**. No.
>
> > (Id. at 211:10-13) (Emphasis added).
>
> > ***
>
> **Jason Davis**. No. They both said great things about my work performance and how well and how good of an officer I am in my reviews and that ***they wanted me to stay***.
>
> > (Id. at 199: 1-9) (Emphasis added).

Conversely, Jennifer Davis expressly told Jason Davis that she "**could no longer support him if he stayed at the Sheriff's Office**." (Complaint at ¶40) (Emphasis added).

> **Q**. So she [Plaintiff Jennifer Davis] expressly told you she can no longer support you if you stayed there?

**Jason Davis**. Correct.

(Id. at 198:10-12).

***

**Q**. Okay. So it wasn't that you believed that McGuffey or Gramke would fire you, you believed that you couldn't continue to be a patrol officer because you don't know how you could do that if your wife wouldn't support you as a husband continuing to work as a patrol officer, correct?

**Jason Davis**. Correct. . .

(Id. at 201: 20-25 – 202: 1-4).

Additionally, Jason Davis cannot show that the "axe was about to fall," and the Union Agreement protected Jason Davis from discharge without just cause. *Funk*, 821 F. App'x at 581; *see also*, *Silverman v. City of N.Y.*, 216 F. Supp. 2d 108, 116 (E.D.N.Y. 2002) (concluding that the fact an employee "could have sought a hearing before being terminated eviscerates his claim that threats of termination created an "intolerable" situation which left him with no other choice than resignation); *Stembridge v. City of N.Y.*, 88 F. Supp. 2d 276, 285 (S.D.N.Y. 2000) (holding that there was no constructive discharge when an employee did not pursue a hearing available under a union agreement).

Here, Defendants are required to follow a detailed progressive discipline process under the Union Agreement. Defendants never engaged in a single step of the progressive discipline process, and Jason Davis testified that he knew he was not facing termination before he quit.

**Q**. Okay. So you're not aware of them taking any steps or having any intent to fire you before you left?

**Jason Davis**. No.

**Q**. Okay. So a little bit about the collective bargaining agreement. You would agree that if Sheriff McGuffey or Jay Gramke had any

19

intent to terminate you, they would have had to take some active
step, correct?

**Jason Davis**. Correct.

(Jason Davis Depo. at 211: 10-19).

Therefore, Jason Davis has not only failed to show that the "axe" was about to fall—Jason

Davis has failed to show that Defendants even went to the tool shed. Sheriff McGuffey and Jay

Gramke are immune to Plaintiffs' constructive discharge claims because there is no evidence that

Defendants intended to cause Jason Davis to quit or that Defendants were about to terminate him.

The record reflects that Jason Davis quit because his wife wanted him to quit.

> 2. <u>Plaintiffs' claims for First Amendment Association against all Defendants fail as a
> matter of law, so all Defendants are immune from those claims.</u>

Plaintiffs cannot maintain a First Amendment Association claim when it is duplicative of a

First Amendment retaliation claim. *Ward v. Athens City Bd. of Educ.*, 1999 U.S. App. LEXIS

22766, No. 97-5967, 1999 WL 623730 (6th Cir. Aug. 11, 1999) (unpublished). In *Ward*, two sisters

claimed they were denied re-admission to their elementary school because of their mother's

complaints about the school. *Id.* The sisters alleged a First Amendment retaliation claim, and they

alleged a freedom of association claim. *Id.* The Sixth Circuit reasoned that the freedom of

association claim required a showing that the school board's actions were an "undue intrusion"

into the relationship between sisters and their mother. *Id.* Like the allegations in this case, the

sisters' claims were not truly based on the school's interference with their family relationships, but

their claims were instead based on the school's alleged "penalization of the blameless Ward girls

on grounds of their association with their mother." *Id.* The Sixth Circuit concluded this claim was

duplicative of the First Amendment retaliation claim. *Id.* The court further held that to maintain a

separate claim based on freedom of association, the plaintiffs needed to show that the adverse

action "would have been constitutionally impermissible even if the action" alleged "was itself

warranted (that is, even if all motives were pure)." *Id.* Thus, the association claim must exist independently of the theory that the defendants' actions were intended to retaliate against speech.

