**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **JASON DAVIS** and | : | Case No. 1:24-cv:0202 |
| **JENNIFER DAVIS,** | | |
| | : | Judge: Barrett |
| Plaintiffs | | |
| | : | |
| v. | | |
| | : | |
| **CHARMAINE McGUFFEY**, et. al. | | |
| | : | |
| Defendants, | | |

<u>**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN
AMENDED ANSWER**</u>

## I.        INTRODUCTION

This is a case about an employee who quit his job because his wife wanted him to quit. Plaintiff Jason Davis ("Davis" or "Plaintiff") has caused all his alleged economic damages, and he has now refused to mitigate his own self-inflicted wounds.   Defendants Hamilton County ("County"), Sheriff McGuffey ("McGuffey"), and Jay Gramke ("Gramke") (collectively "Defendants") seek amendment for one single change in the Answer, which is to add an affirmative defense related to Davis's failure to mitigate his own self-harm.[1]   Davis was given two chances for unconditional reinstatement to his former position with immediate opportunities to advance to corporal.   Yet, Jason Davis rejected both opportunities for economic growth.

Davis's failure to mitigate his self-inflicted wounds will surely bury his alleged damages at trial, and Plaintiffs are aware of this.   However, Plaintiff's fears of the facts and law do not

---

[1] For some reason, Plaintiffs want to argue the merits of every single affirmative defense, which really has nothing to do with the matter at hand.   Those affirmative defenses were already present and have no bearing on the need for leave addressed in this Motion.   Plaintiffs waste much ink on red herrings because they have no credible arguments that Plaintiff did not reject generous opportunities to mitigate his damages.

amount to prejudice.  Plaintiffs Jason Davis's and Jennifer Davis's claims of prejudice fail because: (1) all the Plaintiffs' economic damages are self-inflicted; (2) Plaintiffs just recently rejected two opportunities to completely mitigate those self-inflicted harms; (3) Plaintiffs have already deposed the County regarding their failure to mitigate; (4) Plaintiffs had two months to conduct written discovery on their failure to mitigate; (5) Plaintiffs seemingly made a conscious decision to not conduct written discovery on their failure to mitigate; and (6) Plaintiffs still could technically conduct written discovery on their failure to mitigate.

This affirmative defense does not prejudice the Plaintiffs.  The Plaintiffs are just afraid of the affirmative defense.

### A.  Plaintiff Davis quit because his wife wanted him to quit.

Plaintiff Jason Davis was a patrol deputy with Hamilton County.  Jason Davis claims that he was denied a special assignment to the Regional Enforcement of Narcotics Unit ("RENU") because of the Plaintiffs' online speech.  (See Complaint, generally).  Davis claims that he would not have received a promotion if he remained married to his wife, Plaintiff Jennifer Davis. (Id.) However, Jason Davis admitted under cross examination that he began the process of looking for another job when Jennifer Davis threatened to withhold her marital support if he stayed with the County.

> **Q**. So she expressly told you she can no longer support you if you stayed there?
>
> **Jason Davis**. Correct.
>
> (Doc# 23, Jason Depo. at 198:10-12).
>
> ***
>
> **Q**. When did you decide that you wanted to leave the department?
>
> **Jason Davis**. I -- honestly I can't recall.

**Q**. Was it when Jennifer told you that she couldn't support you any longer?

**Jason Davis**. That started the process.

(Id. at 200: 14-19)

***

**Jason Davis**. Correct. Well, yes and no. I really did not know how I was going to continue to work there if my wife did not support me to work there.

**Q**. Okay. So it wasn't that you believed that McGuffey or Gramke would fire you, you believed that you couldn't continue to be a patrol officer because you don't know how you could do that if your wife wouldn't support you as a husband continuing to work as a patrol officer, correct?

**Jason Davis**. Correct. . .

(Id. at 201: 20-25 – 202: 1-4).

Davis ultimately resigned from his employment on January 30, 2024, because he wanted his wife's continued support.  This was a marital decision the Plaintiffs made together.

**B.  Jason Davis is seeking economic damages for his own marital decisions.**

Even though Jason Davis admitted that he began the process of looking for another job to secure his wife's marital support, Jason Davis still argues that the County's taxpayers should foot the bill for the financial consequences of the Plaintiffs' own decisions.  Jason Davis is seeking back pay beyond his resignation date.  Jason Davis is seeking front pay.  Jason Davis is also seeking damages related to his own pension decisions.

