# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## THE HAMILTON COUNTY SHERIFF

## AND

## HAMILTON COUNTY SHERIFF'S ASSOCIATION (HCSA)
### (Enforcement Officers)

**SERB CASE NO.**
**2020-MED-09-1000**

**Effective Through**
**December 31, 2023**

{12/29/2020 AGHAMSF 00259272.DOCX }



EXHIBIT

7

KL

5/6/25

Jason Davis

# TABLE OF CONTENTS

| ARTICLE | TITLE | PAGE |
|---|---|---|
| 1 | Agreement/Purpose | 1 |
| 2 | HCSA Recognition | 1 |
| 3 | HCSA Security | 2 |
| 4 | HCSA Representation | 3 |
| 5 | Management Rights | 5 |
| 6 | Non-Discrimination | 6 |
| 7 | Labor/Management Meetings | 7 |
| 8 | Grievance Procedure | 7 |
| 9 | Discipline | 11 |
| 10 | Personnel Files | 14 |
| 11 | Probationary Periods | 15 |
| 12 | Seniority | 16 |
| 13 | Layoff and Recall | 17 |
| 14 | Vacancies | 18 |
| 15 | Bulletin Boards | 20 |
| 16 | Work Rules – General Orders | 21 |
| 17 | Performance Evaluation | 21 |
| 18 | Physical Fitness | 21 |
| 19 | Hours of Work and Overtime | 22 |
| 20 | Wages and Compensation | 25 |
| 21 | Court Time/Call-In Time/Stand-By | 27 |
| 22 | Insurance | 28 |
| 23 | Holidays | 29 |
| 24 | Vacation | 30 |
| 25 | Sick Leave | 33 |
| 26 | Occupational Injury Leave | 35 |
| 27 | Donated Time | 36 |
| 28 | Uniforms and Equipment | 37 |
| 29 | Expenses | 38 |
| 30 | Training | 39 |
| 31 | Leaves of Absence | 39 |
| 32 | Outside Employment | 44 |
| 33 | Drug/Alcohol Testing | 44 |
| 34 | Health and Safety | 47 |
| 35 | Civil Service Compliance | 47 |
| 36 | No Strike/No Lockout | 47 |
| 37 | Severability | 48 |
| 38 | Waiver in Case of Emergency | 48 |
| 39 | Copies of the Agreement | 48 |
| 40 | Tuition Reimbursement | 49 |
| 41 | Sub-Contracting | 49 |
| 42 | Residency | 49 |
| 43 | Duration | 49 |
| 44 | Military Reserve | 50 |
| 45 | Preferred Assignments | 50 |
|  | Signature Page | 52 |
|  | Appendix A: Shift Assignments Per District | 53 |
|  | Side Letter | 55 |
|  | MOU | 59 |

{12/29/2020 AGHAMSF 00259272.DOCX }

# ARTICLE 1
## AGREEMENT/PURPOSE

**Section 1.1.** The Agreement, entered into by the Hamilton County Sheriff, hereinafter referred to as the "Employer," and the Hamilton County Sheriff's Association, hereinafter referred to as the "HCSA," has as its purpose the following:

> To comply with the requirements of Chapter 4117 of the Ohio Revised Code; and to set forth in its entirety, the full and complete understandings and agreements between the parties governing the wages, hours, terms, and other conditions of employment for those employees included in the bargaining unit as defined herein.

# ARTICLE 2
## HCSA RECOGNITION

**Section 2.1.** The Employer recognizes the HCSA as the sole and exclusive representative for all full-time employees in the bargaining unit as set forth in the certification issued by the Ohio State Employment Relations Board in case number 2018-REP-01-0001:

> All regular full-time employees of the Sheriff's Office Enforcement Unit in the following classifications: Enforcement Officer, Enforcement Corporal, Court Service Officer, Court Service Corporal, Enforcement Clerk, Evidence Technician, Range Officer, Law Enforcement Investigator, Execution Officer, Enforcement Officers and Corporals in the Electronic Monitoring Section (Electronic Monitoring Officers shall be considered in the classification of Court Service Officer);

but excluding:

> All other employees.

**Section 2.2.** The Employer will not recognize any other organization as the representative for any employee within the bargaining unit referenced above.

**Section 2.3.** In the event of a change of duties of a position within the bargaining unit, or in the event that a new position is created within the department, the Employer shall determine whether the new or changed position will be included in or excluded from the bargaining unit and shall so advise the HCSA in writing within thirty (30) calendar days. If the HCSA disputes the Employer's determination of bargaining unit status, the parties shall meet in an attempt to resolve their disagreement within seven (7) calendar days from the HCSA notification to the Employer. If the parties agree on the determination, it shall be implemented as agreed by the Employer and the HCSA; except that if the change would represent a change to the bargaining unit or either party believes it is not clear whether the change would represent a change to the unit, the parties will submit a joint petition to SERB to clarify or amend the bargaining unit.

1

If the parties do not agree, the position shall be subject to the challenge by the HCSA to the State Employment Relations Board pursuant to Chapter 4117 of the Ohio Revised Code and the SERB Rules and Regulations.

## ARTICLE 3
## HCSA SECURITY

**Section 3.1.** The Employer agrees to deduct HCSA membership dues, fees, and assessments in accordance with this Article for all employees eligible for the bargaining unit.

**Section 3.2.** The Employer agrees to deduct HCSA membership dues once each pay period from the pay of any eligible employee in the bargaining unit upon receiving written authorization signed individually and voluntarily by the employee. The signed payroll deduction form must be presented to the Employer by the employee or his/her designee. Upon receipt of the proper authorization, the Employer will deduct HCSA dues from the payroll check for the next pay period in which dues are normally deducted following the pay period in which the authorization was received by the Employer.

**Section 3.3.** As a condition of employment, sixty (60) days following the beginning of employment, employees in the bargaining unit who are not members of the HCSA, including employees who resign from membership in the HCSA after the effective date of this Labor Agreement, shall pay to the HCSA, through payroll deduction, a fair share fee. The fair share fee is automatic and does not require the written authorization of the employee. This provision shall not require any employee to become or remain a member of the HCSA, nor shall the fair share fee exceed the dues paid by members of the HCSA in the same bargaining unit. The HCSA is responsible for annually certifying to the Employer the amount of the fair share fee, along with a breakdown of its use, prior to the implementation of this Section. If an employee challenges through the Courts or the State Employment Relations Board the deduction of the fair share fee, his/her deductions shall continue, but the funds shall be placed in an interest bearing escrow account until a resolution of his/her challenge is reached. The party in whose favor the resolution is determined shall receive the escrowed funds, including the interest, if any.
NOTE: For any period of time that Fair Share fees are unlawful, the provisions of this section shall have no force and effect. The Parties acknowledge that at the time of execution of this Agreement, Fair Share fees are currently invalid per *Janus v. AFSCME. Council 31, et al* (US Supreme Court – June 27, 2018).

**Section 3.4.** The parties agree that the Employer assumes no obligations, financial or otherwise, arising out of the provisions of this Article regarding the deduction of HCSA dues, fees, and/or assessments. The HCSA hereby agrees that it will indemnify and hold the Employer harmless from any claims, actions or proceedings by any employee arising from deduction made by the Employer pursuant to this Article. Once the funds are remitted to the HCSA, their disposition thereafter shall be the sole and exclusive obligation and responsibility of the HCSA.

**Section 3.5.** The Employer shall be relieved from making such individual "check-off" deductions upon an employee's: (1) termination of employment; (2) transfer to a job other than

2

one covered by the bargaining unit; (3) layoff from work; (4) an unpaid leave of absence; (5) revocation of the check-off authorization; or (6) resignation by the employee from the HCSA.

**Section 3.6.** The Employer shall not be obligated to make dues deductions from any employee who, during any pay periods involved, shall have failed to receive sufficient wages to make all legally required deductions in addition to the deduction of HCSA dues.

**Section 3.7.** The parties agree that neither the employees nor the HCSA shall have a claim against the Employer for errors in the processing of deductions, unless a claim or error is made to the Employer in writing within sixty (60) days after the date of such an error is claimed to have occurred. If it is found that an error was made, it will be corrected at the next pay period that the HCSA dues deduction would normally be made by deducting the proper amount.

**Section 3.8.** The rate of which dues are to be deducted shall be certified to the Employer or designee by the HCSA during January of each year. One (1) month advance notice must be given the Employer or designee prior to making any changes in an individual's dues deduction.

**Section 3.9.** Except as otherwise provided herein, each eligible employee's written authorization for dues deduction shall be honored by the Employer for the duration of this Agreement or until such employee submits a written revocation of the dues deduction authorization to the Employer or designee.

## ARTICLE 4
## HCSA REPRESENTATION

**Section 4.1.** HCSA counsel shall be admitted to the Employer's facilities for the purpose of processing grievances or attending meetings as permitted herein. Upon arrival, the HCSA counsel shall identify himself/herself to the Employer or the Employer's designee.

**Section 4.2.** The Employer shall recognize nine (9) employees (a minimum of two [2] of which will be representatives from Court Services and a minimum of two [2] of which will be representatives from Patrol), designated by the HCSA, to act as HCSA associates for the purposes of processing grievances in accordance with the Grievance Procedure. The associates, or in their absence or inability to perform their function, designated alternates, shall be recognized as representatives, as provided herein.

**Section 4.3.** The HCSA shall provide to the Employer an official roster of its officers and associates which is to be kept current at all times and shall include the following:

A.      Name

B.      Address

C.      Home telephone number

D.      Immediate Supervisor

3

E.     HCSA office held

No employee shall be recognized by the Employer as a HCSA associate until the HCSA has presented the Employer with written certification of that person's selection.

**Section 4.4.** The investigation or writing of grievances (alleged or filed) by associates may be performed during working hours when such activity does not interfere with the performance of the associate's assigned duties. The following are considered authorized representational activities which may be conducted during an associate's work time when release of the associate will not unduly disrupt the operation of the Department:

A.     Preparation for and attendance at grievance and disciplinary hearings. The associate will be given a reasonable amount of time immediately prior to a hearing for preparation.

B.     Investigation of any situation involving a work related injury or death of a bargaining unit member.

C.     Any other representational activity specifically authorized by this Agreement (such as Labor/Management meetings), or specifically authorized by the Employer or designee(s).

D.     A reasonable amount of paid time to consult with non-employee representatives of the HCSA.

After obtaining permission to engage in representational activities as provided for in this Section, each associate or alternate will notify the appropriate supervisor of his/her absence from his/her work assignment. Upon entering any work area other than his/her own work area, and prior to engaging in any representational activities provided for in this Section, the associate or alternate shall request permission from the appropriate supervisor of such work area, and shall identify the nature of the representational activity he/she is to perform.

**Section 4.5.** The HCSA agrees that no representative or associate of the HCSA, either employee or non-employee of the Employer, shall interfere, interrupt, or disrupt the normal work duties of employees. Further, the HCSA agrees not to conduct meetings (bargaining unit, lodge, or committee meetings) involving on-duty employees except to the extent specifically authorized by the Employer. Bargaining unit members shall not conduct HCSA business (defined as fund raising activities, solicitation for memberships, or distribution of literature) on behalf of the HCSA, during the work time of any involved employee. Unauthorized activities shall cease upon the demand of a supervisor, and any failure to cease unauthorized activities may subject the offending employee(s) to disciplinary action.

**Section 4.6.  HCSA Bargaining Committee.** The wage demands have been submitted in good faith. All members of the HCSA Wage Committee shall be free from coercion, intimidation, discrimination, transfer (in retaliation for engaging in collective activities), threats or other detrimental actions.

4

{12/29/2020 AGHAMSF 00259272.DOCX }

**Section 4.7.** The HCSA shall be permitted to utilize the intradepartmental mail system in order to communicate confidentially with bargaining unit members.

**Section 4.8.** The HCSA shall be permitted, upon prior notification to the Employer, to place ballot boxes in each division or facility for the purpose of collecting employees' ballots on HCSA issues subject to ballot. Ballot boxes and their contents are the property of the HCSA and shall not be subject to review by the Employer or non-bargaining unit staff.

**Section 4.9.** The HCSA shall be permitted to address all new bargaining unit members during regularly scheduled classroom training/orientation before such members complete their training period. The presentation shall be scheduled by the Employer and shall not exceed thirty (30) minutes in duration.

**Section 4.10.** During each calendar year, HCSA members shall be granted a total of three hundred (300) hours of paid time to engage in the following HCSA activities:

A. Conducting HCSA representational activities as provided for in this Article by the Chairman of the HCSA Bargaining Committee.

B. Attending labor relations training programs sponsored by the HCSA.

Written requests for release time for activities specified in (B) above shall be provided to the appropriate supervisor no less than fourteen (14) calendar days prior to the requested release time. Such release time shall not unreasonably interfere with the efficient operation of the released employees' work area(s). Such release time shall not be unreasonably denied.

Written request for release time for the Chairman of the HCSA Bargaining Committee for activities specified in this Article shall be provided to the appropriate supervisor as far in advance as possible, but not less than seventy-two (72) hours in advance of the requested release time. Such release time shall not unreasonably interfere with the efficient operation of the released employee's work area. Such release time shall not be unreasonably denied.

The Chairman of the HCSA Bargaining Committee shall maintain a record of all release time provided for in this Section, and shall ordinarily provide a bi-monthly report to the Patrol Section Commander during the first seven (7) calendar days of each even-numbered month. This report shall contain the date, number of hours of release time, name of HCSA member released, and the nature of the representational activity for each release time occurrence within the previous calendar month. The report shall also include the total number of accumulated release hours used during the calendar year.

## ARTICLE 5
## MANAGEMENT RIGHTS

**Section 5.1.** The Employer possesses the sole right to operate the Department and all management rights reposed in it. The Employer's exclusive rights shall include, but shall not be

5

limited to, the following, except as expressly limited by the terms and conditions set forth in this Agreement:

A. To determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the Department, standards of services, its overall budget, utilization of technology, and organizational structure.

B. To direct, supervise, evaluate, or hire employees.

C. To maintain and improve the efficiency and effectiveness of operations and programs.

D. To determine the overall methods, process, means of personnel by which operations are to be conducted.

E. To suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees.

F. To determine the adequacy of the work force.

G. To determine the overall mission of the Department as a unit of government.

H. To effectively manage the work force.

I. To take actions to carry out the mission of the Department as a governmental unit.

**Section 5.2.** The HCSA recognizes and accepts that all rights and responsibilities of the Employer not specifically modified by this Agreement shall remain the function of the Employer.

**ARTICLE 6**
**NON-DISCRIMINATION**

**Section 6.1.** The Employer and the HCSA agree not to discriminate against any bargaining unit employee with respect to compensation, terms or conditions of employment because of such individual's race, color, religion, sex, age, national origin, disability, ancestry of any person, military status, or HCSA membership or non-membership. Management's use of bona fide occupational qualifications in accordance with job characteristics shall not be construed as discrimination, therefore not subject to the Grievance Procedure Article.

**Section 6.2.** Bargaining unit employees shall not be subject to any threat or reprisal for using the grievance procedure provided herein or for seeking information relative to any grievance.

{ 12/29/2020 AGHAMSF 00259272.DOCX }

## ARTICLE 7
## LABOR/MANAGEMENT MEETINGS

**Section 7.1.** In the interest of sound labor/management relations, unless mutually agreed otherwise, once each quarter on a mutually agreeable day and time, the Employer and/or designee(s) shall meet with not more than three (3) representatives of the HCSA to discuss pending problems and to promote a more harmonious labor/management relationship.

**Section 7.2.** An agenda will be exchanged by the parties at least five (5) working days in advance of the scheduled meeting with a list of matters to be taken up in the meeting and the names of those HCSA representatives who will be attending. The purpose of such meeting shall be to:

A. Discuss the administration of this Agreement.

B. Notify the HCSA of changes made by the Employer which affect bargaining unit members of the HCSA.

C. Discuss grievances which have not been processed beyond the final step of the grievance procedure when such discussions are mutually agreed to by the parties.

D. Disseminate general information of interest to the parties.

E. Discuss ways to increase productivity and improve effectiveness.

F. To consider and discuss health and safety matters relating to employees.

**Section 7.3.** It is further agreed that if special labor/management meetings have been requested, and mutually agreed upon, they shall be convened as soon as possible. If a special labor/management meeting is requested by either party to discuss an emergency health and safety matter, it shall be convened within ten (10) business days of the request. Any decision by the Employer regarding the issue raised at the meeting shall be issued to the Union within fifteen (15) business days of the close of the meeting.