The Sixth Circuit again came to this result in *Henley,* 84 F. App'x at 543-4. There, the Sixth Circuit held that students' association claims based on speech were unsupportable because the students could not show that "the alleged adverse actions they suffered would have been constitutionally impermissible even if Defendants had not had a retaliatory motive." *Id.* The court held that the alleged actions did not constitute a "direct and substantial" limitation on the students' associations. Instead, the students' allegations were only "collateral effects" of the defendants' "alleged intent to retaliate against protected speech." *Id.*, *citing*, *Lyng v. Castillo*, 477 U.S. 635, 638, 91 L. Ed. 2d 527, 106 S. Ct. 2727 (1986) (state action must "'directly and substantially' interfere" with familial associations to violate freedom of association).

Recently, the Sixth Circuit again held that this same standard applied to an employee's association claims against a county sheriff in *Harris v. Butler Cnty.*, 344 F. App'x 195, 200-01 (6th Cir. 2009). In *Harris*, when an employee argued that he was unlawfully retaliated against for his association with a sheriff's political critics, the Sixth Circuit struck down that argument. The court wrote that the employee's "right of intimate association claim is properly characterized as duplicative of his retaliation claim rather than as a separate claim." *Id.*, *citing*, *Henley*, 84 F. App'x at 543.

Here, the Plaintiffs only argue that their association was attacked because Defendants punished Jason's employment due to Jennifer Davis's speech. Plaintiffs' association claim is entirely duplicative of their claims concerning First Amendment speech retaliation. Plaintiffs do not advance that Defendants had any interest in Plaintiffs' marriage beyond their social media speech. Consequently, Plaintiffs' First Amendment Association claim fails as a matter of law.

3. Sheriff McGuffey is immune from all claims against her because there is no evidence in the record that she took a single adverse action against either Plaintiff.

Plaintiffs cannot present any evidence that Sheriff McGuffey harmed either of them in her individual capacity.  Plaintiffs cannot sue a county sheriff because of the actions of her subordinates.  *Summers*, 368 F.3d at 888.  Plaintiffs must instead establish that a sheriff took some unlawful action as an individual that harmed them to pierce her qualified immunity.  *Id.*  Nothing in the record exhibits that Sheriff McGuffey individually took part in any adverse action against them.  Sheriff McGuffey had no role in denying Jason Davis his RENU assignment. (See Ketteman Affidavit).  Jason Davis never qualified for a corporal position before he left the County, so Sheriff McGuffey did not interfere with Jason Davis's advancement to corporal before he quit.  As stated above, Plaintiff Jason Davis admitted that he believed that Sheriff McGuffey wanted him to stay at the County, so his constructive discharge claim fails against Sheriff McGuffey as a matter of law.  See *Funk*, 821 F. App'x at 581-2.  Plaintiffs' association claims are merely duplicative of their first amendment allegations, so those claims also fail.  *Henley*, 84 F. App'x at 543-44.  Plaintiffs' claims against Sheriff McGuffey have no merit.

**C. Sheriff McGuffey and Jay Gramke are immune against Plaintiffs' State law claims under Count II.**

Under 2744.03(A)(6), there is a presumption that public officials are immune from civil claims against them.  *Bowman v. City of Fairview Park*, No. 1:23 CV 1406, 2024 U.S. Dist. LEXIS 70475, at *14 (N.D. Ohio Apr. 17, 2024).  A plaintiff may only overcome this presumption of immunity if he shows: "(1) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed upon the employee by a section of the Revised Code."  *Id.*

Here, Plaintiffs did not state any cause of action against either of the Defendants to overcome immunity, and Plaintiffs have not provided any evidence that Defendant McGuffey caused the Plaintiffs any harm, let alone acted in bad faith or outside the scope of her position.

1. <u>Plaintiffs did not state any cause for relief under Count II against either of the Defendants.</u>

Plaintiffs' Complaint cites R.C. § 2921.45 and alleges that Defendants intentionally interfered with Plaintiffs' civil rights. That statute states the following:

(A) No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

(B) Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

The statute is a *criminal* statute, and it does not provide a *civil* remedy for a plaintiff. Plaintiffs also cite R.C. § 2921.60, and they further claim that they are entitled to damages under that statute. However, there is no such statute as R.C. § 2921.60. (See Chapter 29 of the Ohio Revised Code). Plaintiffs are attempting to bring a claim for civil damages under a criminal statute that does not provide civil remedies, and another statute that does not actually exist. Simply stated, Plaintiffs have failed to even state a theory of recovery under Count II. Sheriff McGuffey and Jay Gramke are immune under Count II because Plaintiffs cannot prevail under a statute that does not exist.