**C.  Plaintiffs have had notice of their ongoing duty to mitigate their self-inflicted damage during this entire case.**

Although the County did not initially include the affirmative defense in its Answer because Jason Davis had already obtained other employment, the County did conduct written discovery and oral discovery on Jason Davis's mitigation efforts.  Plaintiffs are aware that the County

3

subpoenaed Davis's new employer for information, and that the Defendants deposed Davis about his current income. (See Declaration of Andrew Prem).   Thus, Defendants have always had notice that Davis's mitigation efforts could impact his claims.

However, it was not until very recently that Davis rejected two unconditional offers to completely mitigate his self-inflicted damage and obtain what the Defendants contend is a surplus.

### D. Jason Davis rejected two unconditional offers to reinstate him to his previous position with immediate promotional opportunities.

Jason Davis was a patrol deputy when he quit.  On August 15, 2025, Defendants offered Jason Davis to unconditionally reinstate Davis as a corporal, which would have been a higher paying position than the one Davis left.  (Exhibit 1).  In fact, this is the promotion Jason Davis claimed he would never receive. (See Complaint generally).  This first offer also would have provided Jason Davis with all his alleged back pay. (Exhibit 1).   Jason Davis rejected this opportunity to receive complete mitigation and promotion.  Jason Davis's rejection contained hyperbolic arguments and untrue accusations, and it also expressed concerns about the Union. (See Doc#36-3 at Exhibit 2).  The County assumed Plaintiffs' Counsel penned the rejection, so there was no real reason to address the hyperbolic puffery and accusations.

The County still addressed Jason Davis's Union concerns without needlessly addressing the melodrama of Davis's first rejection. The County sent Jason Davis a second offer of reinstatement on August 27, 2025. (Exhibit 2)   In the second offer, the County gave Davis another chance to mitigate his self-inflicted damage.  Defendants offered to reinstate Jason Davis to his former position of patrol deputy. (Id.)  Additionally, Defendants offered Jason Davis an immediate chance for promotion to corporal conditioned only on the Union's approval, which is what Davis wanted.  (Id.)

Therefore, Jason Davis was provided with two offers for reinstatement that were superior opportunities to his previous position.  Jason Davis rejected these opportunities.  Jason Davis apparently just wants to continue grinding his dull axe and asking taxpayers to foot the bill for his self-inflicted wounds.

### E.  There was no County directive concerning Plaintiffs' marriage.

There was not a County "directive" that Jason Davis was not permitted to remain married to Jennifer Davis.  Quite frankly, the more Plaintiffs write that argument, the more unsophisticated and theatrical it reads.  It is common sense that a county sheriff has no statutory power to regulate marriages, it is common sense that Sheriff McGuffey cannot invalidate the Plaintiffs' marriage with any directive, and Sheriff McGuffey never expressly stated that Plaintiffs should divorce.  Sheriff McGuffey told an off-the-cuff story about a coworker she stopped hanging around with, and Davis just advances a self-serving, cynical interpretation of a vague anecdote.[2]

However, regardless of Plaintiffs' far-fetched constructive discharge claim, the County was willing to reinstate and promote Jason Davis while he remained married to Jennifer Davis.  Therefore, there is clearly no "directive" that Jason Davis is not permitted to remain married to Jennifer Davis.

### F.  Plaintiffs had time to conduct written discovery on their failure to mitigate, and they *already* have conducted discovery on their failure to mitigate.

Both this Court's scheduling order and the Gregorian Calendar reject the Plaintiffs' arguments about prejudice.  Plaintiffs claim it is too late to conduct written discovery.  (See the Declaration of Chris Weist).  However, the current deadline for fact discovery is October 13, 2025.  Plaintiffs could still conduct written discovery on the issue right now if they chose to do so.   More

---

[2] Considering that Davis admitted under cross examination that it was Jennifer Davis's ultimatum of marital support that started the process of looking for new employment, it was not even Sheriff McGuffey's story that started Davis's process of leaving the County according to his own testimony.

importantly, the first offer of reinstatement was sent to Plaintiffs on August 15, 2025. (Exhibit 1). That happened two months before the October 13 deadline. The second reinstatement letter was sent on August 22, which is almost two months before the deadline. In all that time, Plaintiffs could have issued written discovery on the matter, and they have seemingly chosen not to do so.