## ARTICLE 8
## GRIEVANCE PROCEDURE

**Section 8.1.** The term "grievance" shall mean an allegation by a bargaining unit employee that there has been a breach, misinterpretation, or improper application of this Agreement. It is not intended that the grievance procedure be used to effect changes in the Articles of this Agreement. It is not intended that the grievance procedure be used to effect changes in those matters which are controlled by the provisions of Federal and/or State laws and/or by the United States or Ohio State constitution.

**Section 8.2.** All grievances must be presented at the proper step and time in progression in order to be considered at the next step. Grievances involving Level 3 or Level 4 Warnings or lost pay

7

discipline (suspension, reduction in pay, removal or discharge) shall be initiated at the Employer's level.

The grievant or the HCSA may withdraw a grievance at any point by submitting, in writing, a statement to that effect, or by permitting the time requirements at any step to lapse without further appeal.

Any grievance not answered by the Employer's representatives within the stipulated time limits may be advanced by the grievant to the next step in the grievance procedure. Time limits set forth herein may only be extended by mutual agreement.

A grievance may be brought by any member of the bargaining unit. Where a group of bargaining unit employees desire to file a grievance involving a situation affecting more than one (1) member of the bargaining unit in a similar manner, one (1) member selected by such group will process the grievance, and shall so indicate that the grievance is a group grievance.

Wherever used in this procedure, the word "day" shall mean calendar day. Whenever a time limit ends on a Saturday, Sunday, or a holiday, the end of the time limit shall run until the end of the next day which is not a Saturday, Sunday or holiday.

**Section 8.3.** A grievance must be submitted to the grievance procedure within fourteen (14) calendar days after an employee knows or should have known the facts giving rise to the grievance, otherwise it will be considered not to have existed.

**Section 8.4.** All grievances must be submitted in writing and should contain the following information to be considered:

A.  Grievant's name and signature;

B.  Date, time and location of grievance;

C.  Description of incident giving rise to the grievance;

D.  Date grievance was first discussed;

E.  Name of supervisor with whom grievance was first discussed;

F.  Date grievance was filed in writing;

G.  Article(s) and Section(s) of the Agreement alleged to have been violated; and

H.  Desired remedy to resolve grievance.

**Section 8.5.** The following steps shall be followed in the formal process of a grievance for employees in the Patrol Division (including Law Enforcement Investigator and Patrol Corporals):

8

{ 12/29/2020 AGHAMSF 00259272.DOCX }

**Step 1**: A grievance may be submitted by the grievant to the Captain supervising the grievant's Section or designee, or the Commander of the Criminal Investigation Section or designee, whichever is applicable, within the time limits set forth in Section 8.3 above. It shall be the responsibility of the proper command officer or designee to investigate the matter and to provide a written answer to the grievant within five (5) calendar days following the day on which the matter was submitted.

**Step 2**: A grievance unresolved at Step 1 may be submitted by the grievant to the Patrol Division Commander or his/her designee within seven (7) calendar days of the presentation of the Step 1 answer. It shall be the responsibility of the Patrol Division Commander or designee to investigate the matter and to provide a written answer to the grievant within five (5) calendar days following the day on which the matter was submitted to the Patrol Division Commander.

**Step 3**: A grievance unresolved at Step 2 may be submitted by the grievant to the Employer or designee within seven (7) calendar days of the presentation of the Step 2 answer. The Employer or designee shall meet with the grievant, and representative of the HCSA if the grievant desires, within seven (7) calendar days of submission of the grievance to Step 3, to discuss the grievance. The Employer or designee shall provide a written answer to the grievant within five (5) calendar days of such meeting.

**Step 4 - Arbitration**: A grievance unresolved at Step 3 may be submitted to arbitration upon request of the HCSA in accordance with the provisions of Section 8.7 of this Article hereinafter set forth.

**Section 8.6.** The following steps shall be followed in the formal process of a grievance for employees in the Court Services Division (including Electronic Monitoring Officers, Electronic Monitoring Corporals, and Execution Officers) and the Organized Crime Division:

**Step 1**: A grievance may be submitted by the grievant to the Court Services Division Commander or designee, or to the Organized Crime Division Commander or designee, whichever is applicable, within the time limits set forth in Section 8.3 above. It shall be the responsibility of the proper command officer or designee to investigate the matter and to provide a written answer to the grievant within five (5) calendar days following the day on which the matter was submitted.

**Step 2**: A grievance unresolved at Step 1 may be submitted by the grievant to the Employer or designee within seven (7) calendar days of the presentation of the Step 1 answer. The Employer or designee shall meet with the grievant, and a representative of the HCSA if the grievant desires, within seven (7) calendar days of submission of the grievance to Step 2, to discuss the grievance. The Employer or designee shall provide a written answer to the grievant within five (5) calendar days of such meeting.

**Step 3 - Arbitration**: A grievance unresolved at Step 2 may be submitted to arbitration upon request of the HCSA in accordance with provisions of Section 8.7 of this Article hereinafter set forth.

9

**Section 8.7.** The HCSA, based upon the facts presented, has the right to decide whether to arbitrate a grievance. Within twenty-four (24) calendar days from the date of the final answer on a grievance from Step 2 or 3, whichever is applicable, the HCSA shall notify the Employer of its intent to seek arbitration over an unresolved grievance. The HCSA may withdraw its request to arbitrate at any time prior to the actual hearing. Any cancellation fee due the arbitrator shall be paid by the party or parties canceling the arbitration. Any grievance not submitted within twenty-four (24) calendar day period described above shall be deemed settled on the basis of the last answer given by the Employer or representative(s).

A. The arbitrator shall be selected in the following manner: The Federal Mediation and Conciliation Service (FMCS) shall be jointly requested to submit a panel list of nine (9) arbitrators from Ohio. The parties shall alternately strike the names of the arbitrators until only one (1) name remains. Either party may once reject the list and request from FMCS another list of nine (9) names until a mutually agreeable arbitrator is selected. The parties may at any time mutually agree to an alternate arbitration service or method of selection of an arbitrator.

B. If either party challenges the arbitrability of a grievance, it shall notify the other party of its challenge and intent to raise the issue at the arbitration hearing. At the hearing, the first question to be placed before the arbitrator is whether or not the issue is arbitrable and within his/her jurisdiction to decide. If the arbitrator determines the grievance is arbitrable, the grievance will be heard on its merits before the same arbitrator. The arbitrator shall limit his/her decision strictly to the interpretation, application, or enforcement of specific Articles of this Agreement. He/she may not modify or amend the Agreement.

C. The decision of the arbitrator shall be final and binding on the grievant, the HCSA and the Employer. The arbitrator shall be requested to issue his/her decision with thirty (30) calendar days after the conclusion of testimony and arguments and submission of final briefs.

D. The fees and any other costs for the services of the arbitrator, the cost of any proofs produced at the direction of the arbitrator, the fee of the arbitrator, and the cost of the hearing room, if any, shall be borne equally by the Employer and the HCSA. The fees and costs, if any, of any non-employee witnesses shall be borne by the party calling them. The fees of the court reporter shall be paid by the party asking for one, or split equally by the parties if both parties desire a court reporter, or request a copy of any transcripts. Any bargaining unit member whose attendance is required for such hearing shall not lose pay or benefits to the extent such hearing hours are during his/her normally scheduled working hours on the day of the hearing. At the conclusion of his/her award the arbitrator may consider the award of additional monetary damages against either party where he/she finds either party to have made a frivolous argument or for violations of this Agreement, after taking into consideration the nature of the violation, the adequacy of any remedy otherwise provided for by this Agreement or requested by the grievant or the

{12/29/2020 AGHAMSF 00259272.DOCX }

HCSA, and the continuing nature of the violation. Such an award may only be made at the request of either party before the close of the hearing.

**Section 8.8.** When an employee covered by this Agreement chooses to represent himself/herself in the presentation of a grievance, no adjustment of the grievance will be inconsistent with the terms of this Agreement. Prior to the adjustment of any such grievance, the appropriate HCSA representative will be notified of his/her right to be present at the adjustment.

**Section 8.9.** The HCSA shall use a grievance form which shall provide the information outlined in Section 8.4. The HCSA shall have the responsibility for the duplication, distribution, and their own accounting of the grievance forms.

## ARTICLE 9
## DISCIPLINE

**Section 9.1.** The tenure of every employee subject to the terms and conditions of this Agreement shall be during good behavior and efficient service. No employee shall be reduced in pay and position, suspended, removed or discharged except for grounds stated in this Agreement. The Employer may take disciplinary action against any employee in the bargaining unit only for just cause. The Employer may take this type of action for actions occurring while the employee is on duty, or working under the colors of the Employer, or in instances where the employee's conduct violates his/her oath of office. Progressive discipline shall take into account the nature of the violation, the employee's record of discipline, and the employee's record of performance and conduct. As such, an employee may receive more than one (1) warning at any level before progressing to the next level. Forms of disciplinary action are as follows:

A.   Level 1 Warning (equivalent to a Counseling Letter);

B.   Level 2 Warning (equivalent to a Written Reprimand);

C.   Level 3 Warning (equivalent to a minor suspension of twenty-four [24] hours or less);

D.   Level 4 Warning (equivalent to a suspension of more than twenty-four [24] hours), and/or reduction in pay and/or position;

E.   Discharge.

Documents known as "General Infraction Guides" are not considered discipline and are not subject to the grievance procedure.

Level 3 and Level 4 Warning letters encompassing a suspension will include the dates for serving of the suspension. Where the charges resulting in the warning are related to absenteeism/tardiness, inefficiency, simple negligence (carelessness), violation of weight and fitness policy, or failure to attend mandatory meetings and functions, the Employer may require an employee to work through the suspension, at the regular rate of pay for hours worked, thus the

11

suspension is a paper suspension only, but shall be recorded in the employee's personnel file in the same manner as a suspension without pay for the purpose of recording disciplinary actions. With the permission of the Sheriff, a suspended employee may forfeit paid vacation leave for all or part of the suspension.

**Section 9.2.** Incompetency, inefficiency, dishonesty, substance abuse, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, absence without leave, or any conduct unbecoming a Deputy Sheriff or any other acts of misfeasance, malfeasance, or nonfeasance shall be cause for disciplinary action. Anonymous complaints with no corroborative evidence shall not be cause for disciplinary action.

**Section 9.3.** Except in instances where an employee is charged with a serious offense, discipline will be applied in a progressive and uniform manner. No employee will receive a Level 3 or 4 Warning, be reduced in pay and/or position or be discharged without first having had the opportunity for a pre-disciplinary hearing. The employee and the HCSA counsel will be given a one hundred twenty (120) hour advance notice of the hearing, with a description of the charges. Notice to the HCSA counsel will be by electronic mail. Continuances will be permitted provided reasonable notice is given, and will not be unreasonably denied. The purpose of the hearing is to give the employee and his representative an opportunity to respond to the charges. There is no requirement for the Employer to present witnesses at the hearing.

The employee must choose to: (1) appear at the disciplinary conference and present an oral or written statement in his/her defense; (2) appear at the disciplinary conference and have one (1) chosen representative present an oral or written statement in his/her defense; or (3) elect in writing to waive his/her opportunity to have a disciplinary conference. Failure of the employee to elect and pursue one (1) of these three (3) options will be deemed a waiver of the employee's right to the disciplinary conference.

At the disciplinary conference, the employee may present any testimony, witness, or documents which explain whether or not the alleged misconduct occurred.

The employee or his/her representative will be permitted to confront and cross examine witnesses subject to the hearing officer's right to reasonably limit the length and extent of such cross examination.

A copy of the completed Internal Affairs report will be available upon request to the employee at the time of notification of the charges.

**Section 9.4.** Level 3 Warnings, Level 4 Warnings, reduction in pay and/or position and discharge may be appealed through the grievance procedure. Level 1 and 2 Warnings may be grieved through the grievance procedure, but are not subject to the arbitration procedure.

**Section 9.5.** Whenever the Employer or designee(s) interviews, questions, or interrogates bargaining unit members in reference to alleged or suspected misconduct, either in preliminary investigations or in disciplinary hearings, the following conditions shall apply:

12

A.   Employees being questioned as witnesses shall be so informed.

B.   When an employee who is suspected of misconduct is interviewed, questioned, or interrogated regarding such misconduct, he/she shall be apprised of the nature of the suspected misconduct as it is known at that time and his/her right to have the opportunity to have a HCSA representative present to advise him/her during the questioning.

C.   Prior to questioning, employees (including witnesses) shall be informed that failure to respond or failure to respond truthfully may result in disciplinary action for insubordination or dishonesty.

D.   Preliminary investigations may be tape recorded. Formal disciplinary hearings shall be tape recorded by the hearing officer. A copy of the recording shall, at the request of the charged employee, be provided to the employee within forty-eight (48) hours of the close of the hearing. The employee may also record the hearing. All meetings or hearings provided for in this Section may be recorded by the charged employee.

E.   Preliminary investigations and disciplinary hearings shall be held either during an employee's scheduled working hours or at a time in reasonable proximity to his/her shift.

F.   Questioning sessions shall be for reasonable periods and shall allow for personal necessities and rest period, it being understood that there shall be no period of continuous questioning exceeding one (1) hour without provision for a ten (10) minute rest break.

G.   No employee shall be subjected to abusive language during questioning. No promise of reward shall be made as an inducement to answer questions.

H.   Results of a polygraph examination, voice stress analysis, or similar technology may not be used in any arbitration procedure under this Agreement.

**Section 9.6.** Any employee required by the Employer to attend an investigatory interview or disciplinary hearing outside of his scheduled working hours shall be paid for all such time.

**Section 9.7.** Any employee charged with or under indictment for a felony, or any crime which results in a weapons disability, who is not disciplined or discharged by the Employer, may be placed on a leave of absence without pay until resolution of the court proceedings. An employee may use accrued but unused vacation, holiday, or compensatory time during the leave. An employee found guilty by the trial court of a felony, or any crime which results in a weapons disability, shall be summarily discharged. Where the charges are reduced to a misdemeanor (other than a crime which results in a weapons disability) or the employee is found innocent of the charges, the employee may be subject to discipline pursuant to the terms of this Article, but he/she shall be paid for all lost straight time hours and shall have any vacation, holiday, and/or compensatory time used restored to his/her credit. The Employer shall continue to pay the employee's insurance premiums during the unpaid leave of absence.

13

**Section 9.8.** In all cases disciplinary action must be instituted within six (6) months of the date of the Employer's verification of the alleged misconduct (i.e., The Memorandum to Personnel File entry request).

**Section 9.9.** Any proposed disciplinary action, regardless of the Level, alleging a Brady list qualifying event shall be investigated by the Internal Affairs unit prior to any discipline being issued.

## ARTICLE 10
## PERSONNEL FILES

**Section 10.1.** Each employee may request to inspect his/her official personnel file maintained by the Employer. Inspection of the individual's personnel file shall be by scheduled appointment requested in writing or by phone call to the Employer or designee. Appointments shall be during the regular scheduled work hours of the administrative staff of the Employer. An employee shall be entitled to have a representative of his/her choice accompany him/her during such review. Any employee may copy documents in his/her official personnel file. Any representative of the HCSA as designated in Article 4 of this Agreement may inspect the personnel file of any bargaining unit employee provided that the employee is present at the time of inspection, or upon written authorization including the signature of the employee.

**Section 10.2.** If an unfavorable statement or notation is in the official personnel file, the employee shall be given the right to place a statement of rebuttal or explanation in the file. No anonymous material of any type shall be included in the employee's official personnel file.

**Section 10.3.** Records of Level 1 Warnings shall cease to have force and effect one (1) year after the date of issuance, provided no intervening discipline has occurred. Records of Level 2 Warnings shall cease to have force and effect two (2) years from the date of issuance, provided no intervening discipline has occurred. Records of Level 3 Warnings, shall cease to have force and effect three (3) years from the date of issuance, provided no intervening discipline has occurred.

Records of Level 4 warnings shall cease to have force and effect five (5) years from the date of issuance, provided no intervening discipline has occurred. In the event of intervening discipline, the intervening discipline will not reduce the retention period for prior discipline and all active records of discipline shall remain in force and effect until at least the end of the retention period for the record of the most recent issuance of discipline.

For example, employee received Level 1 warning January 1, 2006 and Level 2 October 1, 2006 and Level 4 on July 1, 2008 - Records of Level 1, Level 2 and Level 4 all remain in effect until June 30, 2013.