2. <u>Defendants presented no evidence that Sheriff McGuffey acted in bad faith.</u>

Defendants have provided no evidence that Sheriff McGuffey acted with bad faith or malice. As stated above, Sheriff McGuffey was completely uninvolved in Jason Davis's application for RENU. Sheriff McGuffey did not deny Jason Davis a promotion to corporal because he was not even eligible for corporal before he quit. Sheriff McGuffey had no intention

23

of convincing Jason Davis to divorce his wife.  Sheriff McGuffey took no adverse actions against the Plaintiffs.  Sheriff McGuffey is entitled to immunity under Count II.

### D.  Plaintiff Jennifer Davis lacks standing for her claims.

Jennifer Davis has not suffered a single concrete harm, whether actual or imminent, providing her standing in this action.  A plaintiff only has standing when she has "suffered an injury in fact that is concrete, particularized, and actual or imminent."  *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 980 (6th Cir. 2020).   When a plaintiff cannot show that she has suffered actual harm, she must at least show that there is an imminent risk of harm.  *Id.*  Parties cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Clapper,* 568 U.S. 398 at 416.  A plaintiff does not properly claim a substantial interference with association under the First Amendment when she bases her allegations on speech retaliation.  *Henley*, 84 F. App'x at 543-44.  Under those circumstances, her alleged damages are merely "collateral" and not actionable.  *Id.*

Jennifer Davis's marriage was never disrupted.  Plaintiffs are still married.  Defendants do not even have governmental authority to invalidate Plaintiffs' marriage.  Therefore, an actual interference in Plaintiffs' marriage was neither actual nor imminent, and Plaintiff Jennifer Davis's association claims fail because she merely duplicated Plaintiffs' speech retaliation claims.  Regarding Jennifer Davis's speech retaliation claims, she suffered no concrete harms.  Jennifer Davis did not work for the Defendants.  Jennifer Davis was not denied a promotion.  Jennifer Davis was not terminated from Defendants' employment.  Defendants also did not deny Plaintiff Jennifer Davis the ability to speak.  Indeed, just several days after Jason Davis met with Sheriff McGuffey and Jay Gramke in October of 2023, Jennifer Davis sent Jay Gramke a very aggressive email. (Exhibit 6).  Jennifer Davis's speech was not chilled.

24

## V.     CONCLUSION

Defendants Hamilton County, Sheriff McGuffey, and Jay Gramke are entitled to partial summary judgment because (1) Plaintiffs did not sue a proper entity, and they have no claim against Hamilton County; (2) Plaintiffs' constructive discharge claim fails against all Defendants as a matter of law; (3) Plaintiffs' association claim fails as a matter of law against all Defendants; (4) Sheriff McGuffey did not engage in any affirmative act that harmed the Plaintiffs; (5) the Plaintiffs failed to even state an available cause of action to support their state law claims; and (6) Jennifer Davis has no standing.

Accordingly, Defendants Hamilton County, Sheriff McGuffey, and Jay Gramke respectfully request that this Court grants their Partial Motion for Summary Judgment.

Respectfully submitted,

CONNIE PILLICH
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO

/s/*Matt Miller-Novak*
Matt Miller-Novak, 0091402
Stephen A. Simon, 0068268
Andrew E. Prem, 100861
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, OH 45202
DDN:  (513) 946-3219 (Miller-Novak)
DDN:  (513) 946-3289 (Simon)
DDN:  (513) 946-3285 (Prem)
FAX:   (513) 946-3018
*TRIAL ATTORNEYS FOR DEFENDANTS*

## <u>CERTIFICATE OF SERVICE</u>

I certify that this Motion for Summary Judgment was served on Plaintiffs' Counsel using this Court's electronic filing system on this 12th day of June 2025.

*/s/ Matt Miller-Novak*