Additionally, the Plaintiffs have already conducted discovery on the mitigation issue. As reflected in Plaintiffs' own exhibit tags, the Plaintiffs questioned Chief Ketteman about the offer letters some in deposition on August 27, 2025. (See Doc# 36-3 at Exhibits 1-3). Plaintiffs' Counsel also amended their FRCP 30(b)(6) notice to depose the corporate representative about the reinstatement letters. Plaintiffs did depose the corporate representative, Pete Stackpole, regarding the reinstatement letters on August 28, 2025. (See Doc#36-6, generally). The only topics covered in that deposition on August 28th were the reinstatement letters. (Id.)

In fact, in Attorney Chris Weists's own words, "[w]e are here to talk about some letters, three of them." *Id.* at 225. That deposition began at 10:37am, and it lasted until 12:00pm. (Id. at 222). Plaintiffs' Counsel spent over an hour interrogating the County's 30(b)(6) representative about the reinstatement letters-at-issue. (Id., generally).

Although Plaintiffs asked several improper questions about privileged communications, they were able to spend over an hour asking questions that did not address privileged matters. (Id.) Plaintiffs' privileged questions directly seeking attorney/client communications would have been improper eight months ago, and they will remain improper eight months from now. Defendants have every right to assert privilege in a deposition.[3] The Defendants' right to privileged

---

[3] Plaintiffs were repeatedly informed that certain reasons for certain decisions were the product of conversations between the Defendants and their Counsel, and that those conversations were privileged. As clearly reflected in the 90-minute deposition, Plaintiffs still received many answers to many questions. After all that information, it is very telling that they can only muster conclusory allegations and buzzwords

communications with their Counsel is not dependent upon Plaintiffs' desired timeline, and Defendants' right to invoke attorney/client privilege in deposition is certainly not a reason to deny leave.

Simply stated, Plaintiffs have already conducted discovery on non-privileged matters related to the issue, and they are not prejudiced.

### G. It was not the Defendants' duty to predict if Jason Davis would refuse to completely mitigate all his self-inflicted damages.

Jason Davis just rejected these offers, this is a new development, and Defendants sought leave to amend right away. Plaintiffs cannot credibly dispute this. It is Jason's Davis's duty to mitigate his damages.[4] That duty is ongoing. As shown above, Jason Davis was offered his former position and an immediate opportunity for promotion, which would have resulted in total mitigation. In fact, if Jason Davis accepted these offers, the Defendants would not have needed to amend their Answer at all. **This Amendment is only necessary because Jason Davis refused complete mitigation.** The issues here have nothing to do with delay. The issues here have everything to do with Jason Davis's insistence on continually harming himself and asking for the taxpayers to pay for his own decisions.

### II.    LAW AND ARGUMENT

This Court has already rejected similar arguments to those Plaintiffs bring here. In *Holloway v. Kings Dodge Inc.*, No. 1:16cv1075, 2019 U.S. Dist. LEXIS 240965, at *2 (S.D. Ohio Feb. 25, 2019), an employee attempted to argue against the inclusion of a mitigation defense under

---

like "pretext" in their Memorandum in Opposition. Simply stated, Plaintiffs' already troubled self-inflicted damages are increasingly troubled by their continued financial self-harm.

[4] *Infra*, Part II.

FRCP 16 arguing that an employer waited too long to address its mitigation defense. The plaintiff further erroneously claimed delay and prejudice. *Id.*

This Court rejected these arguments. This Court held that "a defendant's failure to assert an affirmative defense does not always result in a waiver of that affirmative defense." *Id.* at 4, *citing*, *Seals v. Gen. Motors Corp*., 546 F.3d 766, 770 (6th Cir. 2008). In fact, when a plaintiff receives notice of an affirmative defense from another means, which satisfies the notice policy under FRCP 8(c), then the defendant has not waived the affirmative defense. *Id.* This Court has further held that "delay alone is insufficient reason" for a court to disallow an affirmative defense; "[r]ather, the critical factors are notice and substantial prejudice." *Id., citing, Estes v. Ky. Utils. Co*., 636 F.2d 1131, 1134 (6th Cir. 1980).

For example, in *Holloway*, the employer did not include the mitigation defense in its Answer. *Id.* However, this Court determined that the affirmative defense was not waived because (1) the employer "served interrogatories on Plaintiff that contained questions about [the employee's] employment efforts; and (2) at the employee's "deposition, defense counsel asked Plaintiff if he was currently working, about the jobs he had applied for since his termination, and about the job [the employee] had obtained after his termination." *Id*. at 4-5.