Another example: Employee received Level 4 warning June 1, 2006 and Level 1 on April 1, 2008 (Sheriff shows mercy), Level 1 record expires March 31, 2009, but record of Level 4 remains until May 31, 2011.

14

{12/29/2020 AGHAMSF 00259272.DOCX }

This all assumes no other discipline.

The Employer will remove any disciplinary reports and related files from an employee's personnel file and place them in an inactive file once the discipline no longer has force and effect pursuant to the time limits set forth in this Section.

**Section 10.4.** To the extent permitted by law, the Employer shall not disclose any information contained within the personnel files.

1.  If the Employer receives a public records request for the inspection of any information about an employee covered by this agreement contained within the files kept by the Employer, the Employer shall attempt to ascertain the identity of the person making such a request.

2.  No information may be released until the Employer has provided the employee with a notice of what will be released and to whom it will be released, provided such time to issue the notice does not violate ORC 149.43.

3.  The employee will have five (5) days after being notified in (2) above to file an objection to the release of information and/or to request an opportunity to be heard regarding such release, provided such objection time does not violate ORC 149.43.

4.  If the employee requests a hearing on the release of his or her information, the Employer shall hold such hearing within a reasonable amount of time, and shall allow the employee the opportunity to be heard, provided the delay for such hearing does not violate ORC 149.43.

5.  If, after reviewing the objection and holding the hearing (if applicable), the Employer determines that disclosure of the requested information would not threaten the officer's and/or the officer's families' personal security, or said information is not otherwise protected from disclosure, the Employer will release the information requested.

## ARTICLE 11
## PROBATIONARY PERIODS

**Section 11.1.** Every newly hired employee shall be required to successfully complete a probationary period. The probationary period shall begin on the first day for which the employee receives compensation from the Employer and shall continue for a period of one (1) calendar year. An employee serving an initial probationary period may be terminated at any time and shall have no right to appeal the termination.

**Section 11.2.** Any employee promoted into a higher level position shall be required to successfully complete a probationary period of six (6) months. An employee serving a promotional probationary period whose performance is judged unsatisfactory shall be returned to his/her former classification.

15

{12/29/2020 AGHAMSF 00259272.DOCX }

**Section 11.3.** Any employee, who, while serving a probationary period, misses twenty-two (22) or more work days due to illness or injury, may have the probationary period extended by the length of the illness or injury at the discretion of the Employer. Such extension may not exceed the length of the original probationary period.

**Section 11.4.** The Employer may extend the probationary periods described in Sections 11.1 and 11.2 for additional assessment. Such extension shall not exceed sixty (60) calendar days.

## ARTICLE 12
## SENIORITY

**Section 12.1.** "Seniority" shall accrue to all employees in accordance with the provision of this Article. Seniority, as defined in Section 12.2 of this Article, will apply wherever employee seniority rights are established in the terms and conditions of this Agreement.

**Section 12.2.** "Seniority" shall be computed on the basis of uninterrupted length of continuous service in this bargaining unit and the Enforcement Supervisor unit. Ties will be broken by uninterrupted time served as an employee of the Hamilton County Sheriff. If a tie still exists, it will be broken by uninterrupted time served as an employee of Hamilton County. If a tie still exists, it will be broken by date of application to the Sheriff's Office. For those Electronic Monitoring Officers and Electronic Monitoring Corporals who were opted into this bargaining unit, their seniority dates shall be set at January 10, 2014, for purposes of this Section, with ties being determined by this Section.

A.     The following situations shall not constitute a break in continuous service:

    1.     Absence while on approved leave of absence;

    2.     Absence while on approved sick leave or disability leave;

    3.     Military leave; and

    4.     A layoff of three (3) year's duration or less.

B.     The following situations constitute breaks in continuous service for which seniority is lost:

    1.     Discharge or removal for just cause;

    2.     Retirement;

    3.     Layoff for more than three (3) years;

    4.     Failure to return to work within fourteen (14) calendar days of a recall from layoff;

16

{12/29/2020 AGHAMSF 00259272.DOCX }

5.      Failure to return to work at the expiration of leave of absence; and

6.      A resignation.

**Section 12.3.** The Employer shall post a seniority list, once every six (6) months, on the department bulletin board showing the continuous service of each employee. One (1) copy of the seniority list shall be furnished to the HCSA upon request.

**Section 12.4.** Employees laid off shall retain their seniority for a period of three (3) years from the date of layoff.

**Section 12.5.** Bargaining unit members who have been TDY'd as Execution Officers and Law Enforcement Investigators will retain their seniority regardless of the opt-in date of these positions.

## ARTICLE 13
## LAYOFF AND RECALL

**Section 13.1.** When the Employer determines that a long-term layoff is necessary, he shall notify the affected employees fifteen (15) calendar days in advance of the effective date of the layoff. Employees will be notified of the Employer's decision to implement any short-term layoff, lasting seventy-two (72) hours or less, as soon as possible. The Employer, upon request from the HCSA, agrees to discuss, with representatives of the HCSA, the impact of the layoff on bargaining unit employees. Any layoff in the bargaining unit shall be instituted in accordance with seniority, as defined in Article 12 of this Agreement, within the classification groups. Classification groups are as follows:

| **A** | **B** |
|---|---|
| Corporal | Court Service and Electronic Monitoring Corporal |
| Patrol Officer, Evidence Tech | Court Service and Electronic Monitoring Officer |
| Patrol Clerk | |

Any employee reassigned as a result of a layoff must demonstrate that he/she can perform the duties of the particular position to which he/she is reassigned.

**Section 13.2.** In the event an employee in one of the classification groups is notified of a layoff, and there is a less senior employee in the other classification group, the laid off employee may displace the less senior employee in the other group provided the laid off employee possesses all qualifications and certifications required for that particular position, and (1) the laid off employee has previously held that position or one substantially similar to it, or (2) the laid off employee can demonstrate that he/she can perform the duties of the particular position. Any employee who displaces pursuant to this Section shall be paid at the rate assigned to the classification he/she displaces into or at the rate previously held, whichever is higher. This provision applies only to bargaining unit employees and bargaining unit positions.

17

**Section 13.3.** Employees who are laid off shall be placed on a recall list for a period of three (3) years. If there is a recall, employees who are still on the recall list shall be recalled, in the inverse order of their layoff, provided they are presently qualified to perform the work in the work section to which they are recalled. Any recalled employee requiring additional training to meet the position qualifications in existence at the time of recall must satisfactorily complete the additional training requirements within twelve (12) months of the recall. Any training required in this Section shall be at the Employer's expense.

**Section 13.4.** Notice of recall shall be sent to the employee by certified mail. The Employer shall be deemed to have fulfilled its obligations by mailing the recall notice by certified mail, return receipt requested, to the last mailing address provided by the employee.

**Section 13.5.** The recalled employee shall have five (5) calendar days following the date of receipt of the recall notice to notify the Employer of his/her intention to return to work and shall have fourteen (14) calendar days following the receipt of the recall notice in which to report for duty, unless a different date for returning to work is otherwise specified in the notice.

## ARTICLE 14
## VACANCIES

**Section 14.1.** The parties agree that all appointments to positions covered by this Agreement, other than original appointments or preferred assignments, shall be filled in accordance with this Article, and with bargaining unit members, unless there are no qualified bargaining unit members for a position.

**Section 14.2.** Whenever the Employer determines that a permanent vacancy exists, notices of such vacancy shall be posted on the bulletin boards where employee notices are usually posted for ten (10) calendar days, and read at roll call for three (3) consecutive days during the posting period, prior to filling the vacancy. All such notices shall contain a description of the position to be filled, including job duties, working hours, special qualifications required, name and rank of immediate supervisor, and location of reporting and working. During the posting period, any eligible person wishing to apply for the vacant position shall do so by submitting a written application to the Employer or designee. The Employer shall not be obligated to consider any applications submitted after the posting period or any applicants who do not meet the minimum qualifications for the job.

**Section 14.3.** Prior to considering applicants for promotion, the Employer shall first consider those applicants for a vacancy who are applying for a lateral transfer (same classification and pay range). Filling of vacancies by lateral transfer shall be, all other factors being equal as determined by the Employer, based primarily on seniority. Any vacancy which occurs as a result of a lateral transfer shall be posted and filled in accordance with this Article. There shall be no penalty transfers.

Electronic Monitoring Officers and Electronic Monitoring Corporals shall be eligible for Lateral Transfers as described in Article 14 (Vacancies), Section 14.3, but when applying for a Court Services position or a Patrol Division position, they must have at least three (3) years' service as

18

an Electronic Monitoring Officer, unless waived by the Employer, and must satisfactorily complete a six (6) month trial period. Lateral transfers shall not require any testing as described in the labor agreement. An Electronic Monitoring Officer shall be considered in the Court Services Division for purposes of promotion as described in Section 14.4.

**Section 14.4.** All promotions in rank which result in an increase in pay, or assignment to a higher pay range, shall be based upon merit and fitness as determined by promotional examination. When the Employer determines that a permanent promotional vacancy exists that the Employer intends to fill permanently, the Employer shall fill that vacancy within one hundred twenty (120) calendar days of the position being posted. There shall be separate testing for the Court Service Division and the Patrol Division. For purposes of this Article the Patrol Division includes assignments to the Organized Crime Division. It shall be the sole right and responsibility of the Employer to administer and evaluate all promotional examinations, assessments and testing procedures, and to cause to be developed all promotional examinations, assessments and testing procedures. Examinations shall be developed by an independent testing service. Prior to the administration of any examination, the Employer shall post on department bulletin boards, with a copy to the HCSA, the structure of the examination with the weight to be granted for each factor of part of the examinations. Upon request from the HCSA, the Employer agrees to meet and discuss the structure and weight factors of an examination prior to the examination being administered.

In order to be eligible for a promotional examination, an applicant must have or will have completed the required length of service (as stated on the examination posting) in the immediately preceding rank prior to the date of the examination. In order to be eligible for a promotional examination to Corporal, an applicant must have or will have completed at least three (3) years of uninterrupted service in the Enforcement Officers' bargaining unit prior to the date of the examination.

**Section 14.5.** It is the intention of the parties to give bargaining unit personnel priority for Patrol and Court Service positions over non-bargaining unit personnel. There shall be no testing required for Court Service employees filling a vacancy for the Road Patrol and no testing required for Road Patrol employees filling a vacancy in Court Service. Any employee applying for a Court Services position must have at least three (3) years service in the Patrol Division, unless waived by the Employer. An employee filing a Court Service position from patrol, or a patrol position from Court Services, must satisfactorily complete a six (6) month trial period. If an individual's service is unsatisfactory during the trial period, he/she shall be returned to his/her former position. Further, any individual accepting a position of Patrol Clerk is prohibited from applying for any other position for a period of three (3) years from date of entry into the position, unless waived by the Employer.

**Section 14.6.** If the structure of an examination includes credit for seniority and/or efficiency, an employee must achieve a passing score on all other factors in order to receive seniority and/or efficiency credit. Seniority credit shall be based upon service completed as of the date of the examination. Efficiency credit shall be based upon the last completed evaluation as of the date of the examination.

19

**Section 14.7.** Eligibility lists established by promotional examinations shall remain in effect for two (2) years from the date of certification of the results by the testing service, or until the list is exhausted, which ever comes first. Copies of eligibility lists shall be provided to the HCSA. Any bargaining unit member may inspect his/her written examination within thirty (30) calendar days from the date of certification.

**Section 14.8.** Promotions may be offered to any one (1) of the top three (3) scorers on an examination if more than three (3) pass the examination, or to any employee who passes the examination if three (3) or less take the examination. Employees passed over shall retain their standing on the eligibility list.

**Section 14.9.** Nothing in this Article shall be construed to limit or prevent the Employer from temporarily filling a vacant position pending the Employer's determination to fill the vacancy on a permanent basis. Temporary position holders shall receive no additional credit on the examination process. If an eligibility list is in effect, temporary position holders shall be appointed in accordance with Section 14.8.

A temporary position holder appointed from an eligibility list who is subsequently permanently appointed to the position, shall receive service credit toward completion of the promotional probationary period for the time spent as a temporary position holder. An employee appointed as a temporary position holder shall, after occupying the position for one full pay period, be paid at the applicable pay level of the position.

## ARTICLE 15
## BULLETIN BOARDS

**Section 15.1.** The Employer agrees to provide bulletin board space in agreed upon areas of the facilities for use by the HCSA.

**Section 15.2.** All HCSA notices of any kind posted on the bulletin boards shall be signed, posted or removed by a HCSA representative. It is understood that no material may be posted on any HCSA bulletin board at any time which contain the following:

A.    Personal attacks on any other member or any other employee;

B.    Scandalous, scurrilous or derogatory attacks upon the Employer, or any other governmental units or officials; or

C.    Attacks on and/or favorable comments regarding a candidate for public office.

**Section 15.3.** No HCSA related materials of any kind may be posted anywhere in the Employer's facilities or on the Employer's equipment except on the bulletin boards designated for use by the HCSA.

**Section 15.4.** Upon the request of the Employer or designee, the HCSA shall cause the immediate removal of any material posted in violation of this Article.

20

## ARTICLE 16
## WORK RULES - GENERAL ORDERS

**Section 16.1.** The Employer agrees that all General Orders, Standards of Conduct, Rules and Regulations, Policies, Procedures, Directives and Work Rules shall be applied uniformly within the group of employees to which such are directed. For the purposes of this Article all of the above shall be considered inclusive within the terminology of Work rules/General Orders.

**Section 16.2.** Every employee shall be informed of and shall have access to copies of work rules/general orders which apply to such employee.

**Section 16.3.** Any additions or amendments to the work rules or general orders shall be reduced to writing, posted on department bulletin boards, and signed by all employees to acknowledge awareness of the addition or amendment within five (5) working days of the posting. Any employee on leave of absence, sick leave or vacation shall be required to sign the acknowledgment within three (3) working days upon return to work. This Section does not limit the right of the Employer to implement any work rules prior to the conclusion of the acknowledgment period.

## ARTICLE 17
## PERFORMANCE EVALUATION

**Section 17.1.** All performance evaluation policies and procedures as established by the Employer shall be applied to bargaining unit employees in a consistent and equitable manner.

**Section 17.2.** When an employee has worked under the direction of more than one (1) primary supervisor during any evaluation period, the input of each primary supervisor shall be considered in the preparation of the performance evaluation.

**Section 17.3.** The results of any performance evaluation shall not be subject to the grievance procedure provided for in this Agreement. An employee may, however, utilize the internal review procedure.

## ARTICLE 18
## PHYSICAL FITNESS

**Section 18.1.** Any employee failing to meet physical fitness standards due to valid medical reasons, including a temporary disability or handicap, shall be reasonably accommodated by the Employer, to the extent such accommodation is possible within the Department. Reasonable accommodation shall include, but shall not necessarily be limited to, placement in a physically less demanding position or placement on disability leave under the terms of this Agreement. Placement on disability leave shall be grievable up through and including arbitration. It is the employee's responsibility to request a waiver due to medical reasons, and to submit sufficient evidence to support the request.

21

**Section 18.2.** If an employee obtains a letter from a licensed medical practitioner stating that participation by the employee in any portion of the physical fitness or weight standards policy would be detrimental to his/her health, the Employer may, at the sole discretion of the Employer, require that the employee be examined by a licensed medical practitioner selected by and at the expense of the Employer. Failure of the Employer to exercise such option shall result in an exemption from that portion of the policy which the letter specifically addresses.

The Employer may periodically require that the employee so exempted be reexamined and that a new letter be furnished. The Employer will not unreasonably request this reexamination. In the event of conflicting medical opinions the parties agree to be bound by the opinion of a third licensed doctor to be selected by the Academy of Medicine of Cincinnati.

**Section 18.3.** Any employee who has not been granted a medical exemption or waiver shall, prior to suffering lost pay discipline for failure to meet physical fitness standards, be provided a "Notice of Pending Discipline," stating the reasons for the discipline and the nature of the discipline to be served. If a grievance is filed contesting the proposed discipline, the imposition of discipline shall be stayed pending resolution of the grievance. Arbitration of such grievance shall be expedited. This Section does not apply to disciplinary action for reasons other than failure to meet physical fitness standards.

**Section 18.4.** The parties agree that the removal of "Verbal Admonishment" from the Discipline Article of the Agreement shall not result in the removal of a level of discipline from the Sheriff's Physical Fitness Policy Compliance Standards. Compliance Standards Section A.2 shall accordingly be changed from "verbal admonishment" to "second Level 1 Warning."