Here, it is not contested that the Defendants conducted both written and oral discovery concerning Davis's current employment, so Plaintiffs have had plenty of notice that Davis's mitigation of damages could become an issue for trial. It is also not contended that Jason Davis very recently rejected offers of reinstatement. Moreover, Plaintiffs have already conducted deposition discovery concerning the reinstatement letters. Because Davis only recently rejected complete mitigation, and the Parties have already conducted discovery on mitigation, there is good cause for amendment.

**A. Plaintiffs knew their ongoing decisions were at issue, and amendment is not futile.**

It is Davis's duty to mitigate his self-inflicted damage, and that duty is ongoing. In a first amendment retaliation case, a plaintiff cuts off his damages as a matter of law when he quits his job. *Edelstein v. Stephens*, No. 1:17cv305, 2024 U.S. Dist. LEXIS 35217, at *12 (S.D. Ohio Feb. 29, 2024). A plaintiff in a first amendment retaliation case also has an ongoing duty to mitigate his economic damages. *Id.* at 10-11.

An unconditional offer of reinstatement can cut off damages. *Ford Motor Co. v. Eeoc*, 458 U.S. 219, 232, 102 S. Ct. 3057, 3066 (1982). In fact, an employer is not required to even offer retroactive seniority. *Id.* And nothing in the law requires that employers offer a superior position to the position the employee left. Instead, this Court has held that an "unconditional offer need not include make-whole relief, nor concede the full extent of the employee's claimed damages." *Geiger v. Kraft Foods Glob.*, *Inc*., No. 1:06-cv-874, 2008 U.S. Dist. LEXIS 16604, at *12 (S.D. Ohio Mar. 3, 2008), *citing*, *Ford Motor Co.*, 458 U.S. 219. A plaintiff must do more than just claim bad faith and that the offers of reinstatement were delayed. See *Id.* at 17-18 (rejecting the employee's arguments that a delayed offer of reinstatement was bad faith).

Here, the County offered Davis unconditional reinstatement, back pay, and an immediate promotional opportunity to corporal. It is not the County's duty to predict that Jason Davis would recklessly reject the opportunities to mitigate all his self-inflicted harms and immediate opportunities to earn one of his desired promotions. The County's offers of reinstatement *far surpassed* the requirements of *Ford Motor Co.* Nonetheless, Plaintiffs claim these *overly generous* offers were made in bad faith. Plaintiffs' allegations of bad faith are in bad form. Plaintiff Davis caused all his economic damage when he decided to quit in the first instance, and Davis continues to choose grinding his dull axe over mitigating his self-inflicted wounds.

**B. Plaintiffs are not prejudiced**.

Plaintiffs' complaints about prejudice are meritless and at times incredible. Plaintiffs already deposed the County's 30(b)(6) representative about Plaintiffs' failure to mitigate their self-inflicted damages for over an hour. Plaintiffs had two months to conduct written discovery on their failures to mitigate their self-inflicted damages, and they have seemingly decided not to conduct written discovery. In fact, Plaintiffs still had weeks left to conduct written discovery when Plaintiffs declared they had no time left. Plaintiffs are not prejudiced. They are just afraid of the merits.

**III.     CONCLUSION**

Accordingly, the Defendants respectfully request that this Court grants them leave to amend their Answer to include the single additional affirmative defense related to Davis's willful rejection of complete mitigation of his already self-inflicted loss.

Respectfully submitted,

CONNIE PILLICH
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO

/s/*Matt Miller-Novak*
Matt Miller-Novak, 0091402
Stephen A. Simon, 0068268
Andrew E. Prem, 100861
Assistant Prosecuting Attorneys
Hamilton County, Ohio
230 E. Ninth Street, Suite 4000
Cincinnati, OH 45202
DDN:  (513) 946-3219 (Miller-Novak)
DDN:  (513) 946-3289 (Simon)
DDN:  (513) 946-3285 (Prem)
FAX:  (513) 946-3018
*TRIAL ATTORNEYS FOR DEFENDANTS*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that this Reply was served on Plaintiffs' Counsel using this Court's electronic filing system on this 26th day of September 2025.

*<u>/s/ Matt Miller-Novak</u>*