**Section 18.5.** The accommodation and waivers under Section 18.1 and 18.2 are automatically granted for a period of sixty (60) calendar days upon initial request, and may be extended in thirty (30) calendar day increments at the discretion of the Employer.

## ARTICLE 19
## HOURS OF WORK AND OVERTIME

**Section 19.1.** Each employee's work schedule shall be determined by the Employer. Work schedules covering not less than a twenty-eight (28) calendar day period shall be posted seven (7) calendar days in advance of their effective date.

Upon report in to work, affected employees shall be given seventy-two (72) hours prior notice of any non-emergency schedule change. No employee shall be pre-scheduled to start more than one (1) shift in a twenty (20) hour period. Patrol personnel shall have no less than an eight (8) hour layover between shifts. Unscheduled overtime and court time shall not be considered a scheduled shift. When proper prior notice has not been given, or an employee is scheduled to start more than one (1) shift in a twenty (20) hour period, the employee shall receive four (4) hours of compensatory time or overtime pay, in addition to being paid for the shift. This provision does not apply when such rescheduling places an employee in overtime status.

22

**Section 19.2.** The standard work period for all bargaining unit employees, except Patrol Clerks and bargaining unit employees on a twelve (12) hour shift assignment, shall consist of no more than one hundred sixty (160) hours, inclusive of any roll call time, within a twenty-eight (28) calendar day period. The standard work period for all bargaining unit employees on a twelve (12) hour shift assignment shall consist of no more than one hundred sixty-eight (168) hours, inclusive of roll call time, within a twenty-eight (28) calendar day period. Shift assignments for bargaining unit employees are described in Appendix A.

The standard work period for Patrol Clerks shall consist of no more than forty (40) hours in a seven (7) calendar day period.

Hours of work for Electronic Monitoring Officers, Electronic Monitoring Corporals, Execution Officers and Law Enforcement Investigators shall be set at a forty (40) hour per week assignment (like Court Services), the hours of which will be determined by the Employer.

**Section 19.3.** Employees shall select their shift assignment within their work assignment area, according to their seniority, subject to the restrictions in Appendix A and the operational needs of the Department. Shift preferences are to be submitted during the month of November of each Agreement year. Upon transfer from one work assignment area to another, a transferred employee shall be given the opportunity to select his/her shift assignment in accordance with his/her seniority within thirty (30) calendar days of the effective date of such transfer; however, Kelly day scheduling will be determined in accordance with Section 19.11. Work in the Electronic Monitoring unit is an assignment, subject to the discretion of the Employer. Assignments to the Electronic Monitoring unit are not subject to any bidding restrictions in the labor agreement, including, but not limited to, Section 19.3 and Appendix A. For the purposes of this Section, seniority means the uninterrupted length of continuous service in the employee's current classification.

**Section 19.4.** All hours worked in excess of an employee's work day, and all hours worked in excess of an employee's standard work period shall be considered overtime and shall be compensated at the rate of one and one-half (1½) times his/her regular straight time hourly rate of pay. There shall be no pyramiding of overtime for the same hours worked or for premium hours paid (i.e., court time, call-out, etc.). Overtime shall be calculated in one-tenth (0.1) hour (six [6] minutes) increments, with a minimum of three-tenths (0.13) hour (eighteen [18] minutes), compensation for overtime of less than eighteen (18) minutes worked. The Employer will maintain voluntary and mandatory overtime lists for bargaining unit employees assigned to both the 4/2 schedule assignments and the 12 hour shift assignments.

**Section 19.5.** Employees may elect, in lieu of overtime pay, to accept compensatory time. Compensatory time shall be credited at the rate of one and one-half (1½) hours off for each one (1) hour of overtime worked. Compensatory time may be accumulated by an employee, but only to a maximum of two hundred eighty (280) hours at any given time. In the event an employee accumulates two hundred eighty (280) hours of compensatory time, then any future overtime hours of work and overtime hours shall be compensated with overtime pay. The following rights and conditions shall exist as they pertain to compensatory time:

23

A.    The election of overtime pay or compensatory time is solely the right of the employee, and he/she shall so indicate his/her election when reporting the overtime worked;

B.    Requests for compensatory time off shall be honored subject to the operational needs of the Department (e.g. having the proper number and type of staff on duty) and provided the grant of compensatory time does not cause forced overtime;

C.    Requests for compensatory time off must be submitted not less than sixteen (16) hours in advance of the time requested;

D.    The Employer may schedule an employee off on compensatory time, so long as such scheduling does not reduce an employee's compensatory time balance below eighty (80) hours;

E.    The Employer shall provide not less than sixteen (16) hours advance notice to an employee of any Employer-scheduled compensatory time off;

F.    Once an employee has reported to work, compensatory time must be used only by mutual agreement of the employee and the Employer;

G.    Compensatory time off requested by an employee which has been approved and scheduled, shall not be canceled except when unanticipated operational needs of the Department would require it;

H.    Requests for compensatory time off in conjunction with vacation shall be honored;

I.    Any employee may elect to convert all or part of his/her accrued compensatory time balance existing as of August 31 of each year to cash, payable by separate check no later than September 30 of each year. Cash-in requirements must be made in whole hour increments, except where the employee is converting his/her entire balance. Payment shall be made at the rate of pay existing at the time of cash-in.

J.    All requests for compensatory time will be approved or denied in writing within a reasonable amount of time of submission.

**Section 19.6.** With the prior approval of the Employer or designee, an employee may exchange days off or work shift assignments with another employee. Such exchanges shall not affect the pay status of either employee, except that an employee who works an exchange and is required to work overtime shall receive the overtime compensation.

Upon request of an employee, and with prior approval of the Employer or designee, an employee may work a scheduled day off in exchange for an additional day off to be scheduled in the work period, without receiving any additional compensation.

**Section 19.7.** When unusual circumstances exist, the Employer may change work schedules concerning hours and days, but cannot exceed one hundred sixty (160) hours in a twenty-eight

24

(28) calendar day period for non-twelve (12) hour shift assignments or one hundred sixty-eight (168) hours in a twenty-eight (28) calendar day period for twelve (12) hour shift assignments, without compensating at a one and one-half (1½) overtime rate. Changing work schedules will be determined by the Employer on an "as needed" basis. Absent extenuating circumstances, the Employer shall not TDY an employee from one shift to another shift or to an off-duty day. Extenuating circumstances shall be determined by the Section Commander or his or her superior.

**Section 19.8.** If the bargaining unit designated representative develops an alternate work schedule, such schedule shall be the subject of a special Labor/Management Meeting pursuant to the provisions of Article 7 of this Agreement.

**Section 19.9.** Pay for overtime shall be paid no later than the pay period following the work period during which the overtime was worked.

**Section 19.10.** The Employer shall have a written procedure covering the assignment of mandatory overtime. The written procedure shall be made available to employees. The Employer will make every reasonable attempt to give any employee required to work mandatory overtime at least one (1) hour notice before the start of the mandatory overtime.

If Mandatory overtime is assigned on an Employee's off day, it will be assigned in no more than 6-hour shifts. (This does not apply to voluntary overtime. Officers may volunteer for more or less than a 6-hour block with the approval of the scheduling supervisor.)

**Section 19.11.** Scheduled unpaid days off, or "Kelly days," may be utilized with any 12 hour schedule. The Kelly days will be assigned by the Employer considering operational needs. If a bargaining unit employee transfers to an assignment that has a scheduled Kelly day, he or she shall assume the scheduled Kelly day until annual Kelly day selections are made. Kelly days shall be considered a regularly scheduled off day.

**ARTICLE 20**
**WAGES AND COMPENSATION**

**Section 20.1.** Effective the first full pay period which includes January 1, 2021 the hourly pay for all bargaining unit employees shall be as follows (which reflects a 3.00% increase):

| POSITION | GRADE | HOURLY | BIWEEKLY | ANNUAL |
|---|---|---|---|---|
| | | | | |
| Patrol Clerk | Entry | $24.6339 | $1,970.71 | $51,238.50 |
| | 1 yr. | $25.6194 | $2,049.55 | $53,288.34 |
| | 2 yr. | $26.6438 | $2,131.51 | $55,419.17 |
| | 3 yr. | $27.2911 | $2,183.29 | $56,765.46 |
| | 4 yr. | $29.2391 | $2,339.13 | $60,817.38 |
| | | | | |
| Court Service Officer/ | Entry | $26.0729 | $2,085.83 | $54,231.64 |

{ 12/29/2020 AGHAMSF 00259272.DOCX }

| | | | | |
|---|---|---|---|---|
| Electronic Monit. Officer | 1 yr. | $27.7446 | $2,219.57 | $57,708.76 |
| | 2yr. | $29.1330 | $2,330.64 | $60,596.71 |
| | 3 yr. | $31.4670 | $2,517.36 | $65,451.39 |
| | 4 yr. | $33.0378 | $2,643.02 | $68,718.55 |
| | | | | |
| Patrol Officer | Entry | $26.9771 | $2,158.17 | $56,112.46 |
| | 1 yr. | $28.3979 | $2,271.83 | $59,067.68 |
| | 2yr. | $29.8153 | $2,385.22 | $62,015.84 |
| | 3 yr. | $31.4670 | $2,517.36 | $65,451.39 |
| | 4 yr. | $35.1261 | $2,810.09 | $73,062.27 |
| | | | | |
| Corporal/Exec. Officers/ Evid. Tech./Law Enf. Inv. | Entry | $37.5848 | $3,006.78 | $78,176.39 |

The Parties agree, upon the written request of either party, to a re-opener of the contract for wages only for calendar years 2022 and 2023. The Parties agree that the wages for 2022 are subject to re-opening no earlier than one hundred twenty (120) calendar days prior to, and no later than ninety (90) calendar days prior to, December 31, 2021. The Parties agree that the wages for 2023 are subject to re-opening no earlier than one hundred twenty (120) calendar days prior to, and no later than ninety (90) calendar days prior to, December 31, 2022. The requesting party must notify SERB in the appropriate manner for a re-opener of the contract for wages only. Such re-opener shall be subject to the normal statutory impasse procedures as described in ORC Chapter 4117. Any language agreed upon in the re-opener shall be included as an Appendix to this Agreement.

**Section 20.2.** Except as provided below, employees employed on the effective date of this Agreement shall be placed in the step of their assigned pay range to which they are entitled by their length of service. Employees promoted to a higher position which has a higher range in pay shall be assigned to the entry level rate, except when an employee's existing rate of pay exceeds the entry level rate, in which case an employee would maintain his/her rate of pay for the duration of the probationary period, or until such time as he/she attains the necessary service credit to advance a step, and shall then be advanced to the step which grants the employee an increase in pay. Promoted employees shall advance through the steps in the pay period which includes their anniversary date of entry into the classification.

New hire employees who enter the bargaining unit after the effective date of this Agreement shall begin at the entry level rate of the classification hired into, and shall be advanced annually in the pay period which includes their anniversary date of hire, until the top step is reached.

Electronic Monitoring Officers assumed into the bargaining unit effective January 10, 2014, shall be paid according to the Court Services Officer pay scale as set forth in Article 20 (Wages and Compensation), Section 20.1. Employees who were paid $52,667.00 annually were placed at the 3 year step of the Court Services pay scale. Electronic Monitoring Officers who were paid

26

$44,400.00 annually were placed at the 1 year step in the Entry step, or the closest step that did not result in a loss of current hourly pay.  Electronic Monitoring Officers shall proceed through the steps in accordance with Section 20.2 of the labor agreement, as if January 10, 2014, was their anniversary date.  Execution Officers and Law Enforcement Investigators will be paid at the Corporal rate of pay.

**Section 20.3.**  Any employee (excluding Corporals) who, in the absence of a supervisor, is designated by the division commander or his designee as officer-in-charge, shall receive an additional four dollars ($4.00) for each shift as assigned.

**Section 20.4.**  Any employee assigned to OCD, CIS, K-9, Execution Officer, Law Enforcement Investigator, or Traffic Investigation shall, for the duration of the assignment, be compensated at the Corporal rate of pay.  Upon conclusion of the assignment, the employee shall return to the pay grade assigned to his/her permanent classification, and shall be placed in the step he/she would otherwise be entitled to.

**Section 20.5.**  Beginning of the first day of the pay period within which an employee completes the required number of years of total service with the Employer, he/she will receive an automatic adjustment in his/her rate of pay equal to and in accordance with the following:

| | |
|---|---|
| Ten (10) years of service: | One percent (1.0%) |
| Fifteen (15) years of service: | One and one-half percent (1.5%) |
| Twenty (20) years of service: | Two percent (2%) |

The amount of the adjustment will be added to the employee's rate of pay.  The gaining of longevity adjustments shall not be affected by promotion, demotion, or other changes in classification held by the employee.

This Section shall be effective immediately and each employee shall have his/her pay adjusted in accordance herewith.

**Section 20.6.**  Employees serving as a Field Training Officer shall receive one hour of compensatory time for each tour of duty for which they are assigned as a Field Training Officer.

**ARTICLE 21**
**COURT TIME/CALL-IN TIME/STAND-BY**

**Section 21.1.**  Whenever an employee is required to appear on off-duty time before any official court or before the Prosecutor for pretrial conference on matters pertaining to or arising from the employee's official duties, the employee shall receive three (3) hours pay at the overtime rate for such appearances.  If an employee appears before a court or at a pretrial conference for more than three (3) hours, or is required to make more than one appearance during any given off-duty day such excess time or additional appearances shall be compensated at one and one-half (1-1/2) times the employee's normal hourly rate of pay for all time spent in such appearances.  Third shift employees may elect to receive five (5) hours pay for court appearances at time and a half. Court pay for third shift employees in this circumstance shall only apply to a continuation of

27

third shift. The affected employee shall continue on patrol until time to appear for court. If a third shift employee's court appearance lasts longer than five (5) hours then he/she shall submit an overtime request for the actual amount of overtime worked.

**Section 21.2.** Any employee called in to work at a time outside his/her regularly scheduled shift, which call-in does not abut his/her regularly scheduled shift, shall be paid a minimum of three (3) hours at the overtime rate of pay.

In recognition of the uniqueness of their position and responsibilities, Electronic Monitoring Officers and Corporals who receive a text off duty that requires them to check one of the defendants/probationers they are responsible for shall receive a minimum of thirty (30) minutes of pay at the overtime rate of pay. Should the Electronic Monitoring Officer or Corporal have to leave their home to complete a work assignment after hours, in which call-in does not abut his/her regularly schedule shift, such officer shall be paid a minimum of three (3) hours at the overtime rate of pay.

**Section 21.3.** Any employee who, while in an on-call status, is required to remain on the Employer's premises, or at his/her home or other specific location to await a call when needed, is considered as being unable to use the time effectively for his/her own purposes and shall be considered to be working during the entire time he/she is on-call.

## ARTICLE 22
## INSURANCE

**Section 22.1.** The Employer shall make available to all bargaining unit employees the same major medical/hospital care insurance plans, life insurance plans, and dental plans that are available to non-bargaining unit Hamilton County employees who are in classified civil service positions. If such non-bargaining unit Hamilton County employees are required to pay a portion of insurance premiums for any insurance plans, the same co-payment shall also apply to bargaining unit employees. The effective date of the life insurance plan shall be January 1, 1998.

**Section 22.2.** All insurance co-payments provided for in this Article shall be through payroll deductions.

**Section 22.3.** If the Hamilton County Personnel Department determines that it is desirable to establish any committee or procedure for the purposes of seeking employee input on any insurance benefit provided to bargaining unit employees, such committee or procedure shall include the participation of one (1) bargaining unit employee. The bargaining unit employee who participates in such committee or procedure shall be selected by the Union. The formulation of any committee or procedure as described in this Section shall be at the sole discretion of the Director of the Hamilton County Personnel Department or the Director's designee.

**Section 22.4.** The Employer agrees to indemnify and defend any bargaining unit employee from actions arising out of the lawful performance of his/her official and/or assigned duties.

28

{ 12/29/2020 AGHAMSF 00259272.DOCX }

**Section 22.5.** The life insurance policy currently in effect shall continue throughout the term of this Agreement.

**Section 22.6.** Employees on unpaid leaves of absence shall be able to retain their hospitalization coverage by paying the entire amount of the premium at their own expense.

**Section 22.7.** The co-payment paid by bargaining unit employees for any specific insurance plan provided for in Section 22.1 shall not increase from year to year by more than the percentage wage increase received by the employee's classification group. Effective April 1, 2016, the language of Section 22.7, first sentence, shall be deleted, and the insurance cap will cease to be in effect. Effective April 1, 2016, if non-bargaining unit Hamilton County Board of Commissioners' employees are required to pay a portion of insurance premiums, the same premium contribution levels shall also apply to bargaining unit employees. All insurance requirements (e.g., fees, contributions, co-payments, surcharges, deductibles, etc.) specified for such non-bargaining unit Hamilton County Board of Commissioners' employees shall also be applicable to bargaining unit employees. The deletion of the insurance cap will be considered a qualifying event in the Employer's insurance plan. In the event a bargaining unit employee elects to enroll in a different Hamilton County medical insurance plan as a result of this event, the insurance carrier will transfer any payments made towards the deductible in the current plan year to the newly elected plan for the plan year. The first pay check received in the month of April 2016 will reflect the modified employee payroll contributions.

All bargaining unit employees shall receive a lump sum payment of two thousand five hundred dollars ($2500.00) for the deletion of the insurance cap to be paid no later than sixty (60) days after execution of the labor agreement by all parties. Such lump sum payment shall not be added to the base rates of pay and shall not be used to calculate overtime. Further, such lump sum is not pensionable compensation.

## ARTICLE 23
## HOLIDAYS

**Section 23.1.** Designated holidays shall be as follows:

| | |
|---|---|
| New Year's Day | January 1st |
| Martin Luther King Day | Third Monday in January |
| President's Day | Third Monday in February |
| Memorial Day | Last Monday in May |
| Juneteenth | June 19th |
| Independence Day | July 4th |
| Labor Day | First Monday in September |
| Columbus Day | Second Monday in October |
| Veteran's Day | November 11th |
| Thanksgiving | Fourth Thursday in November |
| Day after Thanksgiving | Friday Following Thanksgiving |
| Christmas | December 25th |

29

{12/29/2020 AGHAMSF 00259272.DOCX }

The length of each holiday listed above shall be equal to the length of an employee's scheduled work day.

**Section 23.2.** On November 1, of each year of this Agreement, each employee shall be credited with one hundred thirty-two (132) hours of holiday compensatory time. Holiday compensatory time shall be considered separately from overtime compensatory time. Requests for holiday compensatory time off must be submitted in advance of the time requested, and shall be honored subject to the operational needs of the Department.

**Section 23.3.** Non-continuous operations employees shall normally not be scheduled to work on a designated holiday other than Columbus Day. In such instances, those employees shall have deducted from their holiday compensatory time balance the number of hours in their regular work day. If the non-continuous operations employee works all or part of the holiday, no deduction shall be made for the time worked. Employees assigned to CIS or OCD will be scheduled to work all holidays which occur on their normal work days, and will be permitted to take a holiday off only with the prior approval of the Section Chief or Division Commander.

**Section 23.4.** On the first regularly scheduled pay day in December of each Agreement year, employees shall be paid, by separate check, for the balance of holiday compensatory time to their credit.

Holiday compensatory time credit and cash conversion shall be pro-rated for those employees employed for less than the full December to December period, based upon the holidays which occur or occurred during their period of employment. An employee who separates prior to any December 1 and who has taken holiday compensatory time in excess of his/her pro-rata entitlement, shall have the excess time deducted from any final compensation due.

**Section 23.5.** A bargaining unit employee with a normal work schedule exceeding eight (8) hours a day (e.g., 8½ hour shift, 12 hour shift, etc.) shall be compensated for those hours normally scheduled over eight (8) hours and actually worked in Holiday Flex Time (HFT). HFT has no cash value, and bargaining unit employees cannot cash in HFT at any time for any value. If unused HFT hours have been requested by an employee at least sixteen (16) hours in advance and were denied by the Employer based upon operational concerns, up to four (4) hours of HFT can be "banked" and carried over at the end of the HFT year. Such HFT year shall run from September 1 to August 31. HFT can be used as leave with pay, provided that the use does not cause operational concerns, and provided the use of the leave does not create overtime. A bargaining unit employee may substitute HFT for any other approved leave which has been approved prior to the date of the leave (e.g., sick leave, bereavement leave, but excluding leave approved in Section 31.2 [Childbirth/Adoption Leave]).

## ARTICLE 24
## VACATION

**Section 24.1.** Full-time bargaining unit employees initially employed prior to July 5, 1987 shall earn vacation leave according to their number of years of service with the Employer and any political subdivision of the State of Ohio as follows, and full-time bargaining unit employees

30

{12/29/2020 AGHAMSF 00259272.DOCX }

initially employed on or after July 5, 1987 shall earn vacation leave according to their number of years of service with the Employer and any prior county service in the State of Ohio, as follows:

A.     One (1) year of service but less than six (6) years completed; rate of accumulation: 3.1 hours per pay period.

B.     Six (6) years of service but less than twelve (12) years completed; rate of accumulation: 4.6 hours per pay period.

C.     Twelve (12) years of service but less than eighteen (18) years completed; rate of accumulation: 6.2 hours per pay period.

D.     Eighteen (18) years of service but less than twenty-five (25) years completed; rate of accumulation: 7.7 hours per pay period.

E.     Twenty-five (25) years or more of service completed; rate of accumulation: 9.2 hours per pay period.

**Section 24.2.** The above accruals are effective on January 1, 2009. Vacation credit accrues while in any Employer paid leave status. No vacation credit is earned while an employee is in no pay status or while on overtime. Pro-rated vacation credit is given for any part of a pay period. Eighty (80) hours of vacation credit is added at the completion of one (1) year of service. Through December 31, 2008, forty (40) hours of vacation credit is added at the eight (8), fifteen (15), twenty (20), and twenty-five (25) years of employment in addition to the increased rate of accrual. During calendar year 2009, employees who could have received an additional forty (40) hours of vacation for reaching eight (8), fifteen (15), twenty (20), or twenty-five (25) years of employment as defined in the vacation schedule in the prior agreement will receive such credit at the time they achieve those years of employment. Thereafter, no additional vacation credit shall be given beyond the normal rate of accrual, or as allowed upon the completion of the first year of service.

**Section 24.3.** Vacation may be taken in one half (½) hour increments. Requests for vacation shall be made in writing by the employee to the employee's supervisor.

**Section 24.4.** The Employer shall post a vacation calendar in each unit (Patrol, Court Services, CIS, Electronic Monitoring, and Support Services) by the first Monday of November of each year. Employees may request, prior to March 1, the dates for that vacation year (January 1 through December 31 of that year) on which they prefer to use their accumulated vacation. Such requests shall be honored on the basis of the employee's seniority with the Employer as established in Article 12.2, subject to the following limitations and exceptions:

A.     The first round of vacation selection shall begin by the first Monday of November of the prior year and the first round of vacation selection shall be completed by December 31st. Each employee shall be given the opportunity to select vacation in this round. Failure to select vacation in this round will waive the right to a first round pick.

B.    Vacation requests submitted before January 1st shall be honored only to the extent that the employee has selected up to seventeen (17) consecutive working days from vacation (which may be combined with his regularly scheduled off days). All employees assigned to a twelve (12) hour shift shall be entitled up to twelve (12) consecutive working days on their initial pick. After making his/her initial selection the employee may not make any additional selections for the use of vacation time until all other members of his/her shift have had the opportunity to make their seniority vacation selections. After this first round of vacation picks, the second round of vacation picks by seniority will be allowed with no limits on the amount of vacation time or period of time which may be selected. Vacation requests submitted by March 1st shall be honored in accordance with this section.

C.    Vacations are scheduled and approved in accordance with the workload requirements of the Employer.

D.    An employee who has received approval of his/her vacation request, and is subsequently reassigned, shall not lose his/her right to that approved vacation period.

E.    An employee who has received approval of his/her vacation request shall not lose his/her right to that approved vacation period to a more senior employee who transfers in to his/her unit or location.

F.    Requests for leave of any type will be put in writing on a request for leave form. Any supervisor who denies a request for leave shall put the reason for such denial in the space provided on the reverse side of the request for leave form and return the request for leave form to the employee requesting such leave.

**Section 24.5.** An employee may accumulate and carry over vacation leave for up to three (3) years. The maximum amount that an employee may have to his or her credit at any one time is the portion of any earned but unused vacation leave for the current year in addition to the earned but unused vacation leave for the three (3) years immediately preceding the last anniversary date of employment.

**Section 24.6.** Any employee who separates from service shall be paid for any earned but unused vacation leave.

**Section 24.7.** Any employee hospitalized while on vacation shall, upon request and upon submission of sufficient evidence of the hospitalization, be entitled to change his/her vacation status to sick leave for all days hospitalized and any subsequent days necessary for recovery. Upon submission of the request with evidence, any vacation charged to the employee for the duration of the illness shall be restored to his/her credit.

**Section 24.8.** Vacation balances shall be shown on an employee's regular paycheck.

{ 12/29/2020 AGHAMSF 00259272.DOCX }

## ARTICLE 25
## SICK LEAVE

**Section 25.1.** Employees shall accrue sick leave credit at the rate of four and six-tenths (4.6) hours for each eighty (80) hours of service, or while in active pay status, (i.e., during paid vacation and sick leave). Sick leave credit shall not accrue during any unpaid sick leave, layoff, unpaid leave of absence, disciplinary suspension, or while the employee is in overtime status or on a Kelly day. Advance use of sick leave shall not be granted. Sick leave is accumulative without limit.

**Section 25.2.** Sick leave shall be granted to an employee, upon approval by the Employer, for the following reasons:

A. Illness or injury conditions of the employee.

B. Exposure of an employee to a contagious disease which could be communicated to and jeopardize the health of other employees.

C. Examination of the employee, including medical, psychological, dental, or optical examination, by an appropriate practitioner, when such an examination cannot be scheduled during non-work hours.

D. Death of a member of the employee's immediate family. Such usage shall be limited to a reasonably necessary time, not to exceed the hours the employee would be scheduled in the seven (7) consecutive calendar days following the death. One of the days must be the date of the funeral. An employee may use one (1) day of sick leave (8 hours, 8½ hours, or 12 hours, depending on work assignment) to attend the funeral of a relative not included in the definition of immediate family.

E. Illness or injury condition of a member of the employee's immediate family where the employee's presence is reasonably necessary for the health and welfare of the employee or affected family member.

F. Examination, including medical, psychological, dental, or optical examination of a member of the employee's immediate family by an appropriate practitioner where the employee's presence is reasonably necessary, and when such examination cannot be scheduled during non-work hours.

For the purpose of this Section, the definition of immediate family shall be: mother, father, son, daughter, brother, sister, spouse, grandparent, grandchild, mother/father/daughter/son/ sister/brother-in-law, step-mother/father/brother/sister/children, or a legal guardian or other person who stands in the place of a parent (loco parentis).

**Section 25.3.** When an employee is unable to report to work due to reasons specified in Section 25.2 above, he/she shall notify his/her immediate supervisor or other designated person, prior to the time he/she is scheduled to report to work (at least two [2] hours prior for continuous

33

operations employees), unless extenuating circumstances prohibit, on each day of absence, unless other arrangements are made with the employee's supervisor.

**Section 25.4.** Upon return to work an employee shall complete an application for sick leave form to justify the use of sick leave. The Employer may, when an employee utilizes sick leave for medical appointments or where an absence is for four (4) consecutive calendar days or more, or for sick leave usage that exceeds forty (40) hours within any calendar year, require the employee to furnish a certificate from a physician, dentist, or other licensed practitioner stating the nature of the illness, injury, treatment and prognosis.

**Section 25.5.** Sick leave usage, when approved, shall be charged in minimum units of one (1) hour increments. In order to receive pay for sick leave usage, an employee must comply with all departmental rules and regulations governing application and use. Falsification of an application for sick leave or a practitioner's statement shall be grounds for disciplinary action. Excessive and/or abusive use of sick leave benefits may result in the employee being placed on "Administrative Sick Leave Watch" (ASLW). Prior to being placed on ASLW, any employee recommended for ASLW shall be entitled to a divisional hearing at which an HCSA associate may be present.

**Section 25.6.** An employee who does not use any of his/her sick leave in any period consisting of four (4) consecutive months shall be granted eight (8) hours of extra time off (personal leave) for each four (4) month period. Each four (4) month period begins with the first day following the last incident of sick leave usage and ends one hundred twenty-two (122) calendar days later. Personal leave must be used within one (1) year of the date of earning, otherwise they shall be paid. Employees must be in active pay status as defined in Section 25.1 above to receive credit toward earning of personal leave. All requests to receive pay under this provision are the responsibility of the employee.

When sick leave is approved for the death of a member of the employee's immediate family as provided for in Section 25.2(D), or when bereavement leave is approved as provided for in Section 25.10, or when an employee is treated by a physician, dentist, or other licensed practitioner as the result of an on duty injury, such absence shall not constitute a disruption of the employee's ability to earn a personal day as provided for in this Section.

**Section 25.7.** An employee with ten (10) or more years of service with the Employer, or ten (10) or more years of public service with political subdivisions of the State of Ohio, who retires from active service with the Employer, shall be paid for fifty percent (50%) of the value of his/her accrued but unused sick leave, up to a maximum payment of eight hundred (800) hours. Payment shall be based upon the employee's rate of pay at the time of retirement.

**Section 25.8.** In case of death of an active employee, the employee's accumulated sick leave shall be converted to a lump sum payment at one hundred percent (100%) of its value, payable to the employee's designated beneficiary, or where no beneficiary is designated, to the employee's estate, upon application by the executor of the estate.

**Section 25.9.** Sick leave balances shall be shown on all employees' regular paychecks.

{12/29/2020 AGHAMSF 00259272.DOCX }

**Section 25.10.** Upon the death of an employee's spouse, child, step-child living with the employee, grandparent, mother, father, sister, or brother, the Employer shall grant bereavement leave in lieu of the use of sick leave as provided for in Section 25.2(D). Bereavement leave shall be limited to a reasonably necessary time not to exceed five (5) calendar days. One of the days must be the date of the funeral. Bereavement leave shall not be deducted from any sick leave balance.

**ARTICLE 26**
**OCCUPATIONAL INJURY LEAVE**

**Section 26.1.** In the event of an occupational injury or an occupational illness incurred as a direct result of performing an assigned or sworn function within the scope of the employee's authority, which illness or injury is not the result of "horseplay," sole negligence, recklessness or self-infliction by an employee, and upon the employee's application, the Employer may grant the employee, beginning on the eighth calendar day of absence or on the first day the employee is admitted to a hospital as an in-patient, whichever is earlier, Occupation Injury Leave (OIL) with full pay for a period not to exceed one thousand (1000) hours. The authorization of an OIL is a matter of administrative discretion, and the Employer will decide in each individual case if OIL is to be granted. The granting of an OIL shall not be unreasonably denied. A grievance concerning the failure of the Employer to grant an initial OIL shall be submitted directly to the Employer's step of the grievance procedure. The Employer, at his sole discretion, may extend an OIL. The Employer's failure to extend a leave shall not be subject to the grievance procedure.

**Section 26.2.** Illnesses considered common or routine among the general public (e.g., cold, flu, chicken pox, etc.) shall not entitle an employee to OIL. Unusual and serious illnesses (e.g., hepatitis, tuberculosis, etc.), and "stress-related" psychological and physical conditions and illnesses (e.g., neuroses, psychoses, depression, hypertension, stroke, heart disease, etc.) may entitle an employee to OIL only if incurred in accordance with the conditions set forth in Section 26.1 of this Article.

**Section 26.3.** An employee applying for OIL hereunder, shall authorize the release to the Employer of all medical information pertinent only to the occupational injury or illness possessed by the employee's treating physician(s) and treatment facility(ies), if so requested by the Employer or designee, and/or shall agree to be examined by a licensed medical practitioner selected and paid for by the Employer.

**Section 26.4.** Any employee claiming an occupational illness or injury under this Article shall file an injury claim with the Ohio Bureau of Workers' Compensation as soon as possible. Upon approval of the claim by Workers' Compensation, an OIL granted on the eighth (8th) day of absence shall be made retroactive to the first (1st) day of absence, and any sick leave, compensatory time or vacation used by the employee during the first eight (8) days of absence shall be restored to his/her credit. The employee shall remit to the Employer all income benefits paid by Workers' Compensation for the period during which the employee received full pay from the Employer while on OIL. In the event the claim is denied by Workers' Compensation, the

35

employee shall revert to sick leave status, and shall be charged with sick leave, compensatory time and/or vacation leave for all time paid by the Employer for OIL.

**Section 26.5.** It is understood and agreed that the Employer's obligation under this Article is only the difference between the employee's regular rate of pay and the amount of income benefits paid to the employee by OBWC, and that OIL is not in lieu of OBWC benefits.

**Section 26.6.** In lieu of granting OIL, the Employer may assign the employee to light duty with the approval of, and within the limitations set by, the employee's treating physician. Light duty under this section shall be limited to an eight (8) hour shift (e.g., Off Day Group 8).

**ARTICLE 27**
**DONATED TIME**

**Section 27.1.** All bargaining unit employees shall be eligible for donated compensatory time, personal leave and vacation time benefits, subject to the terms of this Article, to relieve hardship resulting from extended illness or injury.

**Section 27.2.** The application for and granting of donated compensatory time, personal leave, and vacation time benefits shall be subject to the following:

A.     When it comes to the attention of the Division Commander or his designee that a bargaining unit employee's accrued but unused compensatory, sick leave, personal leave and vacation time has been or is about to be exhausted, he shall investigate the following:

      1.     The current status of the employee's physical condition;

      2.     The prognosis of the employee's physician.

B.     The Division Commander or his designee shall direct a letter to the Employer within one (1) week of request setting forth:

      1.     The details of the investigation;

      2.     Any recommendations he may have concerning the employee's eligibility as a recipient of donated compensatory time, personal time, and vacation time benefits.

C.     If the Employer approves a recommendation for an employee to be the recipient of donated compensatory time, personal leave and vacation time benefits, any bargaining unit employee wishing to voluntarily donate accrued but unused compensatory time, personal leave, or vacation time to such approved recipient shall submit a written request to his supervisor listing the name of the beneficiary with the number of hours of compensatory time, personal leave, or vacation time to be donated.

36

D.   In no case will donated time be used to extend the recipient employee's period of active duty beyond a recommended date or retirement as established by any physician or governmental body having authority to grant or mandate such retirement.

E.   Any donated compensatory time, personal leave and vacation time processed and not needed by a recipient due to retirement, return to duty, or other reason, shall be returned to the donor.

F.   Donated compensatory time, personal leave and vacation time shall be donated hour-for-hour without consideration to cash value.

## ARTICLE 28
## UNIFORMS AND EQUIPMENT

**Section 28.1.** The Employer shall supply at no cost to the employee all uniforms and equipment required by the Employer, excluding socks and underwear, in quantities specified by the Employer. The Employer shall furnish firearms and leather goods to all employees. Employees shall have leather goods replaced by the Employer on an as needed basis as determined by the Employer. The Employer shall furnish all required footwear. The employee may select the standard issue shoe or a leather shoe.

**Section 28.2.** All uniforms and equipment issued by the Employer are the property of the Employer and shall, upon termination of employment of an employee, be returned to the Employer in condition issued, allowing for reasonable wear and tear, prior to the issuance of any final compensation to the employee. Any issued item which is lost by an employee shall either be replaced or paid for at current market value by the employee, at the option of the employee.

**Section 28.3.** Equipment and other items not issued or required by the Employer may be utilized or worn only with the permission of the Employer or designee.

**Section 28.4.** Where an employee supplies evidence that he/she sustained damage to personal property while performing the duties of his/her assigned work, provided such damage was not the result of "horseplay," willful misuse, or negligence on the part of the employee, the Employer shall reimburse the employee for the cost of necessary repairs or replacement up to a maximum of two hundred dollars ($200.00) per year, but no more than fifty dollars ($50.00) for jewelry items. The employee shall present the damaged property for the Employer's inspection prior to the repair or replacement of said property. Repair or replacement of said property shall be at the Employer's option. Any court ordered restitution received by an employee as compensation for damage to his/her personal property shall be remitted to the Employer up to the amount the Employer has paid hereunder.

**Section 28.5.** In the event of damage to prescription eye glasses (including frames), contact lenses, dentures and other oral prosthesis, which damage occurs in the active discharge of an employee's duties, the Employer shall pay the difference, if any, between the amount of reimbursement from Workers' Compensation and the actual cost of repair or replacement.

37

**Section 28.6.** An employee who retires from service with the Employer shall be presented his or her badge. The badge shall be presented in such a manner as to make it unusable. The retiring employee shall also be presented with an identification card that identifies him or her as a retired deputy sheriff. In order to qualify for the provisions of this Section, the retiring employee must have completed ten (10) years of service with the Employer, and must apply for and be granted full retirement (age and service) benefits by the Public Employees Retirement System (PERS). Upon an age and service or disability benefits retirement, excluding non-physical disability benefits retirement, or after PRE retirement (whichever is later), the Employer shall offer to sell the retiring employee the duty weapon issued to him for the sum of fifty percent (50%) of the manufacturer's retail value at the time of retirement separation. Those with active Level 4 discipline at the time of retirement and those under investigation at the time of separation for a serious offense will be excluded from this offer.

**Section 28.7.** On the first regularly scheduled pay day following May 1, of each calendar year, employees who have completed more than one (1) years of service in the bargaining unit shall receive a uniform allowance of one thousand ($1000.00) dollars. Payment shall be made by separate check. An employee who completes one (1) year of service in the bargaining unit after May 1 shall upon completion of the one (1) year service requirement receive a pro-rated uniform allowance of eighty-three dollars and thirty-three cents ($83.33) per full calendar month of service from date of entry into the unit to May 1. An eligible employee who separates from service prior to May 1 of any year shall be entitled upon separation to a pro-rated share of the allowance based upon the number of months of service completed since the previous May 1.

**ARTICLE 29**
**EXPENSES**

**Section 29.1.** When an employee's duty requires him/her to travel outside of Hamilton County, the Employer shall reimburse the employee for all reasonable and necessary expenses actually incurred by the employee in the performance of his/her duty, including, but not limited to, expenses incurred for meals, lodging and parking, subject to limits and rates as established by the Hamilton County Board of Commissioners for all County employees, upon presentation to the Employer of receipts showing the employee's payment for same.

**Section 29.2.** When an employee is authorized by the Employer to travel outside of Hamilton County on official business and to drive his/her own automobile, the Employer shall reimburse the employee for all miles actually driven for official business at the mileage rate as established by the Internal Revenue Service.

**Section 29.3.** When an employee's duty requires him to utilize his/her personal vehicle (such as for court appearances) the Employer shall reimburse the employee for all miles actually driven by the employee, and for actual parking expenses.

{ 12/29/2020 AGHAMSF 00259272.DOCX }

## ARTICLE 30
## TRAINING

**Section 30.1.** All training required of, and authorized for, an employee by the Employer shall be paid for by the Employer. All such required and authorized training shall be counted as time worked, including driving time to and from training sites located outside of Hamilton County. On multiple-day training sessions where the employee has been authorized by the Employer to remain at or near the training site overnight, the days in training which do not require travel to the site from Hamilton County or to Hamilton County from the site shall be counted as regular work days, not to exceed eight (8) hours. Any employee on a shift assignment that exceeds eight (8) hours will be allowed to use personal leave, compensatory time, or vacation to supplement his or her work hours to match the normal work hours for that employee.

**Section 30.2.** The Employer shall pay for all necessary, reasonable, authorized and approved expenses incident to such training for required meals, lodging, parking, mileage, tuition and fees in accordance with the provisions of Article 29 of this labor Agreement.

## ARTICLE 31
## LEAVES OF ABSENCE

**Section 31.1.** The Employer may grant an unpaid leave of absence to any bargaining unit employee for a duration of six (6) months for any personal reasons of the employee. Such leave may be extended upon the request to and with the approval of the Employer.

A.   The authorization of a leave of absence without pay is a matter of administrative discretion and employees have no right to such leave, subject to the provisions below. The Employer will decide if a leave of absence is to be granted in each individual case.

B.   The granting of any leave of absence is subject to the approval of the Employer. Except for emergencies, illnesses, disabilities or as otherwise specified in this Article, employees will advise the Employer sixty (60) calendar days prior to the commencement of the desired leave so that the various departmental functions may proceed properly.

C.   Upon completion of a leave of absence, the employee is to be returned to the position formerly occupied or the next available similar position if the employee's former position no longer exists. Employees on an unpaid leave of absence are subject to all layoff and recall provisions of Article 13 of this Agreement.

D.   An employee may return to work before the scheduled expiration of leave as requested by the employee and agreed to by the Employer.

E.   The Employer shall send a written reminder to the employee at the address on file with the employer at least two (2) weeks prior to the end of the unpaid leave of absence. If an employee fails to return to work at the expiration of his requested unpaid leave of absence, such employee, absent extenuating circumstances, shall be removed from his position and shall not receive seniority time for the period of the leave.

39

F.   An employee who has been granted an unpaid leave of absence for personal reasons shall not accrue vacation leave, personal leave, holidays, or sick leave during such unpaid leave of absence.

G.   An unpaid leave of absence for personal reasons is unavailable as long as the individual has any qualifying paid leave or FMLA leave available. Further, such unpaid leave of absence for personal reasons, if approved, will be concurrent with, not in addition to, leave granted under the Family and Medical Leave Act of 1993, if applicable.

H.   In lieu of requesting family and medical leave and/or disability leave the employee may request a temporary assignment to an available alternate position that would better accommodate the employee's reason for requesting leave. This request may be granted or denied at the sole discretion of the employer.

I.   During any unpaid leave of absence provided for in this Section, the Employer will provide health insurance as defined in Article 22 of this Agreement through the end of the calendar month, during which such unpaid leave of absence begins.

## Section 31.2.  Childbirth/Adoption Leave:

Any employee may take up to seven (7) consecutive calendar days as leave during the period immediately following the birth or adoption of a child. Written requests for this purpose must be submitted to the Employer. Such requests shall not be unreasonably denied. Such leave shall be deducted from accrued but unused sick leave if available - otherwise the employee must cover the time with other qualifying paid (e.g., vacation) or take the time as unpaid leave. Requests for additional time beyond the seven (7) consecutive calendar days will be subject to the same provisions as are normally applicable to the type of leave requested (e.g., sick leave, FML, etc.).

## Section 31.3.  Family and Medical Leave:

An employee who meets the eligibility requirements for Family and Medical Leave may apply for such leave. The Employer will approve leave requests as required by the Act, provided that except as prohibited by the Act, the Employer may do the following:

A.   Deny requests that the Act does not required be approved;

B.   Require medical certifications;

C.   Request medical examinations (which may include psychological examinations) in addition to any information or certifications provided by the employee;

D.   Place employees on Family and Medical Leave if they are unable to apply or fail to apply, but are otherwise qualified for such leave;

40

E.    Require employees to pay their share of premiums for insurance coverage while on unpaid Family and Medical leave;

F.    Take disciplinary action against employees who do not comply with the Employer's policies and procedures for administering Family and Medical Leave;

G.    Coordinate the administration of Family and Medical Leave with the Employer's administration of other types of leave as provided by this agreement;

H.    Place an employee who has exhausted Family and Medical Leave and who is still unable to perform the essential functions of the position on unpaid Disability Leave or proceed to Disability Separation; and

I.    The employee may use all accrued but unused sick leave first, and then all accrued vacation leave, compensatory time, and/or personal holiday time in conjunction with such family and medical leave.

J.    The employer shall continue to provide medical insurance during the period of leave of absence unless the employee fails to pay his/her portion of the insurance premium.

K.    The Employer will not, during the life of this Agreement, require the substitution of paid leave during periods of Family Medical Leave.

## Section 31.4. Medical Examination:

The Employer may require an employee to undergo a medical examination that is related to the employee's job and based on a business necessity when the Employer deems the examination necessary to confirm an employee's eligibility for sick leave, FML, Disability Leave, or Disability Separation. The Employer may also require such an exam to determine the employee's eligibility to return from any sick leave, Disability Leave, or Disability Separation, where the employee is returning after having exhausted Family and Medical Leave (or where the returning employee is not eligible for FML), or to determine an employee's ability to return to full service from recuperative duty status. The examination shall be at the Employer's expense. Where the Employer is requiring the examination to certify an employee's eligibility for Family and Medical Leave (the FML "second opinion"), the Employer's selection of a healthcare provider shall be in accordance with the regulations governing Family and Medical Leave. However, where the examination is to determine an employee's eligibility for sick leave, Disability Leave, etc., following the employee's exhaustion of Family and Medical Leave, or in a situation where the employee is not eligible for Family and Medical Leave, the selection of the healthcare provider shall be within the sole discretion of the Employer.

The Employer may place an employee found to be unable to perform the essential functions of his position on unpaid Family and Medical Leave, or if the employee is not eligible for or has exhausted any available Family and Medical Leave, the Employer may place the employee on unpaid Disability Leave or may disability separate the employee, all as provided for in this Section.

41

## Section 31.5. Disability Leave, Disability Separation, and PERS Disability:

A physically or mentally incapacitated employee who has completed his probationary period may request an unpaid Disability Leave. A Disability Leave for a period not to exceed one (1) year may be granted when the disability continues beyond the use of all accrued but unused sick leave. The employee must furnish satisfactory medical proof of such disability along with his written request for unpaid Disability Leave. The employee must also be:

A. Hospitalized or institutionalized;

B. On a period of convalescence following hospitalization or institutionalization authorized by a physician at the hospital or institution; or

C. Declared incapacitated for the performance of the duties of his position by a licensed physician.

It is the employee's responsibility to request an unpaid Disability Leave since such leave is not granted automatically, although the Employer may place the employee on Disability Leave if the employer has satisfactory certification from a licensed physician that the employee is unable to perform the essential functions of his or her position with or without a reasonable accommodation.

At any time after the employee has exhausted Family and Medical Leave and accrued but unused sick leave, and the Employer determines that the employee is unable to perform the essential functions of the employee's job, with or without a reasonable accommodation, and the Employer had declined to approve any additional leave (e.g., the Employer has determined that additional leave would not be a reasonable accommodation under the circumstances), and the employee has not been granted PERS Disability, the Employer may separate the employee from service with the Employer. An employee so separated has no reinstatement rights, except to the extent that the parties may not supersede contrary PERS law under this Agreement.

The Employer shall send a written reminder to the employee at the address on file with the employer at least two (2) weeks prior to the expiration of his Disability Leave. An employee who does not return from Disability Leave, who formally resigns, or who takes a PERS Disability (disability benefits) shall be separated by a personnel action with the designation "Failure to Return from Disability Leave."

An employee who has been granted a Disability Leave shall not accrue vacation leave, personal leave, holidays, or sick leave during such a Disability Leave.

When an employee is ready to return to work from an unpaid disability leave, he shall furnish a statement by a physician releasing the employee as able to return to full time and full capacity duty. The Employer may require an employee to be examined by a licensed physician at the expense of the Employer as provided above. Employer required Disability Leave or Disability Separation may be appealed through the grievance and arbitration procedures.

42

**Section 31.6. PERS Disability:**

If an application for PERS Disability is granted, effective on or after the date the employee has exhausted any available Family and Medical Leave, or such other date as PERS may allow, the employee shall be placed on PERS Disability accordingly.

**Section 31.7. Paid Leaves:**

A.     Court Leave:

    The Employer shall grant full pay where an employee is summoned for any jury duty or subpoenaed as a witness (outside the scope of his/her employment) by any court or other adjudicatory body as listed in this Article. All compensation for such duty may be reimbursed to the department unless such duty is performed totally outside of normal working hours. An employee released from jury or witness duty prior to the end of his/her scheduled workday shall report to work for the remaining hours. Employees will honor any subpoena issued to them, including those from Workers' Compensation, Unemployment Compensation, and State Employment Relations Board hearings.

    It is not proper to pay employees when appearing in court for criminal or civil cases, when the case is being heard in connection with the employee's personal matters, such as traffic court, divorce proceedings, custody, appearing as directed with juvenile, etc. These absences would be leave without pay, compensatory time, personal leave or vacation at the discretion of the employee. An employee shall request prior approval for court leave, in order for such leave to be granted.

B.     Military Leave:

    All employees who are members of the Ohio Organized Militia, or members of other reserve components of the Armed Forces of the United States including the Ohio National Guard are entitled to leave of absence without loss of pay for their respective duties for such time as they are in the military service on field training or active duty for a period not to exceed a total of one hundred seventy-six (176) hours in one (1) calendar year.

1.     Employees are required to submit to the Employer an order or statement from the appropriate military commander of evidence of such duty. There is no requirement that the service be in one (1) continuous period of time.

2.     The maximum number of hours for which payment will be made in any one (1) calendar year under this provision is one hundred seventy-six (176) hours.

3.     Where a call-up exceeds one (1) calendar month in duration, payment to the employees will be made pursuant to O.R.C. 5923.05.

4.    Any dispute regarding military leave payments shall be subject to the grievance and arbitration procedure.

## ARTICLE 32
## OUTSIDE EMPLOYMENT

**Section 32.1.** Employees must recognize that the Hamilton County Sheriff's Office is their primary Employer. No employee may accept employment with any other employer which is in conflict with his/her role as an employee of the Hamilton County Sheriff's Office as determined by the Hamilton County Sheriff or designee. The Hamilton County Sheriff's Office retains the right to approve law enforcement related off-duty outside employment, including the right to regulate law enforcement related off-duty outside employment by promulgating and enforcing rules as approved by the Hamilton County Sheriff.

**Section 32.2.** Any employee accepting non-law enforcement related off-duty employment must notify the Employer or designee of the nature of the work, and the hours he/she will be working, prior to beginning the work. The Employer or designee with either approve the work or notify the employee of the reason for denial. Such determination shall be made within a reasonable period of time. Approval for non-law enforcement related off-duty employment will be at the discretion of the Hamilton County Sheriff or designee but such approval shall not be unreasonably withheld.

**Section 32.3.** In addition to the rights set forth in Section 1 and 2 above, the Employer reserves the right to demand an employee reduce his/her non-law enforcement related off-duty employment work when his/her performance is diminished, or his/her attendance adversely affected.

**Section 32.4.** Employees shall have the right to grieve over disciplinary action taken by the Hamilton County Sheriff relative to an employee's outside employment. All grievances and discipline shall be handled pursuant to Articles 8 and 9 of this Agreement.

**Section 32.5.** While working an off-duty detail, all bargaining unit members will be paid by the outside employer at the highest prevailing wage rate for performing such duties

## ARTICLE 33
## DRUG/ALCOHOL TESTING

**Section 33.1.** Drug testing may be conducted on employees during their duty hours upon reasonable suspicion, randomly by computer selection, randomly at the discretion of the Employer or designee by computer selection for bargaining unit personnel in special assignments, or otherwise as provided in this Article. Special assignments for the purpose of this Article shall include, but not be limited to, internal affairs, organized crime, violent crimes task force, property unit, etc. Alcohol testing will be conducted only upon reasonable suspicion.

Reasonable suspicion that an employee used or is using a controlled substance or alcohol in an unlawful or abusive manner may be based upon, but not limited to:

44

A. Observable phenomena, such as direct observation of drug or alcohol use or possession and/or the physical symptoms of being under the influence of a drug or alcohol;

B. A pattern or abnormal conduct or erratic behavior, including abnormal leave patterns;

C. Arrest or conviction for a drug or alcohol-related offense, or the identification of an employee as the focus of a criminal investigation into illegal drug or alcohol possession, use, or trafficking;

D. Information provided either by reliable and credible sources or independently corroborated;

E. Evidence that an employee has tampered with a previous drug test;

F. Facts or circumstances developed in the course of an authorized investigation of an accident or unsafe working practices.

**Section 33.2.** Drug/alcohol testing shall be conducted solely for administrative purposes and the results obtained shall not be used in criminal proceedings. Under no circumstances may the results of drug/alcohol screening or testing be released to a third party for use in a criminal prosecution against the affected employee. The following procedure shall not preclude the Employer from other administrative action but such actions shall not be based solely upon the initial reagent testing results alone.

**Section 33.3.** All drug screening tests shall be conducted by laboratories meeting the standards of the Substance Abuse and Mental Health Service Administration. No test shall be considered positive until it has been confirmed by a Gas Chromatography/Mass Spectrometry. The procedures utilized by the Employer and testing laboratory shall include an evidentiary chain of custody control and split sample testing. All procedures shall be outlined in writing and this outline shall be followed in all situations arising under this article.

**Section 33.4.** Alcohol testing shall be done in accordance with the law of the State of Ohio to detect drivers operating a motor vehicle under the influence. A positive result shall entitle the Employer to proceed with sanctions as set forth in this Article.

**Section 33.5.** The results of the testing shall be delivered to a specified employee of the Employer with command responsibility and the employee tested. An employee whose confirmatory test result is positive shall have the right to request a certified copy of the testing results in which the vendor shall affirm that the test results were obtained using the approved protocol methods. The employee shall provide a signed release for disclosure of the testing results to the Employer. A representative for the bargaining unit shall have a right of access to the results upon request to the Employer, with the employee's written consent. Refusal to submit to the testing provided for under this Agreement may be grounds for discipline.

**Section 33.6.**

45

A.    If a drug screening test is positive, a confirmatory test shall be conducted utilizing the fluid from the primary sample.

B.    In the event that any confirmation drug test results are positive, the employee is entitled to have the split sample tested by another DHHS-certified lab in the manner prescribed above at the employee's expense. The employee must request the split sample test within seventy-two (72) hours of being notified of a positive result. The results of this test, whether positive or negative, shall be determinative.

**Section 33.7.** A list of three (3) testing laboratories shall be maintained by the Employer. These laboratories shall conduct any testing directed by the Employer. The Employer shall obtain the approval of the bargaining unit representative as to any laboratories put on this list, which approval shall not be unreasonably withheld.

**Section 33.8.** If after the testing required above has produced a positive result the Employer may require the employee to participate in any rehabilitation or detoxification program that is covered by the employee's health insurance. Discipline allowed by the positive findings provided for above shall be deferred pending rehabilitation of the employee within a reasonable period. An employee who participates in a rehabilitation or detoxification program shall be allowed to use sick time, compensatory days, vacation leave, and personal days for the period of the rehabilitation or detoxification program. If no such leave credits are available, the employee shall be placed on medical leave of absence without pay for the period of the rehabilitation or detoxification program. Upon completion of such program and upon receiving results from a retest demonstrating that the employee is no longer abusing a controlled substance/alcohol, the employee shall be returned to his/her former position. Such employee may be subject to periodic retesting upon his/her return to his/her position for a period of one (1) year from the date of his/her return to work. Any employee in a rehabilitation or detoxification program in accordance with this Article will not lose any seniority or benefits, should it be necessary for the employee to be placed on medical leave of absence without pay, for a period not to exceed ninety (90) days.

**Section 33.9.** If the employee refuses to undergo rehabilitation or detoxification, or if he/she tests positive during a retesting within one (1) year after his/her return to work from such a program, the employee shall be subject to disciplinary action, including removal from his/her position and termination of his/her employment.

**Section 33.10.** Costs of all drug screening tests and confirmatory tests shall be borne by the Employer except that any test initiated at the request of the employee shall be at the employee's expense.

**Section 33.11.** The Employer may conduct four (4) tests of an employee during the one (1) year period after the employee has completed a rehabilitation or detoxification program as provided above.

**Section 33.12.** The provisions of this Article shall not require the Employer to offer a rehabilitation/detoxification program to any employee more than once.

46

## ARTICLE 34
## HEALTH AND SAFETY

**Section 34.1.** Each employee shall be provided with information as part of orientation, in-service training, and on an as needed basis about communicable diseases to which he/she may be exposed in the performance of his/her duties. Information provided shall include the symptoms of the diseases, modes of transmission, methods of self-protection, and recommendations for immunization where appropriate. Employees may receive hepatitis vaccine or inoculation at no cost to the employee.

**Section 34.2.** Each employee shall be provided with information and appropriate equipment to take precautions when his/her duties bring or may bring him/her into contact with blood or body fluid containing blood. Each patrol vehicle will be equipped with both disposable and reusable gloves.

## ARTICLE 35
## CIVIL SERVICE COMPLIANCE

**Section 35.1.** It is expressly understood that the Ohio Department of Administrative Services and the State Personnel Board of Review shall have no authority or jurisdiction as it relates to the expressed matters covered by this labor Agreement.

**Section 35.2.** The Employer agrees that whenever an employee separates from service, or is otherwise removed from the bargaining unit that a letter describing length of service and appropriate benefits shall be sent to the Director of the Ohio Department of Administrative Services. Should the employee become employed in Ohio public service within a period of ten (10) years from the time of separation, upon written request from the employee, the Employer shall certify to the new Employer all information relevant to length of service and appropriate benefits.

## ARTICLE 36
## NO STRIKE/NO LOCKOUT

**Section 36.1.** The Employer and the HCSA recognize that a work stoppage of any kind would create a clear and present danger to the health and safety of the public, and that this Agreement provides machinery for the orderly resolution of grievances. Therefore the parties agree that:

A.   During the term of this Agreement, the HCSA shall not, for any reason, authorize, cause, engage in, sanction, or assist in any strike, or any other concerted activity which would interrupt the operation or services of the Employer during the life of this Agreement.

B.   During the life of this Agreement, the Employer shall not cause, permit or engage in any lockout of the bargaining unit employees unless those employees have violated Section 36.1(A) of this Article.

47

**Section 36.2.** In addition to any other remedies available to the Employer, any employee or employees, either individually or collectively, who violated Section 36.1(A) of this Article is/are subject to disciplinary action up to and including discharge or removal by the Employer.

**Section 36.3.** In the event of any violation of Section 36.1(A) of this Article, the HCSA shall promptly do whatever it can to prevent or stop such unauthorized acts.

**Section 36.4.** Nothing in this Article shall be construed to limit or abridge the Employer's right to seek other available remedies provided by law to deal with any unauthorized or unlawful strikes.

## ARTICLE 37
## SEVERABILITY

**Section 37.1.** This Agreement supersedes and replaces all applicable state and local laws which it has the authority to supersede and replace. Where this Agreement is silent, the provisions of applicable law shall prevail. If a court of competent jurisdiction finds any provision of this Agreement to be contrary to any applicable statute, such provision shall be of no further force and effect, but the remainder of the Agreement shall remain in full force and effect.

**Section 37.2.** The parties agree that should any provision of this Agreement be found to be invalid, they will schedule a meeting within thirty (30) days at a mutually agreeable time to negotiate alternative language on the same subject matter.

## ARTICLE 38
## WAIVER IN CASE OF EMERGENCY

**Section 38.1.** In cases of emergency declared by the President of the United States, the Governor of the State of Ohio, the Sheriff or Federal or State Legislature, such as acts of God or civil disorder, the following conditions of this Agreement may be temporarily suspended by the Employer:

A.     Time limits for the processing of grievances; and

B.     All work rules and/or agreements and practices relating to the assignment of employees.

**Section 38.2.** Upon the termination of the emergency should valid grievances exist, they shall be processed in accordance with the provisions outlined in the grievance procedure of this Agreement and shall proceed from the point in the grievance procedure to which they, the grievance(s), had properly progressed, prior to the emergency.

## ARTICLE 39
## COPIES OF THE AGREEMENT

**Section 39.1.** Copies of this Agreement shall be printed and distributed to all members of the bargaining unit and to all probationary employees hired during the term of the Agreement. The

48

{ 12/29/2020 AGHAMSF 00259272.DOCX }

cost of printing shall be paid equally by the parties. The Employer shall control the inventory of all unissued copies. The HCSA shall have access to additional copies from the inventory as needed.

## ARTICLE 40
## TUITION REIMBURSEMENT

**Section 40.1.** All bargaining unit members shall be eligible to participate in the Hamilton County Tuition Reimbursement Program under the same terms and conditions, and with the same benefits, applicable to the other employees of the county.

## ARTICLE 41
## SUB-CONTRACTING

**Section 41.1.** During the term of this Agreement, the Employer (the Sheriff) shall not sub-contract out bargaining unit work except for intrastate/interstate transportation of prisoners.

## ARTICLE 42
## RESIDENCY

**Section 42.1.** Bargaining unit members shall reside within Hamilton County, Ohio, or in an adjacent county to Hamilton County, Ohio (including adjacent counties in Kentucky and Indiana). Any bargaining unit member living outside of Hamilton County, Ohio, will not be permitted to take a cruiser home.

## ARTICLE 43
## DURATION

**Section 43.1.** This Agreement shall be effective upon execution by the parties, unless otherwise provided for herein, and shall remain in full force and effect through 11:59 p.m., December 31, 2023.

**Section 43.2.** If either party desires to modify or amend this Agreement, it shall give written notice of such intent no earlier than one hundred eighty (180) calendar days prior to the expiration date, nor later than ninety (90) calendar days prior to the expiration date of this Agreement. Such notice shall be served by a method approved by the State Employment Relations Board. The parties shall commence negotiations within two (2) calendar weeks upon receiving notice of intent.

**Section 43.3.** The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right to make demands and proposals on any subject matter not removed by law from the area of collective bargaining, and that the entire understandings and agreement arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

{ 12/29/2020 AGHAMSF 00259272.DOCX }

**Section 43.3.** The Parties agree, upon the written request of either party, to a re-opener of the contract for wages only for calendar years 2022 and 2023. The Parties agree that the wages for 2022 are subject to re-opening no earlier than one hundred twenty (120) calendar days prior to, and no later than ninety (90) calendar days prior to, December 31, 2021. The Parties agree that the wages for 2023 are subject to re-opening no earlier than one hundred twenty (120) calendar days prior to, and no later than ninety (90) calendar days prior to, December 31, 2022. The requesting party must notify SERB in the appropriate manner for a re-opener of the contract for wages only. Such re-opener shall be subject to the normal statutory impasse procedures as described in ORC Chapter 4117. Any language agreed upon in the re-opener shall be included as an Appendix to this Agreement.

## ARTICLE 44
## MILITARY RESERVE

**Section 44.1.** Any bargaining unit members employed by the Hamilton County Sheriff who are members of the US Military Reserve (Army, Navy, Air Force, Marines, US Coast Guard) and who are deployed to a US Combat Zone, as designated by Executive Order of the President of the United States under Section 44.2, shall be permitted to take leave (accrued sick, vacation, personal leave, and/or compensatory time) from work for up to thirty (30) calendar days before returning to work (without restriction upon approval of the Sheriff). This leave period shall include scheduled off days.

**Section 44.2.** US Combat Zones as designated by the Executive Order of the President of the United States can be verified on the IRS website at http://www.irs.gov/uac/combatzones or successor website.

## ARTICLE 45
## PREFERRED ASSIGNMENTS

**Section 45.1.** For the purpose of this Article, preferred assignments shall include assignments in the following: OCD, CIS, K-9, Execution Officer, Law Enforcement Investigator, Traffic Investigation, and Surveillance/Intel Specialists, as well as any other assignments mutually agreed upon by the Parties.

**Section 45.2.** Whenever the Employer determines that an operational need exists to assign an employee to a unit listed in section 45.1, notices of such an assignment availability shall be posted on the bulletin boards where employee notices are usually posted for ten (10) calendar days, and read at roll call for three (3) consecutive days during the posting period, prior to reassignment of an employee. All such notices shall contain a description of the assignment to be filled, including job duties, working hours, special qualifications required, name and rank of immediate supervisor, and location of reporting and working. During the posting period, any eligible person wishing to apply for the preferred assignment shall do so in written form to the Employer as prescribed in the posting. The Employer shall not be obligated to consider any submissions received after the posting period or any applicants who do not meet the minimum qualifications for the assignment detailed in the posting. The Employer shall conduct

{12/29/2020 AGHAMSF 00259272.DOCX }

reassignment into the unit within one hundred twenty (120) calendar days of the assignment availability being posted.

**Section 45.3.** Prior to considering applicants for a preferred assignment, the Employer shall give preference to those applicants for the assignment who currently hold the same classification and pay range. However, such preference shall be given only when, all other factors are determined to be equal, at the discretion of the Employer. Factors to be considered are to include, but are not limited to: seniority, particular experience relevant to the assignment, as well as merit and fitness as determined by the Employer. The type and manner of the evaluation process shall be determined by the Employer based upon the particular duties associated with the particular assignment. Employer shall not use retaliatory or discriminatory practices during the evaluation process for any preferred assignment.

**Section 45.4.** Eligibility lists for those employees receiving passing evaluations for preferred assignments shall be posted with the names of the employees listed in ranking order and remain in effect for a minimum of one (1) year, with an option to extend the list for a second year, at the discretion of the Employer, or until the list is exhausted. Employer shall provide notice, through a posting consistent with Section 45.3, of an extension beyond the initial one (1) year period or when the list has been exhausted.

**Section 45.5.** Any employee that has applied for a preferred assignment under this Article may request one review of the evaluation process with the Employer while the eligibility list is active. Once requested, such a review shall be provided within five (5) business days. All parties agree the intent of the review is for the Employee to receive feedback from the Employer regarding areas of improvement, if any, for the employee for future applications for preferred assignments. Such a review shall not be the basis for any future grievance.

51

## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have hereunto signed by their authorized representatives this _3¹ˢᵗ_ day of _December_, 2020.

FOR THE HAMILTON COUNTY
SHERIFF

Jim Neil
Hamilton County Sheriff

Steve Lawson
Sheriff's Representative

Brett A. Geary
Labor Relations Consultant

HAMILTON COUNTY SHERIFF'S
ASSOCIATION

Steve Lazarus
Lazarus and Lewis, LLC
HCSA counsel

Steven Luensman , HCSA President

Dale Miles    HCSA, VP

FOR THE HAMILTON COUNTY
BOARD OF COMMISSIONERS

_____
Jeffrey W. Aluotto
County Administrator

APPROVED AS TO FORM

_____
Assistant Prosecuting Attorney

Approved and journalized by the Hamilton County Board of Commissioners on_____,
2020.  Denise Driehaus, President, Stephanie Summerow Dumas, Vice President, and, Victoria
Parks, Member.

52

{12/29/2020 AGHAMSF 00259272.DOCX }

# APPENDIX A
## SHIFT ASSIGNMENTS PER DISTRICT

### District 1

1) 12 hour shifts - A/B shift pick by seniority
   6 to 6          1 hour of overlap
   7 to 7

2) Traffic Safety – Part of Support Services
   4 and 2: 8 ½ hours per day
   No seniority pick.
   Does not include ODG 8 employees

3) C.I.S. stays as is:  M-F (8 hour shifts)
   Off day Group 8 – No seniority pick

4) All Support Services ODG 8 people remain as is:  M-F (8 hour shifts)
   Off-Duty Coordinator on 4 and 2: 8 ½ hours per day

### District 2

12 hour shifts - A/B shift pick by seniority
   6 to 6
   6 to 6

### District 3

1) 12 hour shift - A/B shift pick by seniority
   6 to 6          1 hour of overlap
   7 to 7

2) 4 and 2: 8 ½ hour days = power shift cars = 7 cars shift pick by seniority

3) Group 8 off days – M-F (8 hour shifts)

4) 4 sergeants = 12 hours shift – assigned by department
   5:30 to 5:30
   5:30 to 5:30

53

{ 12/29/2020 AGHAMSF 00259272.DOCX }

### District 5

1)      Beat cars 12 hours - A/B shift pick by seniority
        6 to 6        1 hour of overlap
        7 to 7

2)      Anderson Contract Sergeants (2) – 4 and 2:  8 ½ hour days

3)      Traffic Officers (2) – 4 and 2:  8 ½ hour days – Part of Support Services

4)      Canine – 4 and 2:  8 ½ hour days

5)      Park Resource Officer – 4 and 2:  8 ½ hour days

6)      2 power shift cars – 4 and 2:  8 ½ hour days shift pick by seniority

7)      3 people in Group 8 off day – M-F (8 hour shifts)

Supervisors into 2 groups
    5 Lieutenants (District Commanders/Liaison) ODG-8:  M-F (8 hour shifts)
    2 Lieutenants (Watch Commanders) 12 hour 1A/1B
    8 Sergeants (Squad Supervisors) 12 hour 4A/4B

5:30 to 5:30 – Briefing ½ hour before shifts start

Management right to place into assignments

*(THE PARTIES RECOGNIZE THAT DESIGNATION OF NUMBERS OF POSITIONS OR EQUIPMENT OR THE DESIGNATION OF DISTRICT NUMBERS IS FOR ILLUSTRATION ONLY.  THE EMPLOYER STILL HAS THE RIGHT TO DETERMINE ADEQUATE STAFFING, EQUIPMENT, AND GEOGRAPHICAL DESIGNATIONS, AND THE DESIGNATIONS ABOVE DO NOT CREATE ANY MINIMUM MANNING REQUIREMENTS.)*

{12/29/2020 AGHAMSF 00259272.DOCX }

---

**SIDE LETTER**
**between**
**THE HAMILTON COUNTY SHERIFF'S OFFICE**
**and**
**THE FRATERNAL ORDER OF POLICE/OHIO LABOR COUNCIL, INC.**
**representing**
**(ENFORCEMENT OFFICERS)**
**and**
**(ENFORCEMENT SUPERVISORS)**
**regarding**
**POST RETIREMENT EMPLOYMENT (P.R.E.) PROGRAM**

---

The Hamilton County Sheriff's Office (hereinafter referred to as "the Employer") and the Fraternal Order of Police, Ohio Labor Council, Inc. (hereinafter referred to as "the Union" or "the"), jointly referred to as "the Parties," hereby agree to the following Side Letter ("SL") which shall be an understanding as to the adoption and implementation of the Post Retirement Employment ("P.R.E.") Program. The Parties have used this SL to promote amicable relations between the Employer, the Union, and bargaining unit employees represented by the Union. The provisions of this SL are intended to establish the procedures and effects of rehiring retired bargaining unit employees, and the Parties agree that this SL, and the provisions contained herein, shall not be considered precedent for future labor disputes, but it shall be considered the starting point for the successor agreement between the Parties.

The Employer and the Union agree to the following provisions which will amend the SL originally signed on April 14, 2015 and will be effective as of January 1, 2017:

1. The parties agree that the provisions of this SL are permitted by the Parties' collective bargaining agreement, either explicitly or implicitly, and by the SERB certification in case 84-RC-04-0458 (Enforcement Officers) and case 87-REP-01-0026 (Enforcement Supervisors), and as amended thereafter.

2. Only retired bargaining unit employees who have qualified for a non-reduced retirement under PERS or PERS-LE are eligible for the P.R.E. Program. Employees on disability benefits are ineligible for the program.

3. The term of a rehire under the P.R.E. Program is limited to five (5) years. Employees beginning P.R.E. under the original agreement will be eligible for the benefits herein until such time as the five (5) year maximum is reached from their original start date.

4. Any employee who wishes to be considered for the P.R.E. Program shall provide at least six (6) months' notice of interest.

5. Once rehired, records of prior discipline shall remain in effect in accordance with Article 10 (Personnel Files), Section 10.3. Any retired bargaining unit employee

55

with active Level 4 discipline at the time of qualification for a non-reduced retirement under PERS or PERS-LE shall not be eligible for the P.R.E. Program.

6. The Parties agree that rehired bargaining unit employees shall not be subject to a probationary period per Article 11 (Probationary Periods), Section 11.1.

7. Retirement and rehire under the P.R.E. Program does not constitute a break in continuous seniority for which all seniority is lost per Article 12 (Seniority), Section 12.2. However, seniority shall not continue for the purposes of layoff and recall, promotions, wages and compensation, and vacation accrual.

8. Rehired retired bargaining unit employees shall not have seniority restored for the purposes of layoff and recall under Article 13 (Layoff and Recall), Sections 13.1 and 13.2. In the event of a layoff in the bargaining unit, rehired employees would be laid off before any full-time employees in each classification. Layoff order for the purpose of P.R.E. shall be based on years of participation in the program with the longest in the program being laid off first. Rehired employees shall have no bumping rights. Rehired employees shall not be subject to recall rights under Section 13.3.

9. Rehired bargaining unit employees shall not be credited with any length of prior service or seniority or be otherwise eligible for promotion in accordance with Article 14 (Vacancies).

10. Retired bargaining unit employees who served in specialized assignments (e.g., District OIC) will be rehired into that specialized assignment at the Employers discretion. Retired employees who served in generalized assignments subject to biding will be rehired into the same general shift assignment subject to shift modification based upon shift bidding following rehire per Article 19 (Hours of Work and Overtime), Section 19.2 and Appendix A (Enforcement Officers Agreement) and per Article 17 (Hours of Work and Overtime), Section 17.9 and Appendix A (Enforcement Supervisors Agreement). Employees shall select shift assignments based on seniority, per Section 19.3 (Enforcement Officers Agreement) or Section 17.9 (Enforcement Supervisors Agreement).

11. Rehired bargaining unit employees in the classifications of Patrol Clerk, Court Service Officer, Patrol Officer and Corporal shall begin re-hire at 8% less than their salary upon retirement, as set forth in Article 20 (Wages and Compensation), Section 20.1. Rehired Patrol Clerks, Court Service Officers, Patrol Officers and Corporals shall be eligible for general wage increases only, as opposed to step increases. Rehired Patrol Clerks, Court Service Officers, Patrol Officers and Corporals shall be ineligible for any type of longevity pay under Section 20.5 (Enforcement Officers). Rehired Sergeants and Lieutenants shall begin re-hire at 8% less than their salary upon retirement, as set forth in Article 18 (Wages and Compensation), Section 18.1. Rehired Sergeants and Lieutenants shall be eligible for general wage increases only, as opposed to step increases. Rehired Sergeants

56

{ 12/29/2020 AGHAMSF 00259272.DOCX }

and Lieutenants shall be ineligible for any type of longevity pay under Section 18.3 (Enforcement Supervisors).

12. Bargaining unit employees who hold the rank of Corporal at the time of retirement and enter the P.R.E. Program will retain this rank. The requirements set forth in Section 14.4 of the contract regarding promotions are waived in order to accommodate these participants. Bargaining unit employees who hold the rank of Sergeant or Lieutenant and are covered by the Enforcement Supervisors Agreement at the time of retirement and enter the P.R.E. Program may retain this rank. The requirements set forth in Section 14.4 of the Enforcement Officers contract regarding promotions are waived in order to accommodate these participants.

13. The Parties agree that rehired employees shall have eighty (80) hours of vacation placed in their vacation balances upon participation in the P.R.E. Program. Rehired employees shall accrue vacation time at a rate of 4.6 hours per pay period based upon six (6) to twelve (12) years of prior service as set forth in Article 24 (Vacation), Section 24.1 (Enforcement Officers) and Section 22.1 (Enforcement Supervisors), for the term of participation in the P.R.E. Program. Vacation selection shall be based upon seniority per Section 24.4 (Enforcement Officers) and Section 22.4 (Enforcement Supervisors). Prior to participating in the P.R.E. Program, employees must cash out vacation balances pursuant to Section 24.6 (Enforcement Officers) and Section 22.6 (Enforcement Supervisors). Vacation time earned during the P.R.E. Program that has not been used prior shall be used during the last weeks of their participation of the P.R.E. Program equal to the number of hours remaining on the books.

14. Rehired employees shall not be eligible for a pay-out of accrued, unused sick leave as set forth in Article 25 (Sick leave), Section 25.7 (Enforcement Officers) and Article 23 (Sick Leave) 23.7 (Enforcement Supervisors). Prior to participating in the P.R.E. Program, employees must cash out sick leave balances pursuant to Section 25.7 (Enforcement Officers) and Article 23 (Sick Leave) Section 23.7 (Enforcement Supervisors).

15. Uniform allowance, as set forth in Article 28 (Uniforms and Equipment), Section 28.7 (Enforcement Officers) and Article 25, Section 25.7 (Enforcement Supervisors), is contingent upon one (1) year of new service under the P.R.E. Program.

16. Rehired employees may be ineligible for certain types of leaves of absence under Article 31 (Leaves of Absence) (Enforcement Officers) and Article 28 (Enforcement Supervisors) based upon lack of prior service credit.

17. The P.R.E. Program is limited to Sheriff Neil's term in office. The program will cease to have effect upon the date in which Sheriff Neil leaves the office of Hamilton County Sheriff. However, for an employee serving a five (5) year term

57

under the P.R.E. Program, he or she will be permitted to finish the duration of the term. The parties acknowledge the P.R.E. Program may be continued following Sheriff Neil's term in office at the discretion of the successor Sheriff.

18. The Parties agree that no changes can be made to this agreement without a majority vote of the membership of each respective bargaining unit authorizing such change.

19. The Parties agree that the Union and bargaining unit employees shall be prohibited from filing any grievance regarding the agreements reached in this document.

The Parties have accepted this SL voluntarily and without coercion, and none of the Parties have been pressured to accept the provisions of this SL because of any reason.

Further, the Parties agree that nothing in this SL shall be used as a basis for establishing a past practice for any other issue, and this SL shall not set any precedent for future labor disputes between the Parties that are unrelated to this SL.

The Employer acknowledges that the HCSA did not negotiate the provisions of the labor agreement resulting from SERB case # 2017-MED-07-0810, nevertheless, the Parties (Employer and HCSA) agree to continue the Side Letter regarding Post Retirement Employment (PRE).

FOR HAMILTON COUNTY SHERIFF

FOR THE HCSA

Jim Neil
Hamilton County Sheriff

Steve Lazarus
Lazarus and Lewis, LLC
HCSA Counsel

Steve Lawson
Sheriff's Representative

Steven Luensman, HCSA President

Brett A. Geary
Labor Relations Consultant

Dale Mikes, HCSA VP

Date: 12/31/2020

58

---

**MEMORANDUM OF UNDERSTANDING**
between
**THE HAMILTON COUNTY SHERIFF'S OFFICE**
and
**THE FRATERNAL ORDER OF POLICE/**
**OHIO LABOR COUNCIL**
**ENFORCEMENT OFFICERS**

**REGARDING OBSOLETE LANGUAGE IN THE LABOR AGREEMENT**
**2017-MED-07-0810**

---

The Hamilton County Sheriff's Office (hereinafter referred to as "the Employer") and the Fraternal Order of Police, Ohio Labor Council, Inc. (hereinafter referred to as "the Union" or "the"), jointly referred to as "the Parties," hereby agree to the following Memorandum of Understanding ("MOU"). The Parties have used this MOU to promote amicable relations between the Employer, the Union, and the bargaining unit employees represented by the Union. The provisions of this MOU are intended to clean up superfluous language contained in certain articles of the collective bargaining agreement that were not addressed during negotiations/fact-finding. The Parties agree that this MOU, and the provisions contained herein, shall not be considered precedent for future labor disputes that are unrelated. If the Parties agree to the provisions in this MOU, it shall become an Appendix to the labor agreement between the Employer and the.

The Employer and the Union agree to the following provisions:

1.  The Parties agree that the provisions of this MOU are permitted by the Parties' collective bargaining agreement, either explicitly or implicitly.

2.  The Parties agree that the current labor agreement has certain provisions which have become obsolete because of the passage of time and have no relevance in the agreement created for SERB Case # 2017-MED-07-0810. The Parties wish to clarify the applicability of the language to the labor agreement and succeeding labor agreement.

3.  The Parties agree that the language in Article 20 (Wages and Compensation), Section 20.2, paragraph 3, regarding the assumption of Electronic Monitoring Officers into the bargaining unit as of January 10, 2014, has occurred and is no longer relevant to the labor agreement stemming from SERB Case # 2017-MED-07-0810. Such language will be deleted in the Parties' next labor agreement.

4.  The Parties agree that the language in Article 22 (Insurance), Section 22.7, paragraphs 1 and 2, regarding the elimination of the insurance cap and lump sum payment for the cap elimination in calendar year 2016, has occurred and is no longer relevant to the labor agreement. Each of the Parties has fulfilled its obligation regarding the elimination of the cap and the lump sum payment, and no additional lump sum payment shall be made for the former cap elimination in the labor agreement stemming from SERB Case # 2017-MED-07-0810. Such language will be deleted in the Parties' next labor agreement.

59

{ 12/29/2020 AGHAMSF 00259272.DOCX }

5.  The Parties agree that the language in Article 24 (Vacation), Section 24.2, regarding the alteration of vacation accumulation which occurred January of 2009, has occurred and is no longer relevant to the labor agreement stemming from SERB Case # 2017-MED-07-0810. Such language will be deleted in the Parties' next labor agreement.

6.  The Parties agree that the provisions of this MOU are not subject to the grievance procedure contained in Article 8 of the collective bargaining agreement.

The Parties agree that nothing in this MOU shall be used as a basis for establishing a past practice for any other unrelated issue, and this MOU shall not set any precedent for future labor disputes between the Parties that are unrelated to this MOU.

The Employer acknowledges that the HCSA did not negotiate the provisions of the labor agreement resulting from SERB case # 2017-MED-07-0810, nevertheless, the Parties (Employer and HCSA) agree to continue the Side Letter/MOU regarding Obsolete Language in the Labor Agreement.

FOR HAMILTON COUNTY SHERIFF                    FOR THE HCSA

Jim Neil
Hamilton County Sheriff

Steve Lazarus
Lazarus and Lewis, LLC
HCSA

Steve Lawson
Sheriff's Representative

Steven Luensman, HCSA President

Brett A. Geary
Labor Relations Consultant

Dale Mikes    HCSA-VP

Date: 12/31/2020

{12/29/2020 AGHAMSF 00259272.DOCX }

60